UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF MAKHPAL KARIBZHANOVA FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. 21-mc-00442<br>ECF Case |

### DECLARATION OF JOHN W. MOSCOW IN SUPPORT OF APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

**JOHN W. MOSCOW** declares under penalty of perjury the following:

1. I am an attorney licensed to practice law in the State of New York and am senior counsel in the law firm Lewis Baach Kaufmann Middlemiss PLLC ("LBKM"). LBKM is counsel to petitioner Makhpal Karibzhanova ("Makhpal").

2. I make this declaration in support of Makhpal's Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "Application"), and make this assertion based on public and non-public documents I have reviewed and conversations with investigators and eyewitnesses to the transactions described in the Application. I rely on the investigation and analysis conducted by attorneys at LBKM, with other skilled legal and financial professionals retained to consult in this matter.

3. I have supervised and led investigations involving major economic crimes, including money laundering, from 1984 as Deputy Chief of the Frauds Bureau into 2005 as chief of the international economic crime unit at the New York County District Attorney's Office.[1] Some of the cases were immense, involving economic transactions around the world. I learned to rely on the investigators, the accountants, and my colleagues to master the intricacies of

---

[1] I served as an Assistant District Attorney in the New York County District Attorney's office under Frank S. Hogan and Robert Morgenthau from 1972 into 2005.

transactions we were investigating. Among the cases we made were the prosecution of the Bank of Credit and Commerce International, the prosecution and closing of a number of securities firms for fraud, Ponzi schemes, the involvement of major banks in the Enron disaster, and the prosecution of a number of corrupt officers of Tyco, including Dennis Kozlowski. I am working today with a number of colleagues from the District Attorney's Office who assisted me in these and other matters.

4. The information contained in this declaration has been gathered from documents, witness-related incidents, and skilled analysis of substantial economic transactions in Central Asia, Europe, and New York. I am also working with internationally renowned investigators, some of whom I have worked with for more than 20 years, and whose skill and accuracy in the discovery and tracing of assets is of the highest caliber.

5. In my private practice, I specialize in cases involving complex economic transactions, money laundering, and fiduciary duties. I believe that all information contained herein is true.

## FACTUAL BACKGROUND

### The Kazakh Action

6. The Application is brought in support of the action for the equitable division of marital assets filed in the court of first instance of Kazakhstan on May 10, 2021. The basis for and details of which are set forth in the accompanying Affidavits of Makhpal Karibzhanova and Yevgeny Tikhonov.

7. Since 2019, I and LBKM have represented Makhpal in connection with her efforts to obtain an equitable division of the assets acquired during her marriage to Aidan Karibzhanov ("Aidan"). In addition to providing legal advice, LBKM has worked to locate and trace Aidan's

assets around the world.  LBKM has engaged other counsel, investigators, and analysts to assist in these efforts.

8. The investigation has established that the assets acquired during the marriage were, and continue to be, held in the name or control of Aidan directly or through business associates and entities acting on his behalf.

9. Yevgeny Tikhonov is Makhpal's attorney in Kazakhstan.  I have been advised by Mr. Tikhonov that Kazakh law provides for the equitable division of marital assets and that the statute of limitations on an action seeking equitable distribution is three years.  Mr. Tikhonov filed an action for equitable division in Kazakhstan on May 10, 2021.

10. Between March 23 and April 8, 2021, LBKM served preservation letters on several of Aidan's close business associates in the United States and abroad in anticipation of litigation.

11. In early April, Makhpal received a call from the Kazakh lawyer then representing her relaying that a senior partner of the lawyer's firm received a call from Michael Sauer threatening to shut the firm out of doing any business in Kazakhstan if they continued representing Makhpal.  The lawyers from the firm believed the threat credible and withdrew from the representation.  I have been informed by Makhpal that Michael Sauer is one of Aidan's close business associates and I have reviewed a number of websites listing him as Chairman of Visor Capital, an investment company closely associated with Aidan.  My investigation of this case strongly suggests that Aidan holds enough power in Kazakhstan to make good on this threat.

## The Financial Assets at Stake

12. Forbes Magazine lists Aidan as the 26th richest businessman in Kazakhstan and the 14th most influential businessman in Kazakhstan and estimates his wealth in a range from $201

million to $313 million.[2]  The Forbes article notes many aspects of Aidan's wealth: founder of Visor International, partner with China Power in a Kazakh wind farm, shareholder in Tengiz Service LLP (an oil transport service provider) held through Waterford International Holdings, and shareholder in a Virgin Islands-registered IT company held through Visor Investments.  While this is an impressive list of assets, I am primarily struck by his many other financial interests that are not mentioned.  These absences, along with the rest of the investigation, lead me to conclude that Forbes has woefully undervalued Aidan's net worth.

13. Together with international asset investigators, LBKM has spent more than a year tracing Aidan's substantial wealth around the globe.  The results of these efforts, as set forth in the Memorandum of Law in Support of the Application, indicate that Aidan's true wealth is much greater than the published estimates noted above.  My current estimate is between $1 billion and $2 billion.

14. The legal structure of assets in Aidan's control, as I have seen in many years investigating these types of matters, is commensurate with purposefully obfuscated transactions and ownership structures designed to hinder efforts to uncover the identity of the true beneficial owner.  These structures make locating all marital assets difficult but not impossible.  In my experience, these transactions can be unraveled and true ownership revealed through the discovery of the financial and corporate records and testimony of the sort set forth in the Application.

15. The investigation has established that Aidan was active in highly lucrative privatization deals in several countries, including telecoms, gas, and mineral rights.  Privatization deals, as those uncovered involving Aidan, are structured such that political leadership permits

---

[2] https://forbes.kz/ranking/object/59

favored individuals to acquire title to state assets at a massive discount to market value, allowing them to realize outsized profits.

16. The investigation has established that Aidan has financial ties to the investment fund Verno Capital Group Limited ("Verno Capital"). Verno Capital maintains an office in New York. Aidan is personally named as the director on Verno Capital's Form D, Notices of Exempt Offerings, filed with the SEC from as early as 2012. The scope and value of Verno's holdings were reflected in a deal announced one year ago that closed on April 29, 2021, involving the $415 million sale of the majority ownership interest in the Almaty International Airport by a Verno-affiliated company, Venus Airport Investments B.V. of Netherlands, to a French-Turkish consortium, TAV Airports.[3]

17. The investigation has established that Aidan is the majority owner of funds invested in Paladigm Group ("Paladigm"). Paladigm Group includes a number of subsidiaries, but the two main companies appear to be Paladigm Capital PTE LTD ("Paladigm Capital") — an active asset and wealth management fund based in Singapore — and its 100% shareholder Paladigm Holdings PTE LTD ("Paladigm Holdings"). Paladigm manages two investment funds, Paladigm Atlas ("Atlas Fund") and Paladigm Ventures Fund 1L Ptd Ltd. ("Ventures Fund"), which both maintain ties to the United States. Atlas Fund invests in publicly traded U.S. Treasury bonds and companies. Ventures Fund advertises that it invests in "the biggest U.S. tech companies" and U.S. "unicorns." In 2018, Ventures Fund invested in the publicly-traded U.S. company Lyft, Inc.

18. The investigation has established Aidan's financial connection to the privatization of mineral rights owned by Kaz Minerals, including copper, silver, zinc, and gold in eastern Kazakhstan and elsewhere. Kaz Minerals is listed on the London and Kazakh stock exchanges,

---

[3] https://www.marketscreener.com/quote/stock/AEROPORTS-DE-PARIS-17304/news/Aeroports-de-Paris-nbsp-Groupe-ADP-announces-the-completion-by-TAV-Airports-of-the-full-ownership-33112034/

and traded in the United States through American Depositary Receipts registered with the SEC by JP Morgan Chase Bank NA.  Aidan was involved in the privatization of the Koksay copper mines and the East Akshor oil fields, both highly lucrative deals.  The assets were transferred through nominees and strawmen.

19. The investigation has established Aidan's beneficial ownership of the Visor Group d/b/a TOO Visor Holding through offshore holding structures and nominees.  Visor Group conducts business all over the world including Kazakhstan, the Kyrgyz Republic, United Kingdom, Russia, Cayman Islands, and British Virgin Islands.  Visor Group began when Aidan established AO Visor Investment Solutions and began acquiring assets and companies and eventually secured a Kazakh banking license.

20. On August 30, 2017, Aidan filed an affidavit in the Family Court of the State of New York in New York County affirming that he had an address in New York at 240 Riverside Boulevard, 17C.  On November 20, 2018, Aidan filed an affidavit the Supreme Court of the State of New York in the County of New York affirming that he funded the purchase of an apartment at 212 Fifth Avenue, Apartment 3B, on behalf of an LLC co-owned by his daughters, where Makhpal currently lives.  Records confirm that the formation of the LLC and the purchase of the apartment were brokered by New York-licensed attorney and real estate broker Edward Mermelstein and his associates.

21. The investigation has established that, during the course of Aidan and Makhpal's marriage, Aidan maintained an American Express Black Card with which he paid expenses.  Aidan transferred as payment on this card substantial sums of money to American Express in New York or to bank accounts owned and controlled by American Express.

22. The investigation has also established that Aidan paid for the services of a sex worker during a trip to New York. Documents in LBKM's possession confirm the name, date, amount paid, the nature of the services, and where they were provided.

23. In my experience, many foreign banks maintain at least some international correspondent bank accounts in New York City. I am further aware that records for such accounts can be accessed from the computer systems of New York financial institutions' branches and offices in New York City. I therefore believe that certain records of international correspondent banking activities and ownership of foreign bank accounts relevant to the extent of Aidan's assets are held in this District.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 11, 2021

_____
JOHN W. MOSCOW