**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**IN RE APPLICATION OF MAKHPAL KARIBZHANOVA FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. SECTION 1782**

Case No. 1:21-MC-00442-KPF

**MEMORANDUM OF LAW IN SUPPORT OF AIDAN
KARIBZHANOV'S MOTION TO VACATE COURT ORDER
<u>GRANTING 28 U.S.C. § 1782 APPLICATION AND TO QUASH SUBPOENAS</u>**

MENZ BONNER KOMAR & KOENIGSBERG LLP
One North Lexington Avenue, Suite 1550
White Plains, New York 10601
Tel.:  (914) 949-0222
Fax:  (914) 997-4117
*Attorneys for Movant Aidan Karibzhanov*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii-v

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................... 6

    A.      The Kazakhstan Proceeding .......................................................................... 6

    B.      The Section 1782 Application ........................................................................ 8

ARGUMENT ................................................................................................................... 11

    I.      THE COURT SHOULD GRANT AIDAN KARIBZHANOV'S
           MOTION TO VACATE THE SECTION 1782 ORDER ..................................... 11

      A.      Motion to Vacate Order ................................................................ 11

      B.      The Court Should Exercise Its Discretion to Vacate the Section
            1782 Order Because the Applicant Misrepresented Facts in
            Support of Her Application ............................................................ 11

      C.      The Court Should Vacate the Section 1782 Order and Quash
            the Subpoenas Issued Thereunder Because the Section 1782
            Order Violates the Statutory Requirements ...................................... 15

          1.      The Court May Order the Issuance of Subpoenas
                 Only After Determining That the Statutory
                 Requirements of Section 1782 Are Met ........................... 15

          2.      The Section 1782 Order Violates Section 1782
                 Because It Vests the Applicant's Counsel with
                 the Authority to Issue Subpoenas Without a
                 Determination by the Court that the Person from
                 Whom Discovery is Sought Resides (or is Found)
                 in the Southern District of New York ............................... 16

          3.      In the Event that Ms. Karibzhanova's Appeal in
                 Kazakhstan is Unsuccessful, There Will Be No Foreign
                 Proceeding in Which Ms. Karibzhanova Can Use the
                 Discovery Sought in Her Application ............................... 19

      D.      Upon Further Review, the Court Should Find that the *Intel* Factors
            Strongly Disfavor Disclosure of the Documents and Testimony
            Ms. Karibzhanova Seeks and, Therefore, Vacate the Section 1782
            Order ........................................................................................ 20

          1.      The First *Intel* Factor Weighs Against Disclosure
                 Because of the Lack of Specificity of the Persons
                 to be Subpoenaed ......................................................... 22

2.      The Second *Intel* Factor Weighs Against Disclosure
        At This Time As Whether the Medeu District Court
        Will Allow Discovery Depends on Ms. Karibzhanova's
        Success In Her Pending Appeal in Kazakhstan, and Any
        Such Discovery Requested May Be Prohibited by the
        Court .................................................................................................23

3.      The Third *Intel* Factor Weighs Against Disclosure
        At This Time As Whether the Medeu District Court
        Will Allow Discovery Depends on Ms. Karibzhanova's
        Success In Her Pending Appeal in Kazakhstan, and Any
        Such Discovery Requested May Be Limited by the
        Court .................................................................................................25

4.      The Fourth *Intel* Factor Weighs Against Disclosure
        As Ms. Karibzhanova's Requests are Overbroad and
        Unduly Intrusive and Burdensome ............................................26

II.     ALTERNATIVELY, THE COURT SHOULD QUASH ANY
        SUBPOENAS SERVED PURSUANT TO THE SECTION 1782
        ORDER BECAUSE AIDAN KARIBZHANOV WAS NOT
        SERVED WITH NOTICE OF SAID SUBPOENAS ...............................................29

CONCLUSION...........................................................................................................31

ii

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>**                                                                                                                    **<u>Page(s)</u>**

*Black v. Youngue*,
No. 14-505, 2014 WL 7335030 (W.D. Pa. Dec. 19, 2014) .......................................................30

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012)............................................................................ 15-16, 21, 22, 28, 29

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.P.*,
798 F.3d 113 (2d Cir. 2015)......................................................................................................19, 20

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995).........................................................................................................23

*Ex parte Application of Léa Schwery Abdalla*,
No. 20-mc-727, 2021 WL 168469, at *6 (S.D.N.Y. Jan. 19, 2021) .......................................26, 28

*Glock v. Glock, Inc.*,
797 F.3d 1002 (11th Cir. 2015) ...................................................................................................21

*Green Dev. Corp. S.A. De C.V. v. Zamora*,
No. 15-21594, 2016 WL 2745844 (S.D. Fla. May 10, 2016) ....................................................12

*Gushlak v. Gushlak*,
486 Fed. App'x 215 (2d Cir. 2012)........................................................................................11 n.1

*In re 310 Assocs.*,
346 F.3d 31 (2d Cir. 2003)...........................................................................................................11

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017).....................................................................................................21, 29

*In re Application of Grupo Qumma, S.A. de C.V.*,
No. 8-85, 2005 WL 937486, at *1 (S.D.N.Y Apr. 22, 2005) ....................................................16

*In re Application of Harry Sargeant, III*,
278 F. Supp. 3d 814 (S.D.N.Y. 2017)........................................................................................16

*In re Application of Hornbeam Corp.*,
No. 14 Misc. 424, 2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015),
*aff'd*, 722 Fed. App'x 7 (2d Cir. 2018) .......................................................................11 n.1, 29, 30

*In re Application of WinNet R CJSC*,
No. 16mc484, 2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017)................................................11-13

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)................................................................................21

*In re Ex Parte Application of the Gov't of the
Lao People's Democratic Republic*,
No. 1:15-mc-08232, 2017 WL 2838051 (D. Idaho June 30, 2017)........................................12

*In re Metallgesellschaft*,
121 F.3d 77 (2d Cir. 1997)................................................................................21-22

*In re Petition of Arturo Pedro Pablo Escallón Lloreda*,
323 F. Supp. 3d 552 (S.D.N.Y. 2018)....................................................................18

*In re Petrobras Sec. Litig.*,
393 F. Supp. 3d 376 (S.D.N.Y. 2019)..............................................................16, 18, 22

*In re Republic of Kazakhstan*,
110 F. Supp. 3d 512 (S.D.N.Y. 2015)....................................................................23

*In re Reyes*,
No. 19 Civ. 7219, 2019 WL 6170901 (S.D.N.Y. Nov. 20, 2019) ........................................29, 30

*In re Application of Sarrio, S.A.*,
119 F.3d 143 (2d Cir. 1997)................................................................................11 n.1

*In re Speer*,
754 Fed. App'x 62 (2d Cir. 2019)........................................................................29-30

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)....................................................................................*passim*

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018)................................................................................23

*Mangouras v. Squire Patton Boggs*,
980 F.3d 88 (2d Cir. 2020)................................................................................20

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)..............................................................13, 14, 21, 25, 26

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
970 F.3d 133 (2d Cir. 2020)................................................................................11

*Mirra v. Jordan*,
No. 13 Civ. 5519, 2014 WL 2511020 (S.D.N.Y. May 28, 2014)............................................30

*Murphy v. Board of Educ.*,
196 F.R.D. 220 (W.D.N.Y. 2000) ............................................................................ 30

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986) ...................................................................................... 11

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
376 F.3d 79 (2d Cir. 2004) ......................................................................... 22, 23, 29

*Schweizer v. Mulvehill*,
93 F. Supp. 2d 376 (S.D.N.Y. 2001) ........................................................................ 30

## **<u>Statutes</u>**

28 U.S.C. § 1782 ................................................................................................ *passim*

Fed. R. Civ. P. 26(c)(1) ............................................................................................ 28

Fed. R. Civ. P. 45(a)(4) ............................................................................................ 29

Fed. R. Civ. P. 60(b)(1) ............................................................................................ 11

Fed. R. Civ. P. 60(b)(6) ............................................................................................ 11

N.Y. Rules of Prof'l Conduct R.3.3(d) (2017) ........................................................ 13

Mr. Aidan Karibzhanov respectfully submits this memorandum of law, together with the Declaration of Mr. Aidan Karibzhanov (the "Karibzhanov Dec."), dated July 28, 2021, and exhibits attached thereto, the Declaration of Marie-Hélène Bérard (the "Bérard Dec."), dated July 30, 2021, and the Declaration of Bakhyt Tukulov (the "Tukulov Dec."), dated July 29, 2021, in support of Mr. Karibzhanov's motion (i) to vacate the Court's Order dated June 15, 2021, which granted Ms. Makhpal Karibzhanova's ("Ms. Karibzhanova") application for judicial assistance pursuant to 28 U.S.C. § 1782, and appointed attorney John W. Moscow as Commissioner, and (ii) to quash any subpoenas that have been served to date by Mr. Moscow as Commissioner.

## PRELIMINARY STATEMENT

As this Court is aware, Ms. Karibzhanova filed an *ex parte* application in this Court (the "Application") for judicial assistance pursuant to 28 U.S.C. § 1782 ("Section 1782"), for permission to issue subpoenas to various individuals and entities purportedly found in New York.  The discovery sought allegedly is for use in a matrimonial action pending in Kazakhstan relating to the marital divorce of Ms. Karibzhanova and Mr. Aidan Karibzhanov ("Aidan"), a Kazakh citizen (the "Kazakhstan proceeding").  This Court granted the Application in an Order dated June 15, 2021, which appointed Ms. Karibzhanova's counsel John W. Moscow ("Mr. Moscow") as Commissioner and vested Mr. Moscow with the authority to issue subpoenas, on behalf of Ms. Karibzhanova, to demand the production of documents and testimony from various unspecified individuals and entities that Mr. Moscow determines are found in this District (the "Section 1782 Order").

As discussed further herein, and as demonstrated by the supporting Declarations submitted with this motion, both Ms. Karibzhanova and her lawyers made materially false and misleading allegations to this Court regarding both Aidan's financial interests in New York and

the Southern District, and his personal character, in order to support the *ex parte* Application.  In

fact, the Application was in furtherance of an attempt to coerce Aidan into an extraordinary

settlement of Ms. Karibzhanova's claims in the Kazakhstan proceeding for over $300 million

through threats and intimidation.  In the weeks and months prior to the Application, Mr.

Moscow's law firm threatened both Aidan and his business associates with worldwide public

disclosure of their "affairs," as well as potential criminal charges, if they did not settle and

acquiesce to Ms. Karibzhanova's demands.  The Lewis Baach law firm threatened in April 2021:

> Makhpal strongly prefers a quiet settlement of this matter.  She has
> no desire to put your affairs, and those of your friends and business
> colleagues, on display for the world to see.  She is prepared to
> accept an equitable disposition of assets, fully release any further
> claims against you, and execute non-disclosure agreements.  But
> she is prepared to litigate this matter in the courts and the
> international press if necessary … You should understand that this
> matter will go far beyond the courts of Kazakhstan … In the
> numerous legal actions that will commence, you will be exposed to
> a very public course of court proceedings throughout the world.
> We know full well the interest of the global press in these matters
> … The question you need to ask yourself is whether you and your
> Kazakh partners want to read about your business dealings and
> personal escapades in the *New York Times,* the *Financial Times,*
> and the *Wall Street Journal.*

The letter also threatened Aidan with criminal charges if Aidan attempted to contact his

ex-wife.  Mr. Moscow and his law firm gave Aidan four (4) calendar days to come up with $300

million—or else.  In that event, the firm wrote, Ms. Karibzhanova would make good on her

threats of public disclosure and humiliation through the press and the courts in order to

embarrass and pressure Aidan into a massive settlement.

Mr. Moscow and his law firm also delivered threats to Aidan's business associates.  In a

document preservation letter sent to Aidan's business associates in London and Switzerland in

March 2021, prior to the Application, Mr. Moscow's law firm threatened that the failure to

comply fully with the notice could subject those business associates to prosecution by the Manhattan District Attorney's Office—where coincidentally Mr. Moscow was employed for thirty years as a prosecutor.  After setting forth a litany of evidence and information the firm would later seek by subpoena, the Lewis Baach law firm wrote, "*Please be advised that any conduct which may be interpreted as an attempt to dissuade Ms. Karibzhanova from pursing her legal rights or deny her access to information, directed at Ms. Karibzhanova directly or any member of her family, may well be subject to criminal prosecution by the Office of the District of* [sic] *Attorney of New York.*"

Ms. Karibzhanova and her lawyers made good on her threats when she filed the Application in this Court.  The Application, as well as Ms. Karibzhanova's and Mr. Moscow's fact affidavits, are filled with scandalous, unsupported and false accusations, claims and charges regarding Aidan's alleged personal conduct, and the dissolved marriage, that have nothing to do with the Section 1782 Application that was filed.  In fact, many of the accusations, rumors and claims asserted in Ms. Karibzhanova's memorandum of law are not even supported by the fact affidavits that are cited and appear to be nothing more than an attempt at fiction writing by Mr. Moscow and his firm.  To be clear, these accusations were included for one reason—to embarrass and humiliate Aidan in order to extract a $300 million settlement.  The fact that Mr. Moscow is using the Southern District of New York as a pawn in his goal to "*put [Aidan's] affairs, and those of [his] friends and business colleagues, on display for the world to see*," is outrageous.  The fact that he is now serving as the Section 1782 Commissioner—an officer of this Court—is even more egregious.

As demonstrated herein, the fact affidavits of Mr. Moscow and Ms. Karibzhanova that were used to support the Application contain false and misleading allegations concerning

Aidan's alleged business holdings and assets in New York, the United States and throughout the world.  Under applicable law, this should be enough for this Court to vacate the Section 1782 Order and dismiss this case.  Specifically, as demonstrated by the Declarations of Aidan and Ms. Bérard and Mr. Tukulov, a Kazakhstan lawyer, Ms. Karibzhanova and her lawyers have made false and misleading statements of fact regarding Visor Group, Verno Capital Fund, Mubadala Fund, BNP Paribas, the Paladigm Group and its affiliates, ABA Bank and its affiliates, Kaz Minerals, the privatization of the Koksay copper mines and East Akzuar oil fields, and the privatization of oil and gas fields in Kazakhstan and alleged related entities, to name a few.

Additionally, the Karibzhanova and Moscow Declarations make false statements regarding Aidan's real estate holdings, business dealings and investments in New York, allegations that were obviously critical to the Application and the ability of Mr. Moscow to seek discovery in this District.  In fact, Aidan has no business connections with the State of New York, and has no investments or banking relationships with New York City.  As the Court will see, Aidan has invited both Ms. Karibzhanova and Mr. Moscow, instead of relying on rumor and innuendo and mudslinging, to produce evidence verifying these allegations, which they claim are supported by documentation already in their possession and conversations with participants in certain ventures and unnamed private investigators.  If that is true, Ms. Karibzhanova and Mr. Moscow should be compelled, at a minimum, to present the evidence and investigator reports that allegedly confirm the facts that are set forth in their affidavits.

Moreover, the Section 1782 Order must be vacated because it impermissibly allows Mr. Moscow to determine whether one of the statutory requirements have been met—whether the person from whom discovery is sought resides or is found in the Southern District of New York. Such a determination must be made by the district court before the court is vested by law with

the power to authorize the issuance of subpoenas.  Because the Section 1782 Order violates the statute, it must be vacated.

Finally, the fact that the Application was made on an *ex parte* basis, following threats to publicly expose the private business and personal affairs of the target of the Application in order to extract a massive payment of money in settlement of a private claim, should cause this Court to take a second, fresh look at the Application, and the supporting affidavits, and to vacate the Section 1782 Order.  The duty of candor and respect for the tribunal is fundamental to the legal process, and is even more critical when applications are made on an *ex parte* basis.  When an application is made in bad faith, or when facts asserted in support are misrepresented or are false, the Court should deny the application or vacate any orders resulting therefrom.  Here, allowing Ms. Karibzhanova and her lawyer, acting as Commissioner, to now proceed with taking discovery in order to publicize the information "for the world to see" in an attempt to extract a coercive settlement casts the U.S. judicial system in a negative light and, therefore, conflicts with one of the aims of Section 1782, which is to encourage foreign countries to provide similar assistance to U.S. citizens seeking discovery abroad.

Accordingly, the Court should vacate the Section 1782 Order.  As demonstrated herein, the statutory requirements for issuance of the 1782 Order have not been met, and upon re-review of the *Intel* factors for ordering disclosure, the Court should find that such factors strongly disfavor disclosure of the documents and testimony Ms. Karibzhanova seeks.  Additionally, the Court should quash any subpoenas that have already been issued pursuant to the Section 1782 Order, as Aidan was not served with notice of such subpoenas, as is required under the Federal Rules of Civil Procedure (the "Federal Rules").

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

A.     <u>The Kazakhstan Proceeding</u>

On May 15, 2018, Ms. Karibzhanova and Aidan were divorced pursuant to an appeal judgment entered in the Almaty City Court in Kazakhstan, which upheld an earlier decision of the Medeu District Court of Almaty City in Kazakhstan (the "Medeu District Court"). Karibzhanov Dec., at ¶ 3; Affidavit of Makhpal Karibzhanova ("Karibzhanova Aff.") dated May 11, 2021, at ¶ 23, Dkt. No. 3; Declaration of Yevgeny Tikhonov ("Tikhonov Decl."), at ¶ 5, Dkt. No. 4.  This judgment did not address the issue of partition of the common property, prompting Ms. Karibzhanova to file a claim raising that issue in the Medeu District Court.  Tukulov Dec., at ¶ 6; Tikhonov Decl., at ¶ 6.

On April 22, 2021, Ms. Karibzhanova filed a claim in the Medeu District Court, seeking partition of common property, almost three years after the divorce became final.   Tukulov Dec., at ¶ 7; Karibzhanova Aff., at ¶ 32.  The Medeu District Court dismissed Ms. Karibzhanova's claim due to improper calculation of a fee owed.  Tukulov Dec., at ¶ 8; Karibzhanova Aff., at ¶ 33.  On May 10, 2021, Ms. Karibzhanova filed another similar claim in the Medeu District Court, but seven days later, the Medeu District Court again dismissed her claim for failure to sufficiently particularize the claim and relief sought.   Tukulov Dec., at ¶ 10; Karibzhanova Aff., at ¶ 34; Correspondence from John W. Moscow to the Court dated June 4, 2021 ("Moscow Letter"), Dkt. No. 8, at 2.

Thereafter, Ms. Karibzhanova filed yet another claim in the Medeu District Court, which was accepted by the court.  Tukulov Dec., at ¶ 10; Moscow Letter, at 2.  In this most recent filing, Ms. Karibzhanova states that the only property of which she is aware is property that is registered in her name, including an apartment and parking lot, both of which are located in

Almaty City, Kazakhstan.  Tukulov Dec., Ex. A, at 2; Ex. B, at 3.  She adds the following with

respect to the remainder of the marital property:

> A huge number of various property items had been acquired over
> the period of marriage.  However, the *Claimant [Ms.*
> *Karibzhanova] is not currently aware of how and on whose name*
> *such community property was registered, where the property is*
> *currently located and by whom it is used or managed.*
>
> It should be noted that the property items were being purchased not
> only in Kazakhstan, but also in other countries.  The Respondent
> [Mr. Karibzhanov] himself was dealing with all issues related to
> monetary transactions and execution of documents pertaining to
> the purchased property.
>
> *The information about other property* items to be divided,
> including the aggregate cost thereof, *should be subpoenaed from*
> *the Respondent*, since such information is not known to the
> Claimant at the moment of filing this claim.

 Tukulov Dec., Ex. B, at 2 (emphasis added); Ex. A, at 2.  Ms. Karibzhanova has asked the

Medeu District Court "to assist in the collection of evidence both within and outside the

Republic of Kazakhstan, and to issue subpoena to obtain information from the Respondent about

all immovable and movable property purchased by him during marriage . . . . Such subpoena

should cover all marital property to be distributed, which is located either in the Republic of

Kazakhstan or in other countries."   Tukulov Dec., Ex. B, at 2; Ex. A, at 4.  Explaining the need

for the Medeu District Court to become involved in discovery, Ms. Karibzhanova added, "The

particulars of monetary funds on bank accounts, participation in foreign companies, tax returns,

etc., constitute a secret protected by law, which may only be disclosed by the court order."

Tukulov Dec., Ex. B, at 3.  To be clear, Ms. Karibzhanova made these assertions in the

Kazakhstan proceeding *after* she filed her Application in this Court.

A preliminary hearing was held in the Medeu District Court on June 9, 2021.  Tukulov

Dec., at ¶ 13.  On June 23, 2021 the court held a second hearing on the Third Claim at which the

court dismissed Ms. Karibzhanova's claim without prejudice for two reasons: (i) failure to observe an out-of-court dispute resolution procedure before filing the claim to court and (ii) an identical claim is being reviewed by another court (the Almaty City Court is considering Ms. Karibzhanova's earlier appeal of the First Claim). *Id.* On July 13, 2021, Ms. Karibzhanova appealed this decision, and this appeal is pending. *Id.*

**B.     The Section 1782 Application**

Meanwhile, in anticipation of filing her Application, Ms. Karibzhanova issued several document preservation letters to individuals associated with Aidan. Karibzhanov Dec., at ¶ 7. For example, in a letter issued to Aidan's acquaintance Mr. Dimitri Kryukov on March 23, 2021, Ms. Karibzhanova's counsel explained that they were "in the process of preparing legal actions to secure and protect our client's rights to the equitable apportionment of marital assets following her divorce from Mr. Karibzhanov." Karibzhanov Dec., Ex. A, at 1. Further, as they had "reason to believe that [Mr. Kryukov] currently [is] acting or [has] previously acted as Mr. Karibzhanov's business associate and/or advisor in the United States, specifically in New York," they instructed Mr. Kryukov "to maintain and preserve all such documents and communications relating to Mr. Karibzhanov and his ownership of investment interests, properties, and assets." *Id.* at 1, 2. The letter included a non-exhaustive, six-page list of the records that Ms. Karibzhanova sought to have preserved. *See id.* at 3-9. Ms. Karibzhanova's counsel also threatened Mr. Kryukov with possible criminal charges if he did not comply, seeking to leverage previous experience at the Manhattan District Attorney's Office by claiming that "*any conduct which may be interpreted as an attempt to dissuade Ms. Karibzhanova from pursuing her legal rights or deny her access to information, directed at Ms. Karibzhanova directly or any member*

*of her family, may well be subject to criminal prosecution by the Office of the District of* [sic]

*Attorney of New York*."  *Id.* at 2-3.

Then, on April 8, 2021, Mr. Moscow, Ms. Karibzhanova's counsel, sent a letter to Aidan,

notifying him of their intent "to file legal actions to gather further evidence to prove the true

extent and source of [his] wealth and to seek an equitable division of marital assets."

Karibzhanov Dec., Ex. B, at 1.  Counsel indicated that Ms. Karibzhanova "prefers a quiet

settlement of this matter" and "has no desire to put your affairs *and those of your friends and*

*business colleagues on display for the world to see*," threatening that if Aidan did not acquiesce

to Ms. Karibzhanova's demand for a settlement of over $300 million in a matter of four (4) days,

she would expose him and other non-parties to "a very public course of court proceedings

throughout the world" and ensure that their "business dealings and personal escapades" are

published in the media.  *Id.* at 1-2 (emphasis added).

Ms. Karibzhanova also sent several private messages to various businesspeople in

Kazakhstan who, according to her, are associated with Aidan.  Karibzhanov Dec., at ¶ 9.  For

example, in a message dated April 9, 2021 to Almaz Irishev, Ms. Karibzhanova claimed that she

would like to resolve this matter peacefully, and Aidan's decision not to give in her to demands

will cause a massive scandal, letting down many people.  *Id.*, Ex. C.  In this message, she also

indicated an attempt to organize a meeting with "high-level people from New York, Washington

and London" to "stop" Aidan from defending himself.  *Id.*

On May 12, 2021, Ms. Karibzhanova filed the Application, seeking the appointment of

Mr. Moscow as Commissioner and permission for Mr. Moscow, as Commissioner, to issue

subpoenas to various individuals and entities for the production of documents and testimony that

Ms. Karibzhanova claims are to be used in the Kazakhstan proceeding.  *See* Application of

Makhpal Karibzhanova, Dkt. Nos. 1-5.

 In connection with the *ex parte* application, both Ms. Karibzhanova and Mr. Moscow

made material misrepresentations of fact, as well as material omissions, concerning Aidan's

personal character, his marriage, and his investments, assets and real estate holdings in New

York.  The facts concerning these misrepresentations are set forth in the Declarations of Aidan,

Ms. Bérard, and Mr. Tukulov.

 Based on the information before it, the Court granted Ms. Karibzhanova's Application.

*See* Dkt. No. 9.  Specifically, the Court appointed Mr. Moscow as Commissioner and granted

him the authority to issue subpoenas seeking the following information:

> (i) relevant testimony and documents as may be found within the
> jurisdiction of this Court, including testimony from bankers,
> accountants, and business associates; (ii) documents pertaining to
> companies and bank accounts associated with [Mr. Karibzhanov]
> and his nominee owners; and (iii) correspondent banking records
> and records relating to securities ownership, custodianship, and
> transfers, and documentation and testimony relating to real estate
> holdings.

*Id.* at 7.

<u>**ARGUMENT**</u>

**I.**   **THE COURT SHOULD GRANT AIDAN KARIBZHANOV'S MOTION TO VACATE THE SECTION 1782 ORDER[1]**

**A.**   <u>**Motion to Vacate Order**</u>

Federal Rule 60(b) provides for relief from a court order for several reasons, including the correction of factual or legal mistakes by the court in rendering a decision.  Fed. R. Civ. P. 60(b)(1); *see In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003) (explaining that Rule 60(b)(1) applies to both legal and factual errors).  Alternatively, it provides relief from a court order for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  The Second Circuit has "described Rule 60(b)(6) as a catch-all provision that 'is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule."  *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)).

**B.**   **The Court Should Exercise Its Discretion to Vacate the Section 1782 Order Because the Applicant Misrepresented Facts in Support of Her Application**

Federal trial courts have the discretion to vacate a previously issued order made pursuant to Section 1782 on the grounds that at the time of the *ex parte* application for such order, the applicant was not candid with the tribunal or misrepresented or omitted pertinent facts, or where the application itself was made in bad faith.  *See In re Application of WinNet R CJSC*, No.

---

[1]  District courts routinely allow the person against whom discovery will be used in a foreign proceeding to intervene in and oppose Section 1782 applications and orders.  *See In re Application of Hornbeam Corp.*, 14 Misc. 424, 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015) ("[S]tanding to oppose subpoenas issued under § 1782 is [not] limited to the subpoenaed witness. . . . [T]he ultimate targets of a § 1782 discovery order issued to third parties have standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute." (alterations in original) (quoting *In re Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997))), *aff'd*, 722 Fed. App'x 7 (2d Cir. 2018); *see Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012) (collecting cases) (explaining that party against whom discovery was to be used "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)").

16mc484, 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (vacating Section 1782 order on the grounds, *inter alia,* that the applicant "was not candid when it made its *ex parte* application to our court's Part I Judge"); *In re Ex Parte Application of the Gov't of the Lao People's Democratic Republic*, No. 1:15-mc-08232, 2017 WL 2838051, at *5 (D. Idaho June 30, 2017) (granting motion to vacate Section 1782 order on the grounds that applicant failed to disclose certain pertinent facts); *Green Dev. Corp. S.A. De C.V. v. Zamora*, No. 15-21594, 2016 WL 2745844, at *3-7 (S.D. Fla. May 10, 2016) (vacating prior Section 1782 order where applicant's failure to disclose information regarding prior proceedings was made in bad faith).

For example, in *In re WinNet*, the court denied a Section 1782 application for bad faith where it found that the applicant made misleading statements in and omitted pertinent information from its application. 2017 WL 1373918, at *9. The applicant, WinNet, a Russian company that owned real estate in Russia, sought to recover unpaid rent from its tenant and challenge the tenant's reorganization plan, which WinNet claimed was designed to render the tenant judgment proof. *Id.* at *1. WinNet sought subpoenas under Section 1782 to obtain information from a New York private equity investment firm involved in the reorganization, for use in various civil proceedings and criminal investigations in Russia. *Id.* at *4-5.

The court found that in its application, WinNet did not fully disclose the extent to which the Russian courts had repeatedly rejected its attempts to attack the propriety of the tenant's reorganization plan. *Id.* at *5-6. The court specifically found, "WinNet was not candid when it made its *ex parte* application to our court's Part I Judge." *Id.* at *9. In denying the Section 1782 application, the Court stated,

> "[I]f a § 1782 application is made in bad faith, . . . the court is free
> to deny the application *in toto*." As officers of the court, attorneys
> are subject to duties of candor, decorum, and respect for the
> tribunal before which they appear. An attorney's duty of candor is

> so fundamental that a violation of that duty may lead to
> suspension.  The duty of candor is, if anything, more critical
> when *ex parte* applications are made to a court.  Both the New
> York State and Model Rules of Professional Conduct provide that
> "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of
> all material facts known to the lawyer that will enable the tribunal
> to make an informed decision, whether or not the facts are
> adverse."

*Id.* at *9 (alterations in original) (first quoting *Mees v. Butler*, 793 F.3d 291, 302 n. 18 (2d. Cir.

2015); then quoting N.Y. Rules of Prof'l Conduct R.3.3(d) (2017)) (citations omitted).

Accordingly, because WinNet, as the applicant, was not candid in its application, and had

omitted critical facts, the court denied its application for bad faith.  *Id.*

      Here, both Ms. Karibzhanova and Mr. Moscow made material misrepresentations and

omissions about Aidan in the form of false allegations about his personal character, his marriage

to Ms. Karibzhanova, as well as his financial holdings, investments, and assets, in connection

with the *ex parte* application.  All of these misrepresentations are set out in the Declarations of

Aidan and Ms. Bérard, which are committed to the Court's considered review.  Of particular

importance are the misrepresentations of fact concerning Aidan's business interests, investments

and real estate holdings in New York—all of which were false.  *See* Karibzhanov Dec. ¶¶ 11c-

11j.  These allegations no doubt played an important part in the Court's decision to grant the *ex*

*parte* application and appoint Mr. Moscow as Commissioner to seek discovery regarding Aidan.

Had the true facts been submitted to the Court, and the Court determined that Aidan has no

connection to New York, it is likely that the Application would have been denied.  *See WinNet*,

2017 WL 1373918, at *9 (explaining that "[a] full and fair description" of the relevant facts

"may very well have led the court to deny the application").

      The Application for the Section 1782 Order also failed to disclose the threats and acts of

intimidation that Mr. Moscow's law firm made against Aidan prior to filing the Application,

attempting to extract a $300 million settlement on four days' notice.  As the April 2021 letter

from his law firm makes clear, *see* Karibzhanov Dec., Ex. B, Mr. Moscow is seeking to leverage

his position as the appointed Commissioner to obtain information by way of subpoena not only

about Aidan, but also his business associates and colleagues, so that he can expose that

information "to the world" and in "the international press" in the hopes of embarrassing Aidan

and leveraging a civil settlement of the claims in the Kazakhstan proceeding.  Mr. Moscow's law

firm also threatened criminal charges for this very same purpose.

 The affidavits and memorandum of law that supported the Application were no doubt

filed for this nefarious purpose.  Those documents contain a plethora of unsupported allegations

and phony charges attacking Aidan's personal character, his dissolved marriage and children, as

well as his business affairs, that are wholly irrelevant to Application under Section 1782.  In light

of Mr. Moscow's law firm's and his client's previous threats to extract a settlement, this Court

need not question any further as to the motive behind the inclusion of these false accusations.

 In this regard, Ms. Karibzhanova and Mr. Moscow have failed to disclose the true

purpose of the Section 1782 Application.  That is bad faith, pure and simple.  Section 1782

should not be used to for the purposes of harassment or to intimidate and threaten the targets of

the Section 1782 discovery.  *See Mees*, 793 F.3d at 302 n. 18 ("[I]f a § 1782 application is made

in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant

materials, the court is free to deny the application *in toto*." (international quotation omitted)).

 Through no fault of this Court, the decision to grant the Application was based on false

and misleading information about Aidan, which he had no opportunity to dispute and correct at

the time the Court was considering the Application, given the *ex parte* nature of the proceeding.

What is now clear, however, is that Ms. Karibzhanova and her lawyers are using this Section 1782 proceeding to leverage a $300 million settlement from Aidan by threatening to expose his and his friends and colleagues' personal affairs to the world.

Should Ms. Karibzhanova be entitled to obtain such private information through the issuance of subpoenas pursuant to the Section 1782 Order, Aidan and other third parties are at risk of further harassment from Ms. Karibzhanova and Mr. Moscow. Further, allowing such harassment to occur through the use of Section 1782, which is intended to aid litigants in foreign proceedings who genuinely need assistance obtaining information in the United States, is not an intended goal of the statute. Accordingly, under the present circumstances, this Court should enter an order vacating the Section 1782 Order that granted Ms. Karibzhanova's Application and appointed Mr. Moscow as Commissioner.

### C.    The Court Should Vacate the Section 1782 Order and Quash the Subpoenas Issued Thereunder Because the Section 1782 Order Violates the Statutory Requirements

Based on the evidence submitted in the Declarations of Aidan and Ms. Bérard, this Court should vacate the Section 1782 Order for the reasons stated above. If the Court is not inclined to do so on that basis, the Court should reconsider whether the statutory requirements under Section 1782 provided it with the authority to issue the Section 1782 Order and conclude that the Application should have been denied.

### 1.    The Court May Order the Issuance of Subpoenas Only After Determining That the Statutory Requirements of Section 1782 Are Met

An applicant seeking discovery under Section 1782 must establish three statutory elements:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign

tribunal, and (3) the application is made by a foreign or
international tribunal or any interested person.

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). The

responsibility of determining who "resides (or is found) in the district" statutorily resides solely

with the District Court and is a necessary element—in fact, the first-listed element—that must be

established before the Court grants a discovery application under Section 1782. "A discovery

application under 28 U.S.C. § 1782 presents two inquiries:  first, whether the district court is

authorized to grant the request . . . ."  *In re Application of Harry Sargeant, III*, 278 F. Supp. 3d

814, 819 (S.D.N.Y. 2017) (quoting *In re Application of Grupo Qumma, S.A. de C.V.*, No. 8-85,

2005 WL 937486, at *1 (S.D.N.Y Apr. 22, 2005)).

No action on a Section 1782 application can be taken until the statutory prerequisites

have been met, as determined by the Court, and only then shall the Court "decide whether to

exercise its discretion."  *Sargeant*, 278 F. Supp. 3d at 819; *see also In re Petrobras Sec. Litig.*,

393 F. Supp. 3d 376, 379 (S.D.N.Y. 2019) ("Before deciding whether to exercise [the court's

discretionary power under Section 1782], however, the district court must first conclude that the

petition satisfies three mandatory requirements found in the language of the statute . . . .").  It is

the responsibility of the Court alone to determine whether the statutory elements have been met,

and only after such determination has been made is the court vested with the power to exercise

its discretion in deciding whether or not to grant a Section 1782 application.

> **2.     The Section 1782 Order Violates Section 1782 Because It Vests the
> Applicant's Counsel with the Authority to Issue Subpoenas Without a
> Determination by the Court that the Person from Whom Discovery is
> <u>Sought Resides (or is Found) in the Southern District of New York</u>**

Here, entry of the Section 1782 Order was based on a legal mistake, as it violates Section

1782 by granting Mr. Moscow the right to determine who "resides (or is found) in" the Southern

District of New York for purposes of issuing subpoenas, a determination that must be made by the District Court prior to the issuance of any subpoena.  It is legal error for the Court to abrogate its duty to conclude that the first requirement has been met, *i.e.*, that a party "resides (or is found) in" the district over which the Court has jurisdiction, and therefore, the Court should vacate the Section 1782 Order under Federal Rule 60(b).

In this regard, the Section 1782 Order does not satisfy the first statutory element.  Section 1782 provides the Court with the discretionary authority to order a person to give testimony or produce documents *only when* the person "resides (or is found) in the district of the district court."  28 U.S.C. § 1782(a).  If the person does not reside or is not found in that district, the court has no authority to order discovery.

The Section 1782 Order states,

> [T]he Court GRANTS the application pursuant to 28 U.S.C. § 1782 and appoints John W. Moscow as Commissioner. Mr. Moscow is vested with the authority to issue subpoenas seeking (i) relevant testimony and documents as may be found within the jurisdiction of this Court, including testimony from bankers, accountants, and business associates; (ii) documents pertaining to companies and bank accounts associated with Aidan and his nominee owners; and (iii) correspondent banking records and records relating to securities ownership, custodianship, and transfers, and documentation and testimony relating to real estate holdings. Mr. Moscow is admonished in this regard to limit his subpoenas to parties located within the Southern District of New York, and to hew closely to the categories of discovery in Applicant's submissions to the Court.

Dkt. No. 9, at 7.

Neither the Application nor the Section 1782 Order identifies with any specificity the persons or entities to which Mr. Moscow is authorized to issue subpoenas.  Thus, the Section 1782 Order necessarily vests with Mr. Moscow the right to determine who resides or is found in the Southern District of New York.  Mr. Moscow, who represents Ms. Karibzhanova, however,

is hopelessly conflicted, cannot be expected to be impartial, and most importantly, cannot make a judicial determination of whether a person resides or is found in the District.

Allowing the party bringing a Section 1782 application to determine whether the statutory elements have been met impermissibly outsources a judicial function into the hands of a private litigant.  The burden is on the party bringing the application to demonstrate to the court that all statutory requirements have been met:  "Only after finding that the motion satisfies these three requirements may the court proceed to its discretionary analysis." *Petrobras Sec. Litig.*, 393 F. Supp. 3d at 380.  When the applicant cannot prove that the statutory requirements have been met, the application must be denied. *See, e.g.*, *In re Petition of Arturo Pedro Pablo Escallón Lloreda*, 323 F. Supp. 3d 552, 556 (S.D.N.Y. 2018) (denying Section 1782 application because "[t]he Petitioner has failed to carry his burden to show that the [persons from whom discovery was sought] were residents of the Southern District of New York as of the time he attempted to serve them").

Here, the Section 1782 Order states that "Mr. Moscow is admonished . . . to limit his subpoenas to parties located within the Southern District of New York," Dkt. No. 9, at 7, but this admonishment does not meet the requirement that the Court decide for itself whether the burden of proof on all three statutory requirements have been met. *See Petrobras Sec. Litig.*, 393 F. Supp. 3d at  379-80.  The Section 1782 Order impermissibly relieves Ms. Karibzhanova of the burden of proving that all statutory requirements have been met and instead gives Mr. Moscow the right to adjudicate for himself whether or not these requirements have been met.

The plain language of the statute requires a judicial determination that a person "resides (or is found)" in the Southern District *before* it confers the Court with the power to authorize the issuance of subpoenas.  The Section 1782 Order violates the statutory language on two grounds:

(1) by allowing Mr. Moscow to issue subpoenas to persons without a finding by the district court that the person to whom the subpoena is issued "resides (or is found)" in the Southern District, and (2) by allowing Mr. Moscow to make a judicial determination about whether a person is found or resides in the Southern District of New York.  Because the Section 1782 Order violates the statutory language, the Section 1782 Order should be vacated, all subpoenas issued pursuant to the Section 1782 Order should be quashed, and all documents produced pursuant to subpoenas should be destroyed or returned to the subpoenaed individual or entity.

### 3.   In the Event that Ms. Karibzhanova's Appeal in Kazakhstan is Unsuccessful, There Will Be No Foreign Proceeding in Which Ms. Karibzhanova Can Use the Discovery Sought in Her Application

Each of Ms. Karibzhanova's actions filed in Kazakhstan have been dismissed, Tukulov Dec., at ¶ 13, and Mr. Moscow's assertion that he may file further claims in other countries, in his letter to the Court dated June 4, 2021, does not satisfy the second statutory element, which requires that discovery be "for use in a foreign proceeding before a foreign tribunal."  *See* Moscow Letter dated June 4, 2021, Dkt. No. 8.

In *Intel Corp. v. Advanced Micro Devices, Inc.*, the United States Supreme Court explained that while a proceeding need not be "pending" or "imminent," it must be within "*reasonable* contemplation."  542 U.S. 241, 259 (2004) (emphasis added).  Therefore, "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated."  *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.P.*, 798 F.3d 113, 123 (2d Cir. 2015).  The court must "assess the indicia of whether the contemplated proceedings were within reasonable contemplation *at the time the § 1782 application was filed*."  *Id.* at 124 (emphasis added). Merely retaining counsel and "discussing the *possibility* of initiating litigation" is not indicative

of proceedings within "reasonable contemplation." *See id.* Rather, the applicant should present to the court "the legal theory supporting such a proceeding" and should "clearly lay out either the content of his claims or . . . a sufficiently concrete basis for [the proposed claims]." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101 (2d Cir. 2020).

The "proposed" proceedings to which Mr. Moscow refers in his June 4 letter cannot be said to be within "reasonable contemplation" because Ms. Karibzhanova is misguided in her attempt to suggest that numerous individuals and entities possess information relevant to Aidan's finances, and she even admits in her pleading filed in the Medeu District Court that she "*is not currently aware of how and on whose name such community property was registered, where the property is currently located and by whom it is used or managed.*" Karibzhanov Dec., Ex. B, at 2. Further, Mr. Moscow has not presented to the Court "some concrete basis from which it can determine that the contemplated proceeding[s] [are] more than just a twinkle in counsel's eye." *See Certain Funds*, 798 F.3d at 124. It is also problematic that these foreign proceedings are, as Mr. Moscow explains, dependent upon dismissal of the action in Kazakhstan. *See* Moscow Letter, at 2. As there has been no decision in Ms. Karibzhanova's pending appeal as to whether or not she will be permitted to proceed on her claims in the Medeu District Court, any plan to initiate further foreign proceedings was not "within reasonable contemplation *at the time the § 1782 application was filed.*" *Certain Funds*, 798 F.3d at 124 (emphasis added).

### D. Upon Further Review, the Court Should Find that the *Intel* Factors Strongly Disfavor Disclosure of the Documents and Testimony Ms. Karibzhanova Seeks and, Therefore, Vacate the Section 1782 Order

Assuming, *arguendo*, that the three elements of the statute have been met, the Court should reconsider its analysis of the *Intel* factors and conclude that Ms. Karibzhanova's Application should not have been granted.

20

The law regarding Section 1782 applications is relatively clear.  District courts are authorized but not required to order the issuance of subpoenas for the discovery of information for use in foreign proceedings.  *Brandi-Dohrn*, 673 F.3d at 80, 83.  Once the district court has determined that the statutory requirements have been met, the court may consider the following non-exclusive list of factors (the "*Intel* factors") in deciding whether or not to grant discovery:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

*In re del Valle Ruiz*, 939 F.3d 520, 533-34 (2d Cir. 2019) (quoting *Intel*, 542 U.S. at 264-65). The court may also consider an applicant's purpose for seeking discovery and deny such discovery if the court finds that the applicant initiated the matter to harass the party affected by the request.  *Brandi-Dohrn*, 673 F.3d at 81; *Mees*, 793 F.3d at 299 n.10, 302 n.18; *see In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("'[P]arties concerned in a particular case that a [Section] 1782 applicant is attempting to use foreign litigation as a ruse for obtaining discovery' . . . 'can and should bring evidence of such chicanery to the . . . court's attention.' Should such evidence exist, it . . . might support denying the Section 1782 application altogether." (quoting *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015))).

Ultimately, in exercising its discretion, the court must keep in mind the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of

assistance to our courts." *Brandi-Dohrn*, 673 F.3d at 81 (quoting *In re Metallgesellschaft*, 121

F.3d 77, 79 (2d Cir. 1997)).

1.      **The First *Intel* Factor Weighs Against Disclosure Because**
        **of the Lack of Specificity of the Persons to be Subpoenaed**

The first *Intel* factor considers whether "the person from whom discovery is sought is a

participant in the foreign proceeding." *Intel*, 542 U.S. at 264.  As stated above, the Section 1782

Order improperly vests Mr. Moscow with the authority to decide for himself who will receive a

subpoena and whether that person or entity is located within this District.  As such, the Section

1782 Order does not meet the requirement that the Court decide for itself whether the burden of

proof on all three Section 1782 statutory requirements have been met.  *See Petrobras Sec. Litig.*,

393 F. Supp. 3d at  379-80.  Further, Mr. Moscow has not provided Aidan or his counsel with

any notice regarding any of the subpoenas he may have served to date.

The result is that neither the Court nor Aidan knows which individuals or entities Mr.

Moscow has subpoenaed, and therefore it is unknown whether "the person from whom discovery

is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264.  However, this lack

of specificity should weigh against disclosure, especially since the motive here is to seek

discovery essentially from Aidan—who <u>is</u> a participant in the foreign proceeding—in order to

expose his personal and business affairs to the world.  *See, e.g.*, *Schmitz v. Bernstein Liebhard &*

*Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("Although technically the respondent in the district

court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their

opponent in the German litigation.  *Intel* suggests that because DT is a participant in the German

litigation subject to German court jurisdiction, petitioner's need for § 1782 help 'is not as

apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising

abroad.'" (quoting *Intel*, 542 U.S. at 264)); *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (same).

> **2.**      **The Second *Intel* Factor Weighs Against Disclosure At This Time As Whether the Medeu District Court Will Allow Discovery Depends on Ms. Karibzhanova's Success In Her Pending Appeal in Kazakhstan, and Any Such Discovery Requested May Be Prohibited by the Court**

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 642.  A foreign court's lack of receptiveness to assistance from a United States court is evidenced by "*authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782."  *In re Republic of Kazakhstan*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)).  Such proof includes the foreign country's "'judicial, executive or legislative declarations' that 'specifically address the use of evidence gathered under foreign procedures.'"  *Id.* (quoting *Euromepa*, 51 F.3d at 1100); *see Schmitz*, 376 F.3d at 84-85 (holding that the district court did not abuse its discretion in denying a Section 1782 application because ordering discovery over the German government's objection to assistance from the United States court "would not promote the twin aims of §1782" and "would in fact encourage foreign countries to potentially disregard the sovereignty concerns of the United States and generally discourage future assistance to our courts").

Here, Ms. Karibzhanova's claims in the Medeu District Court have been dismissed, and she has appealed said decision.  Tukulov Dec., at ¶¶ 13-14.  Should she succeed in her appeal, the Medeu District Court may rule on her discovery request there, which, if granted, would require production of the information she purportedly seeks through issuance of subpoenas in the United States.  Neither Ms. Karibzhanova nor her counsel has provided any evidence that they

23

have informed the Medeu District Court of this proceeding in the United States, *see* Karibzhanov Dec., at ¶ 6, and instead of allowing the Medeu District Court to rule on her request for discovery in the Kazakhstan proceeding, should her claims be reinstated, *see* Tukulov Dec., Ex. B, she has initiated this proceeding just two days after filing her pleading in Kazakhstan.  To now seek the same discovery in the United States conflicts with even her own position on the law in Kazakhstan, that "[t]he particulars of monetary funds on bank accounts, participation in foreign companies, tax returns, etc., constitute a secret protected by law, which *may only be disclosed by the court order*."  *Id.* at 3 (emphasis added).

Aidan does not dispute Ms. Karibzhanova's own position concerning the high threshold for obtaining a court order for discovery in Kazakhstan.  According to Aidan's counsel in Kazakhstan, the Republic of Kazakhstan Code of Civil Procedure ("CPC"), Article 73.4, provides, "If a party or other person to the proceeding finds it difficult to present evidence, a district court at their request shall assist them in the obtaining of evidence."  Tukulov Dec., at ¶ 22a.  Further, Article 73.5 of the CPC provides, "Motion to assist in the production of evidence must state the evidence, circumstances relevant to the case which such evidence may prove or disprove, reasons which prevent the party from obtaining such evidence, and its location."  *Id.* at ¶ 5b.  Should Ms. Karibzhanova's claims be reinstated and the Medeu District Court decline her request for discovery, such a declaration would serve as authoritative proof that the Medeu District Court would not be receptive to foreign assistance in the Kazakhstan proceeding, and any order compelling discovery in the United States would certainly not promote the twin aims of Section 1782.  The Court should exercise its discretion and allow Ms. Karibzhanova's appeal to be resolved in Kazakhstan and the Medeu District Court to rule on Ms. Karibzhanova's

discovery request should her claims be reinstated, which will inform this Court of the Medeu

District Court's receptivity to foreign assistance in the Kazakhstan proceeding.

> 3.  **The Third *Intel* Factor Weighs Against Disclosure At This Time As Whether the Medeu District Court Will Allow Discovery Depends on Ms. Karibzhanova's Success In Her Pending Appeal in Kazakhstan, <u>and Any Such Discovery Requested May Be Limited by the Court</u>**

The third *Intel* factor is focused on "whether the § 1782(a) request conceals an attempt to

circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

United States." *Intel*, 542 U.S. at 265. "'[P]roof-gathering restrictions' are best understood as

rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as

rules that *fail to facilitate* investigation of claims by empowering parties to require their

adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20

(alteration in original).

As discussed under the second *Intel* factor, whether the Medeu District Court would

allow Ms. Karibzhanova to seek discovery in the Kazakhstan proceeding, should her claims be

reinstated, and if so, what restrictions it would place on her ability to obtain discovery, has not

been decided. Such a decision is necessary, as Ms. Karibzhanova has explained that the

documents she seeks may only be obtained pursuant to court order. Tukulov Dec., Ex. B, at 3.

If the Medeu District Court has the occasion to consider Ms. Karibzhanova's discovery request

and denies or in any way limits her request, any effort to seek discovery in the United States

outside the scope of the Medeu District Court's order is surely an attempt to circumvent the

proof-gathering restrictions implemented by courts in Kazakhstan. Therefore, to honor any

restrictions or limitations that the Medeu District Court may order, the Court should exercise its

discretion to await Ms. Karibzhanova's appeal and any decision of the Medeu District Court

25

regarding discovery before requiring compliance with the Section 1782 Order and any subpoenas issued pursuant to it.

### 4.     The Fourth *Intel* Factor Weighs Against Disclosure As Ms. Karibzhanova's Requests Are Overbroad and Unduly Intrusive and Burdensome

The fourth *Intel* factor focuses on the scope of the discovery, including whether Ms. Karibzhanova's request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by apply the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Ex parte Application of Léa Schwery Abdalla*, No. 20-mc-727, 2021 WL 168469, at *6 (S.D.N.Y. Jan. 19, 2021) (quoting *Mees*, 793 F.3d at 302).  A review of the number of subpoenas to be issued and the scope of the subpoenas is necessary to determine whether they are unduly intrusive or burdensome.  *See id.* ("the sheer number of entities and broad time span bespeak of a fishing expedition.").

As detailed above, Ms. Karibzhanova and Mr. Moscow have made numerous false accusations that Aidan owns or otherwise has a financial interest in various companies, investments, banks, and real property.  Numerous companies and entities which have no ties to Aidan have been or will be issued subpoenas under this Court's order.  Subpoenas served on non-parties without relevant information are by definition unduly burdensome.  Here, the non-parties served with subpoenas, however, do not have any information concerning the underlying litigation, and, therefore, will likely not be in a position to object to the subpoena before spending their time and expense searching for documents to ensure compliance.  Indeed, the responding person may well produce a great many irrelevant documents that disclose transactions having nothing to do with Aidan or his assets.

Aidan has not been served with the subpoenas, but he believes that they are not being served on persons with relevant information or narrowly tailored to limit discovery to relevant information.  Instead, he believes that the subpoenas are designed not to discover "information concerning [him] or [his] assets, but of confidential information and business dealings of people who [Ms. Karibzhanova] believes will pressure [him] to succumb to her settlement demands in order to keep their own information confidential and out of the international press." Karibzhanov Dec., at ¶ 13.

The Application has simply failed to provide sufficient evidence to the Court that the persons who will be subpoenaed have relevant information and, therefore, will not be unduly burdened in responding to the subpoenas. Without providing any evidence—no affidavits from investigators or documents from the purported investigation—Mr. Moscow simply declares, for example, that "[t]he investigation has established" that Aidan "was active in highly lucrative privatization deals in several counties, including telecoms, gas and mineral rights," Moscow Dec., at ¶ 15; "is the majority owner of funds invested in Paladigm Group," *id.*, at ¶ 17;  and has a "financial connection to the privatization of mineral rights owned by Kaz Minerals," *id.*, at ¶ 18.  Aidan has denied these false allegations.  *See* Karibzhanov Dec., at ¶ 11.  Because Mr. Moscow has failed to provide sufficient evidence of what he claims his secret investigation has established, the Court should quash any outstanding subpoenas and vacate the Section 1782 Order in order to ensure that subpoenas issued and to be issued are not overbroad and unduly intrusive and burdensome.

Moreover, Mr. Moscow has not provided the Court with any indication of the number of subpoenas or the scope and breath of the subpoenas he has issued or intends to issue.  Therefore, the Court is not able to determine whether the subpoenas are narrowly tailored to meet the

applicant's needs.  For this reason alone, the Court should find that Ms. Karibzhanova has not provided sufficient evidence that her application is narrowly tailored, refuse to "blue pencil" or redraft her application and vacate the Section 1782 Order.  *See Abdalla*, 2021 WL 168469, at *6.

Finally, Federal Rule 26 allows a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by "forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1).  As discussed above, it is apparent that Ms. Karibzhanova's efforts are an attempt to harass and smear the name of not only a foreign individual, Aidan, but also his friends and business colleagues, including Ms. Bérard.  These efforts to harass both foreign and domestic citizens is something the Court should not allow.  Ms. Karibzhanova has proven that she will not hesitate to commit wrongful acts, including violating the law for her own financial benefit, given that she has overstayed her visa in the past and failed to produce any evidence in the Family Court proceedings indicating that she had been lawfully living in the United States and in the Kazakh divorce proceedings, where she unsuccessfully argued that she was a U.S. resident.  Karibzhanov Decl., at ¶ 11j.

Mr. Moscow's efforts to threaten Aidan's and his friends and colleagues' privacy and to leverage his former association with the New York County District Attorney's Office even further demonstrate that Ms. Karibzhanova's Application was filed with the intent to harass and embarrass Aidan and his friends and colleagues so as to coerce Aidan into an extraordinary, unreasonable settlement of $300 million.  *See* Karibzhanov Dec., Ex. A, Ex. B.  Allowing Ms. Karibzhanova to use the U.S. judicial system to extort her ex-husband places the U.S. judicial system in a negative light and certainly would not encourage foreign countries to provide similar assistance to our citizens, which is one of the broad aims of Section 1782.  *See Brandi-Dohrn*, 673 F.3d at 81.

Because Ms. Karibzhanova's Application is utterly overbroad and seeks information completely unrelated to her claims in the Kazakhstan proceeding and was filed with the intent to harass Mr. Karibzhanov, he respectfully requests that this Court vacate the Section 1782 Order, which granted Ms. Karibzhanova's Application. *See Brandi-Dohrn*, 673 F.3d at 81 ("Our cases acknowledge that a district court may deny the Section 1782 application where it suspects that the discovery is being sought for the purposes of harassment."); *In re Accent Delight Int'l Ltd.*, 869 F.3d at 135 (explaining that Section 1782 applications brought "as a ruse for obtaining discovery" should not be granted); *Schmitz*, 376 F.3d at 85 ("[W]e find no error in the court's decision to deny rather than merely limit discovery.").

## II.   ALTERNATIVELY, THE COURT SHOULD QUASH ANY SUBPOENAS SERVED PURSUANT TO THE SECTION 1782 ORDER BECAUSE AIDAN KARIBZHANOV WAS NOT SERVED WITH NOTICE OF SAID SUBPOENAS

The Federal Rules govern discovery ordered in a Section 1782 action, unless indicated otherwise. 28 U.S.C. § 1782(a). Federal Rule 45 requires that notice of a subpoena commanding the production of documents be served on each party to the action before service upon the person to whom it is directed. Fed. R. Civ. P. 45(a)(4). This notice requirement extends to the party against whom such discovery is to be used in foreign litigation, although they are not necessarily a party to the Section 1782 proceeding. *See In re Reyes*, No. 19 Civ. 7219, 2019 WL 6170901, at *3 (S.D.N.Y. Nov. 20, 2019) ("As a party to the Philippines Proceeding, Bangladesh Bank was to be noticed under Rule 45(a)(4)."); *Hornbeam*, 2015 WL 13647606, at *5 ("[T]he Federal Rules generally require notice to one's actual or expected adversaries in anticipated foreign litigation.").

While some courts have declined to quash subpoenas for violation of the notice requirement absent a showing of prejudice, *In re Speer*, 754 Fed. App'x 62, 63-64 (2d Cir.

2019); *Reyes*, 2019 WL 6170901, at *3; *Hornbeam*, 2015 WL 13647606, at *5-6, *8, other courts have applied the requirement strictly, quashing any subpoena or prohibiting use of documents obtained from any subpoena for which all parties did not receive prior notice, without inquiring into whether there was any prejudicial effect, *see Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 411-12 (S.D.N.Y. 2001); *Mirra v. Jordan*, No. 13 Civ. 5519, 2014 WL 2511020, at *3 (S.D.N.Y. May 28, 2014); *Black v. Youngue*, No. 14-505, 2014 WL 7335030, at *2-4 (W.D. Pa. Dec. 19, 2014).  The latter is the correct approach.

The notice requirement is intended to "afford the other parties an opportunity to object to the production."  *Schweizer*, 93 F. Supp. 2d at 411; *Mirra*, 2014 WL 7335030 at 3.  The failure to provide notice of intended service of a subpoena is inherently prejudicial as it deprives other parties of the opportunity to object to the specific demands contained in the subpoena.  *Black*, 2014 WL 7335030 at *4 ("[Counsel's] blatant disregard of the notice requirement alone constitutes prejudice under the circumstances because Plaintiffs did not have the opportunity to object to the production of their personal information to the opposing party."); *see Murphy v. Board of Educ.*, 196 F.R.D. 220, 228 (W.D.N.Y. 2000) ("In an age where vast amounts of personal information is retained by outside sources, the abuse of Rule 45 subpoena power . . . raises serious public policy implications. . . . Taken to its logical extreme, any individual . . . could become subject to the unfettered disclosure of his or her personal information—while the judiciary is relegated to the role of forcing closed Pandora's box.").  Therefore, the Court need not consider whether failure to comply with the notice requirement was prejudicial.

Here, neither Aidan nor his counsel have been served with notice of any subpoenas issued pursuant to the Section 1782 Order.  To the extent that any subpoenas have already been served, Aidan has no way of knowing the details of the specific demands contained therein and,

consequently, has been deprived of the opportunity to object to the demanded production.  This is especially troubling, considering, as explained further herein, the false and misleading statements made in support of the Application, indicating Ms. Karibzhanova's intent to seek documents and testimony pertaining to information completely irrelevant to the Kazakhstan proceeding.  Accordingly, Aidan respectfully requests that the Court quash any subpoenas that Mr. Moscow has already served pursuant to the Section 1782 Order.

<u>CONCLUSION</u>

Based on the foregoing, Aidan respectfully requests that the Court quash any subpoenas Mr. Moscow has already served and vacate the Section 1782 Order, which appointed Mr. Moscow as Commissioner and granted Mr. Moscow the authority to issue subpoenas to obtain information for use in the Kazakhstan proceeding.

Dated:  August 2, 2021

Respectfully submitted,

MENZ BONNER KOMAR & KOENIGSBERG LLP

By: _____
Patrick D. Bonner, Jr.
John R. Menz

One North Lexington Avenue, Suite 1550
White Plains, New York 10601
Tel.:  (914) 949-0222
Fax:  (914) 997-4117
*Attorneys for Movant Aidan Karibzhanov*