# EXHIBIT E



# Apostille

(Convention de La Haye du 5 Octobre 1961)

1. Country:     United States of America

   This public document

2. has been signed by **Luis M. Diaz**

3. acting in the capacity of **County Clerk**

4. bears the seal/stamp of the **county of Bronx**

   Certified

5. at New York City, New York      6. the 9th day of January 2019

7. by Deputy Secretary of State for Business and Licensing Services, State of New York

8. No. NYC-1166586

9. Seal/Stamp                       10. Signature



*Whitney A Clark*

———————————————
Whitney A. Clark
Deputy Secretary of State for Business and Licensing Services

Apostille (REV: 09/25/12)

STATE OF NEW YORK
COUNTY OF BRONX         SS:
COUNTY CLERK'S OFFICE

I, Luis M. Diaz, County Clerk of the County of Bronx, State of New York and also Clerk of the Supreme Court in and for said County and State, the same being a Court of Record and having a seal;

DO HEREBY CERTIFY THAT SCHANFIELD, NAOMI  SC2545542
Term 3/18/2016 to 3/18/2020

Whose name is subscribed to the annexed affidavit, deposition, certificate of acknowledgment or proof, was at the time of taking the same a NOTARY PUBLIC in and for the State of New York, duly commissioned and sworn and qualified to act as such throughout the State of New York; that pursuant to law a commission, or a certificate of their official character, and autograph signature, have been filed in my office; that as such the Notary Public was duly authorized by the laws of the State of New York to administer oaths and affirmations, to receive and certify the acknowledgment or proof of deeds, mortgages, powers of attorney and other written instruments for lands, tenements and hereditaments to be read in evidence or recorded in this State, to protest notes and to take and certify affidavits and depositions; and that I am well acquainted with the handwriting of such Notary Public or have compared the signature on the annexed instrument with their autograph signature deposited in my office,

IN WITNESS WHERE OF, I have hereunto set my hand and affixed my official seal at Bronx, Bronx County, New York on January 9, 2019

*Luis M. Diaz*

LUIS M. DIAZ
BRONX COUNTY CLERK



**Department of State**

STATE OF NEW YORK
DEPARTMENT OF STATE
ONE COMMERCE PLAZA
99 WASHINGTON AVENUE
ALBANY, NY 12231-0001
WWW.DOS.NY.GOV

> Use this affidavit at your own risk. The Department of State (the "Department") does not guarantee that this affidavit is suitable for all purposes, or that this affidavit will be accepted by any other office for filing. The user of this affidavit agrees to hold the Department harmless for any and all claims which may arise as a result of completing this affidavit. If you have any questions regarding the applicability of this affidavit, please consult with an attorney. The Department is not responsible for any errors caused as a result of completing this affidavit.

**AFFIDAVIT**

THE STATE OF NEW YORK

COUNTY OF New York

I, Ofor Bikel (Print Name), being duly sworn, deposes and says:

1. I have affixed hereto the following document: transcript of court appearance (Describe the document which is affixed)

2. The document attached hereto is: (check one):

   ☒ an original;

   ☐ a true copy having obtained the same from: _____ (Indicate where the document was obtained)

   _____
   Signature of Affiant

Sworn to before me on this 9th day of January, 20 19

_____
Notary Public Signature

NAOMI SCHANFIELD
Notary Public, State of New York
Registration #02SC62...
Qualified in Bronx C...
Commission Expires Marc...

--- REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY ---

DOS-2091 (07/17)

1

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - CIVIL TERM - PART 31
------------------------------------------------X
MAKHPAL KARIBZHANOVA,

                                    Plaintiff,

          -against-            Index No.  309346/17

AIDAN KARIBZHANOV,

                                    Defendant.
------------------------------------------------X
                               71 Thomas Street
                               New York, New York
                               January 4, 2019
B E F O R E:

              HONORABLE LAURA DRAGER,
                    Supreme Court Justice


A P P E A R A N C E S:


NEWMAN & DENNEY, PC
Attorneys for the Plaintiff
570 Lexington Avenue
New York, New York 10022
BY:   LOUIS I. NEWMAN, ESQ.


BIKEL & SCHANFIELD
Attorneys for the Defendant
18 East 48th Street
New York, New York 10017
BY:   DROR BIKEL, ESQ.
BY:   DANIT HALBERSTEIN, ESQ.


                     (Continued)
```

```
 1
 2   A P P E A R A N C E S:
 3
     THE LAW OFFICES OF DIAMOND & FEE, PLLC
 4   Attorneys for the Child
     150 East 58th Street
 5   New York, New York 10155
     BY:   TARA DIAMOND, ESQ.
 6

 7
     JO ANN DOUGLAS, ESQ.
 8   Attorney for the Child
     170 Second Avenue
 9   New York, New York 10003

10

11

12
     ALSO PRESENT:   ANNA TOKMAKOFF
13                   (Russian Interpreter)

14

15

16
                                 Diane Kavanaugh, RPR
17                               Senior Court Reporter

18

19

20

21

22

23

24

25

26
```

```
 1                      Proceedings
 2         COURT OFFICER:  Calling Index No. 309346 of
 3   2017 in the matter of Karibzhanova v. Karibzhanov.
 4         Counsel, your appearances.
 5         MR. NEWMAN:  Good afternoon, your Honor.
 6         For the plaintiff, Newman and Denney, 570
 7   Lexington Avenue, New York, New York, by Louis I.
 8   Newman.
 9         My client is to my immediate right.
10         MR. BIKEL:  Good afternoon, your Honor.
11         Dror Bikel, Bikel and Schanfield, with Danit
12   Halberstein, for the defendant, 18 East 48th Street,
13   suite 1001, New York, New York 10017.
14         MS. DIAMOND:  Tara Diamond, Law Offices of
15   Diamond and Fee, 150 East 58th Street, New York,
16   New York 10155, appearing on behalf of the child.
17         Good afternoon, your Honor.
18         MS. DOUGLAS:  Good afternoon, your Honor.
19         Jo Ann Douglas, appointed as co-guardian for
20   the child.
21         THE INTERPRETER:  Anna Tokmakoff, Russian
22   interpreter.
23         THE COURT:  Please be seated.
24         MR. BIKEL:  I believe my client will take the
25   child back to Kazakhstan.  His visa doesn't allow him to
26   stay here.  His mother is also sick.  It's not possible.
```

```
                        Proceedings
 1
 2    So he'll drop the order of protection.
 3              THE COURT:  The issue of the custodial
 4    obligations with respect to the child is not really what
 5    I am dealing with right now.
 6              What I am asking is what you are planning to do
 7    about the order of protection proceeding.
 8              MR. BIKEL:  We are going to withdraw it.
 9              THE COURT:  Fine.  Thank you.  That was really
10    all I needed to hear.
11              If the order of protection -- now, that's one
12    issue.
13              There is a second issue which concerns the
14    action by the plaintiff.
15              MR. NEWMAN:  If I may, your Honor.
16              We would respectfully request that the Court
17    retain jurisdiction.
18              THE COURT:  Retain jurisdiction of what?
19              MR. NEWMAN:  Of the divorce action, your Honor,
20    which also --
21              THE COURT:  Go ahead.
22              MR. NEWMAN:  Which also includes equitable
23    distribution and all the other incidental relief.
24              I would respectfully point out to the Court, as
25    I mentioned in our conference, that the Supreme Court of
26    Kazakhstan has undertaken to hear the appeal on the
```

```
                        Proceedings
 1
 2   divorce that was heard in Kazakhstan.  That will be
 3   heard on the 23rd of January.
 4           As I understand it, they will be deciding
 5   whether or not to dismiss the entire case or allow the
 6   Judgment of Divorce to stand.
 7           So in which case --
 8           THE COURT:  The only thing, as I understand,
 9   that is before the Court in Kazakhstan is whether to
10   dismiss -- whether to vacate the Judgment of Divorce.
11   Any other issue related to finances was appropriately
12   before the Court.
13           And, in fact, as I understand it, the parties
14   were instructed that they could proceed on the financial
15   issues, which are dealt with separately.
16           The only reason why I have kept the Judgment of
17   Divorce matter -- the divorce action pending here has
18   been because there was a lack of clarity about the
19   divorce proceedings in Kazakhstan, and also because
20   there was pending the order of protection matter.
21           At this point in time, though, there is a
22   Judgment of Divorce.  It's not that the Judgment of
23   Divorce has been vacated.  And, in fact, it is my -- in
24   Kazakhstan.
25           In fact, it is my understanding that there was
26   already an appellate action regarding the Judgment of
```

```
1                      Proceedings
2   Divorce in Kazakhstan that resulted in the favor of
3   retaining the Judgment of Divorce.
4           Am I correct?
5           MR. BIKEL:  Yes, your Honor.
6           THE COURT:  So at this point I believe the
7   application for the Judgment of Divorce in New York is
8   untimely and should be dismissed.
9           If, in fact, the Court in Kazakhstan vacates
10  the Judgment of Divorce, then you are free to take
11  whatever step you want.
12          But even under -- the only way that this Court
13  would take jurisdiction is if that divorce action was
14  outright dismissed.  If all that they do is vacate the
15  Judgment of Divorce, the divorce action in Kazakhstan
16  would have priority.
17          It is my understanding that the husband lives
18  primarily in Kazakhstan.  I'm not quite clear, but it
19  seemed to me that the reason why the wife was here was
20  because the unemancipated daughter was living here
21  because the parties agreed that the child should attend
22  a private school in New York, at least in part because
23  of her talent, and that that was a choice that the
24  parents had made.
25          But I don't see why at this stage New York has
26  any basis to retain jurisdiction of this action.  And if
```

| | |
|---|---|
| 1 | Proceedings |
| 2 | it is the case -- I also understand that the daughter is |
| 3 | a senior in high school at this point, that she has |
| 4 | applied to colleges, I don't know where and I don't need |
| 5 | to know where, and that those applications are pending. |
| 6 | So that even if the father were to remove the |
| 7 | child to Kazakhstan for some period of time, it would |
| 8 | not be as disruptive as it might have been if it was |
| 9 | earlier in this year, because we all know what happens |
| 10 | the second half of senior year in high school, which is |
| 11 | not much.  So that I don't think it would necessarily be |
| 12 | so damaging to the child if that were to happen. |
| 13 | I certainly think it would be better for this |
| 14 | child to have some parental oversight, which has not |
| 15 | been what is occurring while she has been in Manhattan. |
| 16 | I don't see a basis to retain this case. |
| 17 | MR. NEWMAN:  If I may, your Honor. |
| 18 | It is my understanding that the Supreme Court |
| 19 | in Kazakhstan has undertaken the appeal.  And that, in |
| 20 | reading the documents, and I can certainly provide |
| 21 | translations for the Court, that they are going to |
| 22 | determine whether or not the case in its entirety should |
| 23 | be dismissed, not that they will -- |
| 24 | THE COURT:  But they haven't done that yet. |
| 25 | MR. NEWMAN:  I understand that, your Honor.  It |
| 26 | is going to be heard on the 23rd of January. |

```
 1                         Proceedings
 2         THE COURT:  I'm not interested, though.
 3         Quite frankly, I have to tell you, counsel,
 4   this has been pending before me since 2017.  At the time
 5   this -- I mean, really, there's been a lot of
 6   misrepresentations here, and not on your part, I
 7   understand that.  You were not involved in the case
 8   early on.
 9         MR. NEWMAN:  Thank you, your Honor.
10         THE COURT:  But that a divorce action was even
11   filed here, at the time it was filed, was improper,
12   since there was a Judgment of Divorce that had been
13   filed -- had been obtained in Kazakhstan.
14         Then, I mean, I did keep it open, as I said,
15   largely because there was the order of protection matter
16   that was pending.  I went through great efforts --
17         I'm sorry, is this inconvenient to you?  To
18   have you look at your watch, sir, since you have been so
19   unresponsive to the Court.  You are a man who left your
20   child here unattended for months.  And it was only
21   because of the action that this Court took to protect
22   this child legally if something had happened to her in
23   your continued absence from her life.  So I'm sorry if
24   this is inconvenient to you.
25         The only reason why I kept this divorce action
26   pending was because of the open other matter and because
```

```
                                                                    9
 1                          Proceedings
 2    this is the second time that I am being told that there
 3    was an appellate process proceeding.  And after the
 4    first appellate process, the Judgment of Divorce stood.
 5              I have no basis to believe that the Judgment of
 6    Divorce won't stand.
 7              And if it doesn't stand, and if the entire case
 8    is dismissed, you can make whatever further application
 9    you want for a divorce at that time.  But it is entirely
10    improper for this Court to have this divorce action at
11    this time.
12              MR. NEWMAN:  May I --
13              THE COURT:  So the action is dismissed.
14              The matter of the order of protection is
15    withdrawn.
16              And, counsel, you have to take it upon yourself
17    to advise the Court when the child has been removed.
18              I assume that the father is immediately going
19    to remove the child, because I have three guardians in
20    place.  I need to end their stewardship of his daughter.
21              MR. BIKEL:  My client is telling me within a
22    week.
23              THE COURT:  Well, I expect to have -- you're
24    coming back to court in a week with proof that the child
25    has been removed because I don't believe your client.
26              I want to see that the child, in fact, has been
```

```
 1                         Proceedings
 2   removed.  I want to see that she has been withdrawn from
 3   the school.
 4             There are a lot of other players here whose
 5   lives have been disrupted by the failure of this family
 6   to treat anyone in this country respectfully.
 7             There's a school that has to be notified where
 8   the child has to be withdrawn.  This Court has to be
 9   formally notified so that the guardianships can end.
10   And you have a week to do it.
11             MR. NEWMAN:  On behalf of my client, we would
12   oppose any removal of the child from this jurisdiction
13   where she has lived for the last several years.  And
14   this is her home.
15             MS. DIAMOND:  Your Honor, for the record, I
16   understand why the child needs to be removed.  If dad
17   can't be here to be with the child, once your Honor's
18   order is lifted, there's no question that the mom is
19   going to be at the child's home.
20             As your Honor has said repeatedly, the only way
21   to really protect Iman is to have her dad there to be
22   able to protect her.  And if that means he can't be
23   here, while yes, it's unfortunate that she would need to
24   change schools in the middle of her senior year, that
25   is, at this point, what's going to be necessary to keep
26   this child safe and to protect her, given her extremely
```

```
 1                          Proceedings
 2   fragile mental health state right now.
 3           THE COURT:  May I hear from Miss Douglas, who
 4   is a co-guardian in this matter.
 5           MS. DOUGLAS:  Your Honor, I would just echo
 6   what Miss Diamond said.
 7           I would make it crystal clear that keeping this
 8   child safe isn't simply being safe from her mother.
 9   It's being safe even from the fear that her mother may
10   accost her sometime.  She's not prepared for that right
11   now.
12           THE COURT:  The Court should also note that I
13   have met with the child.  And I am aware of her fragile
14   circumstances.  I am also aware of the mother's fragile
15   circumstances.
16           I'm not trying in any way to suggest how this
17   came about, what responsibility, if any, the mother
18   bears in what has occurred.  I do think that,
19   irrespective of the mother, that the daughter has some
20   significant issues.  And the one thing that I do know is
21   that it is in her best interest to be with parental
22   supervision.
23           This Court cannot be a substitute, nor can any
24   order of protection be a substitute, for parental
25   supervision.
26           Whatever unfortunate break in the relationship
```

```
                        Proceedings
```

between the mother and daughter that has occurred cannot be repaired by this Court. And obviously the mother cannot -- and I am not faulting her for this, but the mother cannot at this point be the responsible parent for this child. It's very unfortunate, but I can't do anything about that at this point in time.

I am far more concerned that the child be under appropriate parental supervision. Perhaps if the child were stronger, the arrangement that had been created might have worked. But I think that it's just not appropriate. And I really do think that the only solution here is for the child to be with the one parent who she is comfortable being with at this point in time.

I do hope at some time, and this child will be turning 18, custody will no longer be an issue, I hope at that time that eventually a relationship between the mother and daughter can occur.

But based on the history of this case, my own observations of the daughter, what I have heard from both Miss Diamond and from Miss Douglas, and given that we're in the second half of the senior year in high school, I do believe that the best solution, admittedly not a great solution, is for the daughter to be with the father.

And since the father says he cannot stay in the

13

```
 1                      Proceedings
 2    United States, which would have been an alternative that
 3    I would have accepted, I don't see any other option but
 4    for the child to leave with the father to return to
 5    Kazakhstan.
 6              I do not believe that this Court has
 7    jurisdiction at this time to entertain the divorce
 8    action, given that there is a Judgment of Divorce.
 9              The divorce action here is dismissed.  I can't
10    predict the future.
11              The order of protection action is withdrawn.
12              And the only thing that remains is the
13    oversight that this Court now has as a result of the
14    guardianship proceeding that I will adjourn until -- I
15    can't do the 14th.  I will put this on for January 15th.
16              MS. DOUGLAS:  Thank you.
17              THE COURT:  For proof that the child has been
18    returned to Kazakhstan, with proof.  I need some real
19    proof.
20              MR. BIKEL:  I understand.
21              THE COURT:  And I don't need Miss Diamond here.
22    I need Miss Douglas here on that date to address the
23    dismissal of the guardianship proceeding.
24              MS. DOUGLAS:  Thank you, Judge.
25              THE COURT:  January 15th.  Thank you.
26              MR. BIKEL:  9:30?
```

```
                                                           14
                           Proceedings
        THE COURT:  9:30.
        COURT OFFICER:  Parties step back.

                  *       *       *       *

          Certified to be a true and accurate transcript
     of the stenographic minutes taken within.

                      Diane Kavanaugh
                      Diane Kavanaugh, RPR
                      Senior Court Reporter
```