UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF MAKHPAL KARIBZHANOVA FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:21-MC-00442-KPF<br><br>DECLARATION OF<br>**AIDAN KARIBZHANOV** |

**AIDAN KARIBZHANOV**, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am a citizen and resident of the Republic of Kazakhstan and the former spouse of Ms. Makhpal Karibzhanova ("Ms. Karibzhanova"). I am proficient in both writing and speaking English and fully capable of providing this declaration in the English language. I am fully familiar with the facts set forth herein.

2. I make this Declaration in support of my motion to quash subpoenas and vacate the Court's order granting Ms. Karibzhanova's application for judicial assistance pursuant to 28 U.S.C. § 1782.

### Matrimonial Proceedings in Kazakhstan

3. On May 15, 2018, Ms. Karibzhanova and I were divorced pursuant to an appeal judgment entered in the Almaty City Court in Kazakhstan.

4. Approximately three years later, on April 22, 2021, Ms. Karibzhanova filed a claim in the Medeu District Court of Almaty City in Kazakhstan ("Medeu District Court"), seeking division of property.

5. Since April 22, 2021, Ms. Karibzhanova has filed separate claims seeking the division of common property in the Medeu District Court and has filed appeals of the dismissal of her claims.

6.      At no time has Ms. Karibzhanova or her lawyers informed the Medeu District Court or me or my lawyers about the existence or status of her application to this Court for judicial assistance pursuant to 28 U.S.C. §1782 Application to this Court.

### Ms. Karibzhanova's Application for Judicial Assistance in the United States

7.      Prior to filing her application for judicial assistance pursuant to 28 U.S.C. §1782, (the "Application"), Ms. Karibzhanova issued several document preservation letters to individuals whom she falsely believes possess documents relevant to her claims before the Medeu District Court. A true and correct copy of one such letter, dated March 23, 2021 and addressed to Mr. Karibzhanov's acquaintance Mr. Dimitri Kryukov, is attached hereto as **Exhibit A**. This letter, from Ms. Karibzhanova's counsel, Adam S. Kaufmann, with whom John W. Moscow ("Mr. Moscow") practices law at Lewis Baach Kaufmann Middlemiss PLLC, makes apparent that Messrs. Kaufmann and Moscow seek to leverage their previous experience at the Manhattan District Attorney's Office in an effort to intimidate witnesses. Mr. Kaufmann's letter intentionally attempts to leave the impression with a non-U.S. citizen that he has the authority to initiate a criminal prosecution by claiming that "any conduct which may be interpreted as an attempt to dissuade Ms. Karibzhanova from pursuing her legal rights or deny her access to information, directed at Ms. Karibzhanova directly or any member of her family, may well be subject to criminal prosecution by the Office of the District Attorney of New York." Exhibit A at 2-3.

8.      Then, on April 8, 2021, Ms. Karibzhanova's counsel sent a letter to me, threatening to "put [my] affairs, and those of [my] friends and business colleagues, on display for the world to see" and "to litigate this matter in the courts and the international press" if I did not pay her over $300 million. A true and correct copy of this letter is attached hereto as **Exhibit B**.

2



9. Ms. Karibzhanova also sent private messages to various businesspeople in Kazakhstan who, according to her, are associated with me. For example, in a message dated April 9, 2021 to Almaz Irishev, Ms. Karibzhanova claimed that she would like to resolve this matter peacefully, and my decision not to give in her to demands will cause a massive scandal, letting down many people. She also referred to an attempt to organize a meeting with "high-level people from New York, Washington and London" to "stop" me from defending myself. As is demonstrated in this letter, and through previous correspondence, *see* Exhibit B, it is Ms. Karibzhanova, not me, who is attempting to cause a scandal here. A true and correct copy of the message to Almaz Irishev, along with an English translation, is attached hereto as **Exhibit C**.

10. On May 12, 2021, Ms. Karibzhanova filed an application for judicial assistance pursuant to 28 U.S.C. § 1782 (the "Application"), seeking the appointment of Mr. Moscow as Commissioner and permission for Mr. Moscow, as Commissioner, to issue subpoenas to various individuals and entities for the production of documents and testimony that Ms. Karibzhanova claims are necessary for use in the equitable distribution proceeding pending in the Medeu District Court in Kazakhstan. Neither I nor my lawyers received formal notice of the Application.

11. In the Application, Ms. Karibzhanova and Mr. Moscow have made numerous false and misleading representations, several of which I will clarify and correct:

    a. First, my ex-wife claims that I engaged in abusive and violent behavior toward her. *See* Affidavit of Makhpal Karibzhanova ("Karibzhanova Aff."), Dkt. No. 3, at ¶¶ 14-15, 18, 21. That is false. These claims of abuse and the claims of marital infidelity (which need not be further addressed) are entirely irrelevant to Ms. Karibzhanova's Application and thus were obviously made to tarnish my reputation and attempt to make good on Mr. Moscow's threat

3

to sully my reputation in the international press. *See* Exhibit B, *supra* ¶ 8, at 1-2 ("[Ms. Karibzhanova] is prepared to litigate this matter in the courts *and the international press if necessary*. . . . The question you need to ask yourself is whether you and your Kazakh partners want to read about your business dealings and personal escapades in the *New York Times*, the *Financial Times*, and the *Wall Street Journal*." (Emphasis added)). Additionally, these claims were made to prejudice this Court against me and my interests when deciding whether to grant the Application.

        b.        Second, Mr. Moscow simply asserts, without providing affidavits or declarations from any of the unnamed "investigators" with whom he has been working, that he "believe[s] that all information contained [in his declaration] is true." Declaration of John W. Moscow ("Moscow Decl."), Dkt. No. 5, at ¶ 5. Mr. Moscow then claims that "[t]he legal structure of assets in [my] control . . . is commensurate with purposefully obfuscated transactions and ownership structures designed to hinder efforts to uncover the identity of the true beneficial owner." *Id.* at ¶ 14. This is entirely false. While it is difficult to disprove the baseless assertion that I own assets through "ownership structures designed to hinder efforts to uncover the identity of the true beneficial owner," *id.* at ¶ 14, the veracity of the sworn statements of Ms. Karibzhanova and Mr. Moscow may be judged by matters they swore to that are within the jurisdiction of this Court.

        c.        I am a businessman, and as it is widely reported, I am one of the partners in the Visor Group, which does not do business in New York City or in the United States. I do not own, either directly or indirectly, any interests in the Verno Capital Group Limited or its affiliates ("Verno"), Mubadala Fund, the Paladigm Group or its affiliates, or ABA Bank or its affiliates, contrary to Ms. Karibzhanova's and Mr. Moscow's assertions. *See* Karibzhanova Aff.,

at ¶¶ 39, 41, 43; Moscow Decl., at ¶¶ 16-17. I was formerly a director at Verno, which is publicly available information and certainly did not require a team of investigators to uncover, but I had no ownership interest in the company. Additionally, I have no material financial connection to the privatization of mineral rights owned by Kaz Minerals, the privatization of the Koksay copper mines and the East Akzhar oil fields, or the privatization of oil and gas fields in Kazakhstan and the alleged related entities (Handoxx Inv. Ltd., Compass Global Investments Closed Unit Investment Fund, Silverstand Bay Limited, and Repulse Bay Limited), as is claimed in the Application. *See* Karibzhanova Aff., at ¶¶ 42, 45, 48; Moscow Decl., at ¶ 18. Although, over the course of my career, the firms that I have worked for acted as advisors on several privatization deals and were paid fees for their professional services, I did not acquire any ownership interest or material monetary benefit from those transactions and did not gain ownership of assets "through nominees and strawmen."

    d. I have no business connections with the State of New York, particularly New York City. I have no investments or banking relationships in New York City. To the extent that Ms. Karibzhanova or Mr. Moscow state otherwise, *see* Karibzhanova Aff., at ¶¶ 37, 41, 42, 45, 50; Moscow Decl., at ¶¶ 16, 17, such statements are baseless. I invite both Ms. Karibzhanova and Mr. Moscow to produce evidence verifying these allegations, which they claim are supported by documentation already in their possession and conversations with participants in certain ventures and unnamed private investigators. *See* Karibzhanova Aff., at ¶¶ 41, 42; Moscow Aff., at ¶ 4. Given that these allegations regarding my business ties to New York City are false, I suspect that neither Ms. Karibzhanova nor Mr. Moscow will be able to produce any legitimate substantiation.



  e. Instead, I believe that they will try to mislead this Court as they have done with respect to allegations concerning 240 Riverside Boulevard. It is alleged that I purchased a luxury apartment in early 2018 at The Heritage at Trump Place, located at 240 Riverside Boulevard New York, New York 10069 for $36 million. Memorandum of Law, Dkt. No. 1, at 21-22. Further, Mr. Moscow states that I filed an affidavit in the Family Court, affirming I have an address at Apartment 17C at 240 Riverside Blvd. Moscow Decl., at ¶ 20; *see* Karibzhanova Aff., at ¶ 52. Although I have stated that I "have an address" (not that I reside) at Apartment 17C at 240 Riverside Blvd. in some Family Court documents, I have never resided at that address, not even when I visited New York City to spend time with my daughters or meet with my lawyers. To the extent Mr. Moscow or Ms. Karibzhanova suggest that I purchased the Riverside Blvd. Apartment and that I resided or have ever lived in New York City, they are wrong. That I did not purchase an apartment at 240 Riverside Boulevard for $36 million and that I have never resided or lived in New York City are facts that must have been known to Mr. Moscow and are known by my ex-wife. Because of these misrepresentations to the Court, I am forced to address matters that were adjudicated in the Family Court.

  f. I engaged a real estate agent (**not** Edward Mermelstein as Ms. Karibzhanova alleges) to rent—not purchase— unit 17C - a two-bedroom apartment located at 240 Riverside Blvd. for my daughter's use. This approximately 1,600 square foot two-bedroom apartment cannot be confused with "a single 10,500-square-foot apartment" that was allegedly sold for $36 million. Memorandum of Law, Dkt. No. 1, at 21-22. My rental of apartment 17C was necessary because while my daughter resided with Ms. Karibzhanova in an apartment at 212 Fifth Avenue (property discussed in the following paragraph), there were many concerns about my daughter's safety due to Ms. Karibzhanova's violent and abusive conduct toward my

6



daughter. A Family Offense Petition, dated August 30, 2017, that I filed in the Family Court of the State of New York, County of New York, details my ex-wife's violent and abuse behavior toward our daughter and is attached hereto as **Exhibit D**.

      g.     As further support for the need to rent apartment 17C at Riverside Blvd., the court-appointed guardian for our daughter even stated to the Supreme Court of the State of New York, County of New York, in a divorce action commenced by Ms. Karibzhanova, "*I would make it crystal clear that keeping this child safe isn't simply being safe from her mother. It's being safe even from the fear that her mother may accost her sometime.*" Exhibit E at p. 11. The Court ultimately ruled that "*the mother [Ms. Karibzhanova] cannot at this point be the responsible parent for this child,*" and "*the best solution . . . is for the daughter to be with the father [Mr. Karibzhanov].*" Exhibit E at p. 12. A true and correct copy of the transcript containing this testimony and ruling is attached hereto as **Exhibit E**.

      h.     The lease of the two-bedroom Riverside Blvd. Apartment was for ten months, from November 2017 to September 2018 and was not renewed. Therefore, I no longer have any leasehold interest in apartment 17C at 240 Riverside Blvd. Additionally, I do not have any financial interest in or at 240 Riverside Boulevard. I do not own any shares in the building, have not purchased any apartment in the building, and have not purchased any apartment or interest in the building through associates or other entities. To be clear, I was in no way involved with whatever sale for $36 million may have occurred at 240 Riverside Boulevard. Certainly, Mr. Moscow and his investigators must know these facts, but instead of being truthful with the Court, Mr. Moscow chose to mislead the Court by failing to disclose to the Court (a) that apartment 17C at 240 Riverside Blvd was not purchased by me, (b) the relatively low value of Apartment 17C or (c) that Apartment 17C was not the 10,500 square foot luxury apartment that



was allegedly sold for $36 million. Mr. Moscow and Ms. Karibzhanova did not make those disclosures to the Court in their *ex parte* application for judicial assistance in order to mislead the Court into believing that there was some basis to believe that I had purchased a $36 million dollar apartment at 240 Riverside Blvd. in New York. *See* Moscow Decl., at ¶ 20; Memorandum of Law, at 21-22. I assume that Mr. Moscow has already issued subpoenas to Mr. Mermelstein and his related entities and received documents responsive to those subpoenas. I invite him to submit to this Court any evidence supporting the baseless allegations against me made in the Application.

        i.      An apartment at 212 Fifth Avenue, Apt. 3B, New York, New York 10010 (the "Fifth Avenue Apartment") was purchased for my daughters to live in while they attended school in New York. Ms. Karibzhanova currently resides in the Fifth Avenue Apartment. Karibzhanova Aff., at ¶ 51. Mr. Moscow's Declaration states, "Records confirm that the formation of [an] LLC and the purchase of the [Fifth Avenue Apartment] were brokered by New York-licensed attorney and real estate broker Edward Mermelstein and his associates." Moscow Decl., at ¶ 20. Given that Mr. Moscow represents my ex-wife, that sentence creates the unmistakable and false impression that I engaged Mr. Mermelstein to create the LLC and broker the purchase of the Fifth Avenue Apartment. However, Ms. Karibzhanova—not I—engaged the real estate agents that found the apartment and brokered the transaction. Ms. Karibzhanova—not I—engaged the attorneys that formed an LLC to purchase the apartment and create a trust for my then minor daughter, through which she would acquire one-half ownership of the LLC, with the other half owned by my older daughter. Notably, my ex-wife had herself named trustee of my younger daughter's trust, and she is now the manager of the LLC. My only role in the transaction was to provide the funds to the LLC owned by my daughters that purchased the Fifth

8



Avenue Apartment—a structure created by my ex-wife, not me. Once again, Mr. Moscow must have known this if Ms. Karibzhanova was honest with him, but purposely misled the Court, relying on half-truths or half-lies in aid of the *ex parte* Application. Since my daughters have left New York, Ms. Karibzhanova lives in the Fifth Avenue Apartment alone. However, it is unclear on what basis she continues to reside in the apartment. Contrary to what Ms. Karibzhanova alleges, we did not reach an agreement allowing Ms. Karibzhanova to reside in the apartment or providing for my payment of maintenance charges and property taxes. *See* Exhibit B, at 2. Further, my lawyers' previous efforts to obtain documentation about the apartment and its ownership as well as my younger daughter's trust have been met with great resistance. As a result of the foregoing, I do not intend to yield to Ms. Karibzhanova's additional demands for payments associated with the Fifth Avenue Apartment.

    j. My ex-wife's affidavit is even more egregious. She asserts that I have purchased or have financial interests in many properties in the United States, sometimes in my own name and sometimes in the names of nominees and have regularly used the services of Mr. Mermelstein. Karibzhanova Aff., at ¶¶50-52. That is utterly false. As stated above, Ms. Karibzhanova—not I—engaged Mr. Mermelstein to form the LLC, owned by my daughters, to purchase the Fifth Avenue Apartment and broker the purchase of the Fifth Avenue Apartment. I have never engaged Mr. Mermelstein to conduct any real estate transactions in the United States or elsewhere. Further, I do not own, directly or indirectly, any real property located in New York City, New York State, or in the United States, contrary to Ms. Karibzhanova's allegations. *See* Karibzhanova Aff., at ¶¶ 50-53. To be clear, I do not own, either directly or indirectly, any of the following real estate or ownership interests in such real estate: an apartment at the Heritage at Trump Place, 240 Riverside Boulevard in Manhattan; an apartment at the Plaza, 1

9



Central Park South, 768 5th Avenue, Apt. 1802, New York, New York; a unit at the Cipriani Club Residences, 55 Wall Street, Apt. 702, New York, New York; a unit at 520 Park Avenue; a home located at 2 Margo Way, Alpine, New Jersey; a villa located at 60-62 Beverly Park Cir., Beverly Hills, California. Ms. Karibzhanova has knowingly misled this Court in aid of her Application. It is hardly surprising that my ex-wife would make false statements in a sworn affidavit, given that she overstayed her visa in the past and failed to produce any evidence in the Family Court proceedings indicating that she had been lawfully living in the United States and in the Kazakh divorce proceedings, where she unsuccessfully argued that she was a U.S. resident.

        k.     Ms. Karibzhanova's Affidavit and Application paint a false picture of our marriage in several respects. In addition to the false allegations of abuse, Ms. Karibzhanova falsely states that I forced her to give up her modelling career. Karibzhanova Aff., at ¶¶ 9, 10. However, during an interview in 2012, she explained, "[M]y modelling career did not last for long – only a few months, until I met a prince on a white horse, my future husband. I never took this job too seriously anyway and have no regrets [of giving it up]. This is why this chapter of my life only makes me smile." Additionally, Ms. Karibzhanova falsely suggests that I did not allow her to work. However, during another interview in 2012, she was questioned about her source of income and stated, "My husband is a sufficiently wealthy individual. And I also have my own business, not large one, I own a café."

        12.     I have engaged lawyers in Kazakhstan to lawfully defend me against claims made by Ms. Karibzhanova in the Medeu District Court. Contrary to allegations made by Ms. Karibzhanova's, I have not threatened and have not instructed anyone to threaten any lawyer representing Ms. Karibzhanova and am not aware of any such threats having been made. In addition, I am not able and have not attempted to exert undue influence over the decisions of the

10



courts in Kazakhstan. I am doing what every other litigant does to persuade a court: I have engaged lawyers to lawfully argue my defense against Ms. Karibzhanova's claims in the Medeu District Court.

13.     I believe that Ms. Karibzhanova has engaged Mr. Moscow to – wittingly or unwittingly – seek discovery in the United States, not of information concerning me or my assets, but of confidential information and business dealings of people who she believes will pressure me to succumb to her settlement demands in order to keep their own information confidential and out of the international press.

14.     As a final matter, at no time have I or my lawyers been served with my ex-wife's Application, this Court's order granting the Application, or any subpoena issued pursuant to this Court's order. Any suggestion by Mr. Moscow or Ms. Karibzhanova that I have been difficult to locate is absurd. Ms. Karibzhanova is well aware of the law firm that previously represented me in the Family Court proceedings and my lawyers in Kazakhstan. Additionally, in a letter to me, dated April 8, 2021, *see* Exhibit B, Ms. Karibzhanova's counsel listed four of my email addresses (two of which are work contacts) and my mobile number, and during the hearing in the Medeu District Court on June 9, 2021, the court recited my residential address aloud in the courtroom, instructing any service to be effected at that address. If this is not enough, considering Mr. Moscow's assertion that he has conversed with world renowned investigators to support several allegations in the Application, it is questionable that such investigators would be unable to find some way to contact me, especially considering they were able to locate the



addresses of several targets of preservation letters mailed earlier this year. *See, e.g.*, Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 28, 2021

_____
AIDAN KARIBZHANOV