UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE APPLICATION OF MAKHPAL
KARIBZHANOVA FOR JUDICIAL
ASSISTANCE PURSUANT TO 28 U.S.C.
SECTION 1782

Case No. 1:21-MC-00442-KPF

---

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF AIDAN KARIBZHANOV'S MOTION TO VACATE COURT ORDER GRANTING 28 U.S.C. § 1782 APPLICATION AND TO QUASH SUBPOENAS

MENZ BONNER KOMAR & KOENIGSBERG LLP
One North Lexington Avenue, Suite 1550
White Plains, New York 10601
Tel.: (914) 949-0222
Fax: (914) 997-4117

*Attorneys for Movant Aidan Karibzhanov*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .............................................................................................................................2

    I.    THE RECENTLY DISCLOSED SUBPOENAS REFLECT AN ABUSE OF THE POWERS
          GRANTED TO COMMISSIONERS UNDER SECTION 1782 ..............................................2

    II.   THE POWERS GRANTED TO MR. MOSCOW IN THE SECTION 1782
          ORDER EXCEED THOSE WHICH ARE AUTHORIZED UNDER SECTION 1782 ................5

    III.  THERE CURRENTLY IS NO "FOREIGN PROCEEDING" PENDING IN KAZAKHSTAN .......9

CONCLUSION........................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                       **Page(s)**

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.P.*,
798 F.3d 113 (2d Cir. 2015)..................................................................................9-10

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019).........................................................................................5

*In re Del Valle Ruiz*,
342 F. Supp. 3d 448 (S.D.N.Y. 2018),
*aff'd*, 939 F.3d 520 (2d Cir. 2019) ..........................................................................6, 7

*In re Guo*,
965 F.3d 96 (2d Cir. 2020)...........................................................................................6

*In re Hill*,
No. M19-117, 2005 WL 1330769 (S.D.N.Y. June 3, 2005)......................................7-8

*In re Petrobras Sec. Litig.*,
393 F. Supp. 3d 376 (S.D.N.Y. 2019)..........................................................................5

*In re Pishevar*,
439 F. Supp. 3d 290 (S.D.N.Y. 2020)..........................................................................6

*In re Sargeant*,
278 F. Supp. 3d 814 (S.D.N.Y. 2017)..........................................................................5

*In re Sumar*,
123 F.R.D. 467 (S.D.N.Y. 1988) .................................................................................8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)......................................................................................................9

*Pfaff v. Deutsche Bank AG*,
No. 20 Misc. 25, 2020 WL 3994824 (S.D.N.Y. July 15, 2020) (Failla, J.)..............6, 7

Aidan Karibzhanov ("Aidan") respectfully submits this reply memorandum of law, together with the Second Declaration of Aidan Karibzhanov dated September 10, 2021 ("Second Aidan Decl."), the Declaration of Bakhyt Tukulov dated September 10, 2021 ("Second Tukulov Decl."), and the Declaration of Patrick D. Bonner, Jr., dated September 10, 2021 ("Bonner Decl.") and exhibits attached thereto, in further support of his motion to (i) vacate the Court's Order, dated June 15, 2021, which granted Makhpal Karibzhanova's ("Ms. Karibzhanova") application for judicial assistance pursuant to 28 U.S.C. § 1782 (the "Application") and appointed attorney John W. Moscow ("Mr. Moscow") as Commissioner (the "Order"), and (ii) quash any subpoenas that have been served to date by Mr. Moscow as Commissioner.

## PRELIMINARY STATEMENT

After filing his motion, Aidan and his counsel were provided with copies of seventeen (17) subpoenas that Mr. Moscow had issued pursuant to the Order, without notice to Aidan. As explained herein, the majority of these subpoenas were directed to individuals and entities that were never identified in the Application. The subpoenas seek information concerning foreign bank accounts belonging to non-parties that likewise were never mentioned in the Application and have no apparent connection to the Kazakh proceeding or to Aidan. As for the entities that were identified in the Application, very few of any of these entities received a subpoena. No subpoenas were issued, for example, relating to the alleged New York real estate holdings that formed the basis of the Application. These subpoenas are broad and grossly overreaching and make clear that Ms. Karibzhanova interprets the Order as granting extraordinary, unchecked and unrestrained powers to Mr. Moscow, allowing him to conduct a global fishing expedition for the information Ms. Karibzhanova desires. Indeed, they have already triggered two motions to intervene in this Court by non-parties. This is not the type of authority that Section 1782 affords,

and the Order should be vacated, and any subpoenas issued should be quashed.

Further, as set forth in the accompanying Tukulov Declaration (who serves as Aidan's Kazakh counsel), there is now a new and critical development – there currently is no foreign proceeding pending in Kazakhstan that can serve as the predicate basis for a Section 1782 action in this court. In fact, all of Ms. Karibzhanova's appeals in Kazakhstan have now been dismissed, and despite promises from her Kazakhstan and U.S. counsel, no new proceedings have been filed. Accordingly, this action should be dismissed on this basis alone.

## ARGUMENT

I. **THE RECENTLY DISCLOSED SUBPOENAS REFLECT AN ABUSE OF THE POWERS GRANTED TO COMMISSIONERS UNDER SECTION 1782**

Now that Aidan and his counsel have had an opportunity to review the subpoenas served pursuant to the Order, and the opposition to this motion, the following is unquestionably true – Ms. Karibzhanova cannot provide any support for the false, misleading and scandalous accusations she made in her Application, and the subpoenas that she served pursuant to the Order reflect an abuse of the powers granted to Mr. Moscow as Commissioner in this case.

The recipients of the seventeen subpoenas provided to Aidan (only after he filed his motion) include fourteen banks (the "Bank Subpoenas"), American Express, and an individual named Michelle Carson (connected with Verno Capital), who received two separate subpoenas. Bonner Decl., Exs. B-D. Of the fourteen banks receiving the Bank Subpoenas, only five were identified in the Application. Thirteen of the Bank Subpoenas request the production of records pertaining to SWIFT wire payments made through the recipient banks' correspondent banking systems – payments made to or from foreign bank accounts of non-parties that have nothing to

do with Aidan or the Kazakh proceeding.[1] Bonner. Decl., Ex. B. Other than the mention of a Kaz Minerals entity (to which Aidan denies material connection, *see* Decl. of Aidan Karibzhanov dated July 28, 2021 ("First Aidan Decl."), Dkt. No. 10-2, at ¶ 11(c)), not one of these individuals or entities was identified in the Application. Thus, no showing has been made that these alleged SWIFT payments have any relevance to the Kazakh proceeding. Moreover, none of these entities would have received notice that Mr. Moscow has subpoenaed information about their accounts, thereby giving them an opportunity to move to quash. *See* Second Aidan Decl. ¶ 6.

Further, in her opposition, Ms. Karibzhanova defends her Application by stating, "The Application identifies by name many entities, individuals and assets from which Makhpal seeks to take discovery." Ms. Karibzhanova Opp. Brief ("Opp."), Dkt. No. 30, at 12. She then lists ten (10) entities in footnote six, and yet only three of the ten entities listed received subpoenas (JP Morgan, Standard Chartered and American Express). Further, none of the seventeen subpoenas concern any of the real estate that Ms. Karibzhanova falsely claims Aidan owns in New York. Not a single subpoena seeks documents concerning the maintenance fees presumably paid on the alleged apartments, and none were directed to the two entities or to any of the nine persons who Ms. Karibzhanova claims "have information about the real estate deals involving Aidan and his partners." Karibzhanova Aff., Dkt. No. 3 at ¶ 50; Second Aidan Decl. ¶ 7. These claims formed a substantial basis for the Application, yet the subpoenas make no reference to these properties.

Ms. Karibzhanova's opposition also fails to demonstrate that the parties she did subpoena

---

[1] Such non-parties include BELLARMINE FINANCE S.A., TRANS-SIBERIAN MINERALS CORP., Profit Enterprises Inc., ASIA PHARMA LTD, Jambulat Sarsenov, Kaz Minerals Koksay B.V., EURO ASIA Handel & Logistik GmbH, Stars Dome Real Estate Broker, IPO TRADE (FZC), TIVERTON DEVELOPMENTS LIMITED, TERZA RESOURCES LIMITED, LAFONDA INVEST PTE. LTD. (Singapore), LAFONDA HOLDING PTE. LTD. (Singapore), LAFONDA LIMITED (Cyprus), NAVONO LIMITED (Cyprus), SIGIRIYA LTD (Belize), ENIGMA INVEST PTE. LTD. (Singapore), BERGUOLLA LIMITED (Cyprus), ARATAN CAPITAL PTE. LTD. (Singapore), and ALGARIA LIMITED (Cyprus). *Id.* Aidan does not have a connection to any of these non-parties. Second Aidan Decl. ¶ 5.

possess any relevant information. She makes no attempt to support her allegations that Aidan has utilized various persons as "nominees" or "straw men" to conceal his assets. One glaring example is how the Application falsely claimed that Aidan and his "trusted nominee[]" Marie-Hélène Bérard ("Ms. Bérard"), who allegedly "serves as a nominee owner for bank accounts and assets held on behalf of Aidan," owns and controls Verno Capital Group Limited. *See* Mem. of Law in Support of Application for Judicial Assistance ("1782 Memo."), Dkt. No. 1, at 10-11. Ms. Bérard previously submitted a declaration denying those allegations. *See* Decl. of Marie-Hélène Bérard, Dkt. No. 10-11, at ¶ 4. Rather than responding with any facts supporting her allegations, Ms. Karibzhanova's response is simply that this is a "she-said, he-said" controversy. Opp. at 22. But she provides no evidence obtained pursuant to these subpoenas or any evidence based on the complex investigation she and her counsel claims to have been conducting. [2]

The two recent motions to intervene in this proceeding, filed by Aidan's daughter Jasmin and his former colleague Vladislav Kim ("Mr. Kim"), further support the fact that the powers issued pursuant to the Order are being abused. *See* Dkt. Nos. 23 - 23-7 (Jasmin); Dkt. Nos. 39, 41 (Mr. Kim). Neither Jasmin nor Mr. Kim were identified in the Application, yet Jasmin's private personal banking records and Mr. Kim's private banking records have been subpoenaed. *See e.g.*, Bonner Decl., Ex. B at 11, 12; *see* Decl. of Jasmin Karibzhanova, Dkt. No. 23-2, at ¶ 6; Aff. of

---

[2] In her opposition, Ms. Karibzhanova admits that she filed the Application for the purpose of obtaining evidence *to support* her allegations, indicating that she did not in fact have proof of anything she claimed to be true in her Application. *See* Opp. at 21 ("As proof that the statements are lies, Aidan calls on Makhpal to produce the evidence underlying them. (A conundrum to say the least since she is before this Court for the very purpose of obtaining such evidence.)"). This is especially problematic considering that she filed her Application based on allegations that Mr. Moscow and his firm "worked to locate and trace Aidan's assets around the world" and that "[t]he legal structure of assets in Aidan's control . . . is commensurate with purposefully obfuscated transactions and ownership structures designed to hinder efforts to uncover the identity of the true beneficial owner." Decl. of John W. Moscow, Dkt. No. 5, at ¶¶ 7, 14. In fact, Ms. Karibzhanova's filings in the Kazakhstan proceeding make clear that she "is not currently aware of how and on whose name such community property was registered, where the property is currently located and by whom it is used or managed." Declaration of Bakhyt Tukulov dated July 29, 2021, Dkt. No. 10-8, at ¶ 10; *id.* at Ex. B, Dkt. No. 10-10, at 7.

Vladislav Kim, Dkt. No. 34, at ¶ 8. The fact that Ms. Karibzhanova sought the monthly credit card records of her and Aidan's own daughter, unnamed in the Application, reveals that this is a fishing expedition and an abuse of power. Moreover, these non-parties were not even served with notice of the subpoenas or otherwise notified that their records were being sought because the subpoenas were issued to banks and credit card companies.

All of the foregoing is indicative of the following – Ms. Karibzhanova believes that the Section 1782 Order provides her counsel with unrestrained and unchecked power, for an indefinite time period, to conduct a global fishing expedition without having to even reference, in their Application, the parties that they will target, and without allowing the Court to first rule on the appropriateness of the discovery sought. The Order thus has granted Mr. Moscow powers that are far greater than that which are intended under Section 1782, and should be vacated.

## II.   THE POWERS GRANTED TO MR. MOSCOW IN THE SECTION 1782 ORDER EXCEED THOSE WHICH ARE AUTHORIZED UNDER SECTION 1782

Ms. Karibzhanova's opposition ignores the significance of the statutory requirement that any subpoena issued pursuant to an order granting a Section 1782 application must only be issued to a person who resides or is found in the district in which the court granting the application is located, *i.e.*, a person subject to personal jurisdiction in that district. *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). She fails to dispute Second Circuit case law requiring district courts to first determine whether a recipient of a Section 1782 subpoena resides or is found in the district before granting the application, by claiming that the cases to which Aidan cites "merely explain the three statutory conditions that must be met under § 1782." Opp. Memo. at 5. In fact, it is Ms. Karibzhanova that has misconstrued these cases.

It is true that *In re Sargeant*, 278 F. Supp. 3d 814, 819 (S.D.N.Y. 2017) and *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 379 (S.D.N.Y. 2019) both explain the statutory

5

requirements under Section 1782. But they also make clear that this Court must first ensure that each statutory requirement has been met before deciding whether to exercise its discretion and grant a Section 1782 application. *Id.*; *see In re Guo*, 965 F.3d 96, 102 (2d Cir. 2020) ("*If* the statutory preconditions are met," district courts may exercise discretion to permit discovery) (emphasis added); *In re Pishevar*, 439 F. Supp. 3d 290, 300 (S.D.N.Y. 2020) ("a district court *first must determine* whether three statutory elements are met . . . ) (emphasis added); *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 452 (S.D.N.Y. 2018) (A section 1782 applicant "*must initially establish* that the person from whom discovery is sought resides (or can be found) in the district where the application is made.") (emphasis added), *aff'd*, 939 F.3d 520 (2d Cir. 2019); *Pfaff v. Deutsche Bank AG*, No. 20 Misc. 25, 2020 WL 3994824, at *4 (S.D.N.Y. July 15, 2020) (Failla, J.) ("Pursuant to § 1782's express requirements, Petitioner is not entitled to the discovery he seeks from Moving Respondents unless [they] reside or can be 'found' in this District.").

Therefore, Ms. Karibzhanova is incorrect in stating that Mr. Moscow "is vested with no more authority than counsel in any other civil litigation who may issue subpoenas to third parties under Federal Rule of Civil Procedure 45." Opp. at 4. The Order granted Mr. Moscow broad powers "to issue subpoenas seeking . . . relevant testimony and documents as may be found within the jurisdiction of this Court," Order, Dkt. No. 9, at 7, based on Mr. Moscow's vague assertion that he would serve persons "found" in New York, 1782 Memo. at 29. In addition, the Application merely listed examples of entities Mr. Moscow intended to target, leaving open the possibility for him to issue subpoenas to other unnamed individuals and entities that may or may not be found in the Southern District. *See* 1782 Memo. at 29. Because the Order granted Mr. Moscow greater power than Section 1782 provides to applicants, or their court-appointed commissioners, *i.e.*, allowing Mr. Moscow alone to determine whether a person resides or is

found in the Southern District, it effectively relieved Ms. Karibzhanova of the burden of proving one of the statutory elements, which is contrary to case law in this Circuit. *See e.g.*, *In re Del Valle Ruiz*, 342 F. Supp. 3d at 452; *Pfaff*, 2020 WL 3994824 at *4.

Moreover, the cases Ms. Karibzhanova relies on in support of her argument that this case involves the "routine" appointment of commissioners involved subpoenas concerning a specific set of documents *from a single entity* that was indisputably found in this District and known to possess the desired documents. In *In re Hill*, No. M19-117, 2005 WL 1330769, at *1-2 (S.D.N.Y. June 3, 2005), the liquidators in a foreign liquidation proceeding, coordinated by two foreign courts, filed a 1782 application in the Southern District, seeking to be appointed as commissioners with the authority to obtain discovery from Ernst & Young USA, a branch of the debtors' auditor. In the foreign proceeding, the liquidators had obtained discovery from Ernst & Young Hong Kong, the debtors' local auditor, pursuant to an order of the High Court of Hong Kong, and learned that "Ernst & Young USA had engaged in extensive interoffice communications regarding the debtor companies and possessed 'critical information' relevant to the financial condition of the companies." *Id.* Thus, the Court issued an order appointing the liquidators as commissioners to allow them to issue subpoenas to Ernst & Young USA. *Id.* at *2.

When Ernst & Young USA moved to quash the subpoenas, asserting that they were overly broad and burdensome, the Court denied the motion, explaining that "[t]he discovery sought through the Liquidators' subpoenas tracks the documents ordered to be released by Ernst & Young [Hong Kong] under the . . . Hong Kong Order." *Id.* at *5. The Court added that the requests for discovery pertaining to two additional companies did not impermissibly broaden the scope of the Hong Kong Order because "the complicated relationship between [the debtor and the companies] reveal that the companies' business affairs were 'inextricably intertwined.'" *Id.*

7

Thus, the application was granted based on a clear understanding that the subpoena would in fact result in the production of information sought, rather than just a belief that it might.

Similarly, in *In re Sumar*, 123 F.R.D. 467, 468 (S.D.N.Y. 1988), upon reviewing a Section 1782 application, the court appointed a commissioner to issue subpoenas to Citibank, a bank at which the subject of an estate matter held an account. One of the deceased's daughters, Olga, commenced a foreign criminal proceeding in Argentina after her sister allegedly concealed assets in the deceased's Citibank account. *Id.* Olga also filed a Section 1782 application in the Southern District, seeking the appointment of a commissioner to depose Citibank and issue a subpoena duces tecum to the bank. *Id.* Olga's siblings objected to those subpoenas, so Olga moved to compel production. *Id.* at 469. The Court ordered Citibank to comply, finding, among other things, that the subpoenas were not impermissibly broad or vague because they were "sufficiently specific as they specify documents during a reasonable period of time and state with reasonable particularity the subjects to which the documents relate." *Id.* at 472-73.

Here, unlike *In re Hill* and *In re Sumar*, Ms. Karibzhanova did not request Mr. Moscow's appointment to obtain information merely from a single entity proven to be found in this District and known to possess specific information detailing Aidan's finances. Rather, the Application relied on a myriad of baseless allegations concerning Aidan's financial holdings, investments, and assets, which Aidan denies, *see* First Aidan Decl. at ¶¶ 11(c)-(j), and failed to articulate precisely from whom Mr. Moscow intends to seek discovery and the information that such individuals or entities are known to possess about Aidan's finances.

Here, the Order does not specify to whom Mr. Moscow can issue subpoenas and instead essentially authorizes him to do so to anyone *he* determines is found in this District. As is clear from the subpoenas already served, Mr. Moscow has and may continue to issue subpoenas to

8

individuals or entities not identified in the Application, *see* Bonner Decl., Ex. B (subpoenas issued to Brown Brothers Harriman & Co.; Bank of America, N.A.; Bank of New York Mellon; Commerzbank A.G.; HSBC Bank USA; M&T Bank; Northern Trust International Banking Corp.; Wells Fargo Bank N.A.; Michelle Carson). This prevents the Court from performing its duty to first evaluate whether all subpoena recipients reside in or are found in the Southern District. Because the Order violates the first statutory element, it must be vacated, and any subpoenas issued pursuant to the Order must be quashed.[3]

### III. THERE CURRENTLY IS NO "FOREIGN PROCEEDING" PENDING IN KAZAKHSTAN

There is currently no foreign proceeding pending in Kazakhstan in which Ms. Karibzhanova may use any of the discovery she seeks here. Her own admissions and confirmation from Aidan's Kazakh counsel, Bakhyt Tukulov, confirmation, as much, as it is undisputed that each of her claims have been dismissed and all appeals have been denied. *See* Opp. at 6 n.4; Second Tukulov Decl. at ¶ 5. Consequently, Ms. Karibzhanova cannot satisfy the "foreign proceeding" element under Section 1782, which requires that if there is no pending foreign proceeding, such a proceeding must at least be within "reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

Here, there is no foreign proceeding within "reasonable contemplation." Although Ms. Karibzhanova claims that "she plans to file [a] new action as soon as practicable," Opp. at 6, this claim was made more than two weeks ago, and she has made no such filing. There has been no other indication that she intends to make such filing in the Medeu District Court. Further, the vague assertions by which she claims to have spoken with counsel in foreign jurisdictions who

---

[3] In her opposition, Ms. Karibzhanova plays a game of semantics regarding Aidan's use of the words "with" and "in" relating to his alleged contacts with New York. *See* Opp. at 2, n.1. But Aidan's testimony was clear, which addresses in paragraph 8 of his Second Declaration filed herewith.

have advised on the propriety of claims against Aidan in those jurisdictions, *see id.* at 8, are insufficient to show this Court the concrete claims she allegedly intends to file. *See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.P.*, 798 F.3d 113, 124 (2d Cir. 2015) (merely retaining counsel and "discussing the *possibility* of initiating litigation" is not indicative of proceedings within "reasonable contemplation"). Such proposed claims are merely "a twinkle in counsel's eye" and, therefore, are insufficient to satisfy the second statutory requirement under Section 1782. This matter should be dismissed on these grounds alone.

## CONCLUSION

Based on the foregoing, in addition to the arguments set forth in Aidan's moving memorandum of law, Aidan respectfully requests that the Court grant his motion to vacate the Section 1782 Order and quash any subpoenas Mr. Moscow has already served.[4]

Dated:  September 10, 2021

                                                Respectfully submitted,

                                                MENZ BONNER KOMAR & KOENIGSBERG LLP

                                                By:    *s/Patrick D. Bonner, Jr.*
                                                              Patrick D. Bonner, Jr.
                                                               John R. Menz

                                                One North Lexington Avenue, Suite 1550
                                                White Plains, New York 10601
                                                Tel.:  (914) 949-0222
                                                Fax:  (914) 997-4117

                                                *Attorneys for Movant Aidan Karibzhanov*

---

[4] In addition to seeking the financial records of various other persons, the subpoenas seek Aidan's private banking information, including incredibly intrusive American Express monthly statements that may detail personal information wholly unrelated to this matter. *See* Bonner Decl., Ex. C. Should these subpoenas be permitted to stand, Aidan respectfully requests that the Court enter a protective order, preventing the disclosure of Aidan's records for any use other than as evidence in the Kazakhstan proceeding, or any other appropriate relief.