**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE APPLICATION OF MAKHPAL KARIBZHANOVA FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** | **Case No. 21-mc-00442**<br>**ECF Case** |

**OPPOSITION TO JASMIN KARIBZHANOVA'S MOTION TO INTERVENE**
**<u>AND TO QUASH SUBPEONAS AND FOR A PROTECTIVE ORDER</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.   JASMIN DOES NOT HAVE A RIGHT TO INTERVENE AND DOES NOT
     QUALIFY FOR PERMISSIVE INTERVENTION ................................................................3


II.  JASMIN DOES NOT HAVE A VALID INTEREST TO
     QUASH THE SUBPOENAS......................................................................................................5


     A.  The Application Sufficiently Establishes that The Correspondent Records
         are Relevant ........................................................................................................... 6

     B.  The Motion Fails to Establish that the Subpoenas Should be Quashed.............................. 9


III  A PROTECTIVE ORDER, IF THE COURT SHOULD FIND ONE NECESSARY,
     SHOULD BE NARROWLY TAILORED NOT TO EXCLUDE RELEVANT
     INFORMATION......................................................................................................... 12

.    CONCLUSION.......................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bridgeport Guardians, Inc., v. Delmonte*,
    602 F.3d 469 (2nd Cir. 2010)................................................................................4

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
    206 F.R.D. 78 (S.D.N.Y. 2002) ............................................................................9

*Chazin v. Lieberman*,
    129 F.R.D. 97 (S.D.N.Y. 1990) ............................................................................5

*City of NY v. Golden Feather Smoke Shop, Inc.*,
    No. CV-08-3966 (CBA), 2009 WL 10705762 (E.D.N.Y. Dec. 21, 2009) ..........................5, 11

*Condit v. Dunne*,
    225 F.R.D. 100 (S.D.N.Y.2004) ...........................................................................5

*Floyd v. City of New York*,
    770 F.3d 1051 (2d Cir. 2014)...............................................................................3

*Hickman v. Taylor,*
    329 U.S. 495 (1947).............................................................................................6

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).............................................................................................6

*Morgan v. Gaind*,
    462 Fed.Appx. 56 (2d Cir. 2012).........................................................................11

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)..........................................................................................6, 7

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
    No. 13 Civ. 1654 (RA), 2014 WL 5420225 (S.D.N.Y. Oct. 24, 2014) .......................... *passim*

*Sierra Rutile Ltd. v. Katz*,
    No. No. 90 Civ. 4913 (JFK), 1994 WL 185751 (S.D.N.Y. May 11, 1994)............................11

*Sky Med. Supply Inc. v. SCS Support Claim Svcs., Inc.*,
    No. CV 12-6383 (JFB)(AKT), 2017 WL 1133349 (E.D.N.Y. Mar. 24, 2017) ....................5, 9

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
    137 S. Ct. 1645 (2017)..........................................................................................3

*U.S. v. Miller*,
     425 U.S. 435 (1976).................................................................................................................4

**Statutes**

28 U.S.C. § 1782.......................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 24..................................................................................................................3, 4

Fed. R. Civ. P. 26.....................................................................................................................6

Fed. R. Civ. P. 45................................................................................................................11, 12

On May 12, 2021, applicant Makhpal Karibzhanova ("Makhpal" or "Applicant") filed an application ("Application") seeking judicial assistance pursuant to 28 U.S.C. § 1782 to take discovery of documents and testimony that she reasonably believes is relevant to an action she commenced in Kazakhstan ("Foreign Proceeding") seeking equitable division of assets acquired during her marriage to Aidan Karibzhanov ("Aidan").  That discovery includes, as the Application disclosed, obtaining financial records from intermediary banking institutions in the Southern District of New York that processed international wire transfers to, from, or for the ultimate benefit of Aidan.  Because Makhpal has been entirely denied access to any information regarding the location of the assets— a fact which no one has come forward in this proceeding to dispute, not even Aidan—she must start at the beginning with those persons and entities that she knows or believes engaged in these transactions, including her and Aidan's daughter, Jasmin Karibzhanova ("Jasmin").  Jasmin, who is not a party to the Foreign Proceeding, now comes before the Court moving to Intervene and to Quash Subpoenas and for a Protective Order ("Motion").  Her Motion should be denied.

The focus of the Application and the nature of the underlying Foreign Proceeding is the dispute between Jasmin's father and mother as to the division of their matrimonial assets; Jasmin has no interest in that litigation—or this one.  As set forth in the Application, Makhpal is seeking evidence to locate Aidan's assets.  Half of the assets are hers by law and Aidan has gone to great lengths to keep her from acquiring them, or even learning where they are.  Because assets in his own name would be readily identifiable and retrievable, as further set forth in the Application, Makhpal believes (and, as to some assets, positively knows) that Aidan has obscured their ownership within complicated corporate structures and in other people's names.  Makhpal, therefore, must first identify the accounts where Aidan holds their hidden wealth.  To do so,

Makhpal must work backwards, finding individuals or entities that send or receive funds linked to Aidan and issue subpoena for those accounts.

The Motion asserts, incorrectly, that if Jasmin is not a nominee, strawman, or business associate, her records are immaterial. That argument misses the point. The Application does not allege that Jasmin is a nominee owner or strawman, but Makhpal knows that Jasmin has received substantial assets from the marital estate. Makhpal knows that Aidan provides financial support to his daughter in the form of an allowance and payment of expenses. *See* Declaration of Makhpal Karibzhanova ("Makhpal Decl.") ℙ 9. Aidan even forced Makhpal to sign over more than $10 million in assets to Jasmin when Jasmin was barely 18. *See* Makhpal Decl. ℙℙ 5-8; and ECF No. 1 at 4; ECF No. 3 ℙℙ 13, 17; ECF No. 10-2 ℙ 11(i). Records of funds transferred to accounts associated with Jasmin are relevant to identifying Aidan's assets, and therefore are relevant to Makhpal's action in Kazakhstan. The source of funds sent by Aidan is of clear evidentiary value and Makhpal is, by this Court's order, entitled to discover it.

The Motion repeatedly asserts that Jasmin's financial records are not relevant but fails to sufficiently support that claim. Jasmin does not deny that she receives money from her father. She does not assert, nor can she, that the money that she receives from her father does not equally belong to her mother. But she calls the subpoenas a "fishing expedition." Motion at 12. She comes before the Court, represented by her father's attorney, alleging that, if she is not a nominee, financial transactions between the two of them are "her private financial affairs." Motion at 2, 4, 11. As to a protective order, the Motion asserts no valid claim as to privacy except that, simply, Jasmin does not want her information discovered or shared. In any event, when Makhpal offered to enter a protective order that would keep confidential all of Jasmin's personal finances, excluding those concerning transfers of funds from her father, or for his benefit, Jasmin declined. The Motion

fails to establish an argument that Jasmin has standing to intervene or quash, and the Court should

deny the Motion in full.

## I. Jasmin Does Not Have a Right to Intervene and Does Not Qualify for Permissive Intervention.

The Second Circuit has held that a non-party does not have a "cognizable" interest to

intervene under Fed. R. Civ. P. 24  unless they have a "direct, substantial, and legally protectable"

interest in the action. *Floyd v. City of New York*, 770 F.3d 1051, 1060 (2d Cir. 2014).  Title 28

U.S.C. § 1782, specifically, does not provide either an unconditional or conditional right to

intervene in a proceeding brought pursuant to the statute.  In the Second Circuit, where a statute is

silent on the right to intervene, to be granted intervention as of right or by permission, "an applicant

must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the

interest may be impaired by the parties to the action, and (4) show that the interest is not protected

adequately by the parties to the action." *Floyd*, 770 F.3d at 1057.  A "[f]ailure to satisfy *any one*

of these four requirements is a sufficient ground to deny the application."  *Id.* (emphasis in

original).  Jasmin's motion fails to satisfy all four of these requirements and her request to

intervene in this proceeding must be denied.

Relatedly, a proposed intervenor in any action is required to show independent Article III

standing. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1648 (2017). The traditional

requirements of standing— (1) an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision—

do not perfectly sit atop a statutory discovery proceeding but they do reinforce the requirement

that Jasmin have an actual, protectable interest and that she will suffer harm if the Court denies

her request to intervene.

Jasmin does not have a cognizable interest in this proceeding.  The Motion asserts, first, that Jasmin has standing to intervene as a right because a party against whom the requested information will be used may have standing.  *See* Motion at 8.  Jasmin is not a party to the Foreign Proceeding.  Makhpal is looking for the marital assets.  Unless Jasmin is holding those assets, and the Motion vehemently asserts she is not, *see* Motion at 2-4, 13-14, Jasmin is not a party against whom the information will be used.

The Motion, second, asserts that Jasmin has standing as a matter of right because she has a sufficient interest because Mr. Moscow "seeks Jasmin's financial records."  Motion at 2.  In fact, the subpoenas did not seek Jasmin's financial records, they sought records held by intermediary financial institutions.  *See* Declaration of John W. Moscow ("Moscow Decl.") at ¶ 3, 5.  There is a material distinction.  The United States Supreme Court has held that financial records held by banks and financial institutions are "the business records of the banks," and that an individual accountholder "can assert neither ownership nor possession" of such records.  *U.S. v. Miller*, 425 U.S. 435, 440 (1976).  Jasmin is not entitled to intervention as of right pursuant to Fed. R. Civ. P. 24(a)(2).

Nonetheless, as set forth at length below at III, the Motion fails to assert any real interest that Jasmin has in these records besides that she considers them "private."  The Motion also asserts that Jasmin will be "irreparably" harmed if the subpoenas are not quashed but fails to identify even one potential injury.  Conclusory statements of hypothetical harm are not sufficient to create standing.  *See Bridgeport Guardians, Inc., v. Delmonte,*, 602 F.3d 469, 474 (2nd Cir. 2010) (declining to allow movants to intervene, in part, because the alleged potential harm was "remote and speculative.").

The Motion is, by all appearances, nothing more than a stalking horse for Aidan to impede Makhpal's efforts to obtain discovery to locate marital assets. Aidan had made clear that his interest is to prevent discovery, not protect it. *See* ECF No. 10-1 (not proposing, even as an alternative, that the Court enter a protective order as to the sought discovery). The Motion, therefore, asserts a privacy interest, disguised as Jasmin's, on Aidan's behalf to stimy discovery in support of the Foreign Proceeding. That effort is impermissible under the law of this Circuit. *See Sky Med. Supply Inc. v. SCS Support Claim Svcs., Inc.*, No. CV 12-6383 (JFB)(AKT), 2017 WL 1133349, at \*6 (E.D.N.Y. Mar. 24, 2017) ("a general desire to thwart disclosure of information by a non-party is [] not an interest sufficient to create standing.") (citing *US Bank Nat'l Assoc. v. PHL Variable Ins. Co.*, 2012 WL 4529249 at \*2 (S.D.N.Y. Nov. 5, 2012)). The Motion has not established that Jasmin meets the standard to intervene on her own and she does not have standing to assert Aidan's rights (which he has already asserted for himself).

## II.     Jasmin Does Not Have a Valid Interest to Quash the Subpoenas.

Although the Federal Rules of Civil Procedure allow a court to quash a subpoena issued to a non-party, "[t]he decision of whether to quash…a subpoena is within the district court's discretion." *City of NY v. Golden Feather Smoke Shop, Inc.*, No. CV-08-3966 (CBA), 2009 WL 10705762, at \* 2 (E.D.N.Y. Dec. 21, 2009); *see also Sky Med*, 2017 WL 1133349, at \*3 ("A determination to grant or deny…a motion to quash a subpoena is discretionary."); and *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654 (RA)(HBP), 2014 WL 5420225 at \* 7 (S.D.N.Y. Oct. 24, 2014) (same). Thus, while a court may quash a subpoena, it is not required to do so. In evaluating a motion to quash, the court must weigh the relevance of the discovery sought against the interests of the movant. *See Chazin v. Lieberman*, 129 F.R.D. 97 (S.D.N.Y. 1990); *see also Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y.2004) (Although not unlimited, relevance,

for purposes of discovery, is an extremely broad concept."); *Refco*, 2014 WL 5420225, at *6. "The

burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is

borne by the movant." *Refco*, 2014 WL 5420225, at *4 (citing *Concord Boat Corp. v. Brunswick

Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996). Jasmin's interest, if any, in the subpoenaed material is

insufficient to support a motion to quash the various subpoenas.  On the other hand, the relevancy

of the material sought by the subpoenas – i.e., Aidan's hidden bank accounts – is clear. The Motion

therefore has not sufficiently satisfied its burden of persuasion.  The balancing of those factors

here clearly weighs in favor of Makhpal and the Motion's request to quash the subpoenas must be

denied.

### A. The Application Sufficiently Establishes that The Correspondent Records are Relevant.

Discovery pursuant to 28 U.S.C. § 1782 is governed by the Federal Rules of Civil

Procedure.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 245 (2004) (discussing

that discovery under § 1782 is controlled by the "applicable privileges and the controls" of Fed.

R. Civ. P. 26).  A party issuing a subpoena under a § 1782 court order is bound to the relevance

standard set forth in Rule 26(b)(1), which states:

> *Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at the stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.*

Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer

Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501

(1947)); *see also Refco*, 2014 WL 5420225, at \* 6 ("[I]t is well established that relevance for the

purpose of discovery is broader in scope than relevance for the purpose of the trial itself.") (internal

citation omitted) (collecting cases).

The relevance of the financial documents at issue here is clear on the face of the

Application.   Makhpal is seeking to find assets, half of which are hers.   Those assets are hidden

in various structures and accounts within the control of her ex-husband.   Aidan does not dispute

that he has the assets[1]; or that he is keeping the location of the assets from her.   Nor does the instant

Motion.   What is in dispute is whether Makhpal is entitled to look for the assets, and how she may

do so.   As set forth in the Application and above, because they have hidden from her, she must

start at the beginning.   The Supreme Court has explicitly recognized that discovery may be a

layered process and that a party is entitled to work through those layers.   *See Oppenheimer*, 437

U.S. 340, 351 (permitting discovery of evidence that *could* lead to the discovery of other relevant

evidence).   Practically speaking, the money would not be very well hidden if Makhpal, having

been denied access to the information or records concerning the assets, was able to identify their

ultimate holding accounts in the first instance.   Financial records such as those at issue here, which

disclose accounts from or to which Aidan has transferred or received the funds at some point, are

a step forward.

Applicant knows that Jasmin has received money from her father and believes that she

continues to receive money.   *See* Makhpal Decl. ℙ 9.   Indeed, the Motion presents no argument

that she has not.   Jasmin, further, asserts merely that she "do[es] not believe" that she had an

American Express account whose records are called for, ECF No.23-2 ℙ 4, but even so she wants

---

[1] *See*, *e.g.*, ECF No. 10-2 ℙ 11(b) (objecting to the characterization of the structure of his ownership but not the ownership).

the subpoena quashed.  Given her father's untiring efforts to convolute the trail of his money, her unawareness of an account does not mean that her father did not establish such an account or use it for his own purposes.

Makhpal knows for a fact that Aidan, or those acting on his behalf or at his direction, have used many different accounts to transmit money for expenses—including those held in the name of entities that Aidan has denied to this Court having any connection to.  *See* ECF No. 1 at 9-27. For example, Aidan has denied to this Court any connection to the company Terza Resources Ltd., a BVI shell company, stating that Terza Resources Ltd. as a non-party that has "nothing to with Aidan or the Kazakh proceeding."  ECF No. 45 at 2-3, and n. 1.  The facts disprove that claim and show Aidan's use of shell company accounts to fund personal expenditures.  In 2012, when Makhpal made a personal purchase from the Swiss jeweler, Chopard (Le Petit-fils de L.U. Chopard & Cie), Aidan directed her to turn the receipts over to his personal accountant, Gulzhamash Zaitbekova.  The accountant then paid the invoice via a wire payment originating from an account held by Terza Resources Limited of BVI from an account held at a Cypriot bank.  The accountant then sent a copy of the wire payment confirmation to Makhpal.  *See* Makhpal Decl. ₱ 4.  It is only by looking to the actual account activity and usage of funds that Makhpal can prove the extent of Aidan's assets.  Aidan can deny any connection to companies like Terza Resources Ltd., but the transactions involving that account tell the true story.

The Application specifically stated that it intended to subpoena correspondent accounts, as the Court recognized in its Order.  *See* Order at 2 (recognizing "Applicant and counsel believe that relevant records of Aidan's international correspondent banking activities and ownership of foreign bank accounts are held in the Southern District of New York.").  With this understanding of the alleged relevance, the Court granted the Application.  *See* Order at 7 (authorizing Mr.

Moscow to subpoena "documents pertaining to companies and bank accounts associated with Aidan and his nominee owners").  Because they cannot be isolated from Aidan's assets, records reflecting Jasmin's receipt of funds from her father are part and parcel of the dispute at issue in the Foreign Proceeding, division of Aidan and Makhpal's marital assets, and their relevance to this asset tracing investigation is clear.

### B.  The Motion Fails to Establish that the Subpoenas Should be Quashed.

Where, as here, the issuing party demonstrates that the sought discovery is relevant, "the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Sky Med.*, 2017 WL 1133349, at * 3 (rejecting defendant's rebuttal that bank records merely had no meaningful connection to the dispute where plaintiff sufficiently showed that the records were relevant and material); *see also Refco*, 2014 WL 5420225, at * 8 (denying motion to quash in which movants argued an "unduly restrictive" scope of relevance).  The Motion alleges only one rationale supporting the proposition that Jasmin has standing: the records sought contain her banking information.  It alleges that this reason, without more, is legally significant to provide standing.  The Motion's oversimplification of the relevance of the documents, the law on this subject and reliance on inapposite cases supports its denial.  The Motion, for one, is based on the mistaken presumption that if Jasmin is not a business associate, strawman, or nominee for her father, records of her financial transactions with him are "irrelevant to this action and an invasion of her right to privacy."  Motion at 2-3.  As discussed at length above, this presumption is wrong.

The Motion supports its misplaced presumption with *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002), a case that bears no likeness to the one here.  There the court found that the third party had standing to oppose the subpoenas for the specific reason

9

that the plaintiff had failed to present a legitimate need for the documents.  Makhpal has established the relevance and a clear need for the financial records and has no other means or source from which to obtain the information.

Nor, as the Motion asserts, did the Court's Order limit that Mr. Moscow may only issue subpoenas for information about Aidan's nominees such that "Jasmin's banking records are outside of the scope of the Court's grant of authority."  Motion at 13.  The Order permits Mr. Moscow to subpoena "documents *pertaining to* companies and bank accounts associated with Aidan and his nominee owners."  Order at 7 (emphasis added).  Records reflecting transfers to or from Jasmin, insofar as they also reflect transfers to or from Aidan (directly or indirectly) are perfectly within the contemplation of the Order.  Tellingly, Mr. Moscow has not subpoenaed the records from Jasmin's U.S. bank accounts, which she admits she has.  *See* ECF No. 23-2 at 5.  Mr. Moscow subpoenaed correspondent bank account records.  The discovery received from the subpoenas to date demonstrates that the records, in fact, pertain to bank accounts associated with Aidan.  The records are, therefore, wholly relevant.

The records from Citibank, N.A. for example, reveal that Jasmin has received hundreds of thousands of dollars from a number of her father's foreign accounts.  Specifically, between January 2017 and March 2020, it appears that Jasmin received at least twelve transfers from three different accounts held by Aidan in Singapore and Kazakhstan, totaling nearly $500,000.  *See* Moscow Decl. ¶ 4.

As to the American Express subpoena, ECF No. 23-6, Mr. Moscow did not seek all potential records linked to Jasmin.  That subpoena seeks primarily, records of payments and the source of those payments.  It is entirely reasonable to believe that payments for the charges on

Jasmin's credit cards may come from Aidan.  Records of those payments would necessarily reflect

Aidan's accounts from which the payments on behalf of Jasmin were made.

The Motion fails further in that it does not assert a legally cognizable interest to quash the

subpoenas: that the information sought by the subpoenas is subject to privilege, confidentiality, or

any other ground recognized under Fed. R. Civ. P. 45.[2]  *See Morgan v. Gaind*, 462 Fed.Appx. 56

(2d Cir. 2012) (affirming district court's denial of motion to quash a subpoena where appellant

failed to identify a valid basis under Fed. R. Civ. P. 45).  The Motion does not even contain the

words privilege or confidential.  Courts in this Circuit have found arguments that where, as here,

a non-party has a "relatively modest" privacy interest in the sought financial records uncompelling

to quash or modify a subpoena.  *Sierra Rutile Ltd. v. Katz*, No. No. 90 Civ. 4913 (JFK), 1994 WL

185751, at * 2 (S.D.N.Y. May 11, 1994); *see also Golden Feather*, 2009 WL 10705762, at * 3

(finding that asserted privacy interest did not outweigh the relevancy of the subpoenaed discovery).

Jasmin complains that she has not been served with copies of the subpoenas but there is no

requirement that Applicant do so.  Mr. Moscow has not issued subpoenas for documents from

Jasmin; he calls for the records of financial institutions found or located in this district (with whom

Jasmin is not even sure if she held accounts).  Jasmin is not a party to the Foreign Proceeding and

the Federal Rules of Procedure contain no requirement that notice of subpoenas be served on

---

[2] Fed. R. Civ. P. 45(d)(3)(A) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoenas that: (i) fails allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(B) ("To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: (i) disclosing a *trade secret* or other *confidential research, development, or commercial information*; or (ii) disclosing an *unretained expert's opinion or information* that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."

persons who are neither recipients of the subpoena nor a party to the underlying proceeding.[3]  *See*

Fed. R. Civ. P. 45(a)(4) (requiring service of notice of subpoenas to third parties be served on each

party to the proceeding) and 45(b) (requiring service on the subpoena recipient).

### III.    A Protective Order, if the Court Should Find One Necessary, Should be Narrowly Tailored Not to Exclude Relevant Information.

The Motion asserts that, if this Court deems Jasmin's records relevant to the proceeding,

she is entitled to a protective order because she has a "privacy interest" in her financial records.

Motion at 13.  She does not propose that the Court enter an order protecting her non-privileged,

non-confidential information, rather she seeks an order destroying the records and closing the door

on discovery which may touch upon her financial accounts forever.  ECF No. 23-7.  This requested

relief is unnecessary to protect her stated interest.  It would, however, greatly benefit her father

who filed his own motion to quash the same subpoenas, despite his obvious lack of standing.  *See*

ECF No. 30.

If this Court deems a protective order necessary, it, nonetheless, should reject the Proposed

Protective Order.  Jasmin's minimal stated interest can be more than adequately addressed by a

modest protective order.  Makhpal seeks only to obtain information on the source of Jasmin's

funding and only to the extent that it is (directly or indirectly) Aidan.  The records of the transfer

from Terza, and the records already received from Citibank also establish, that Aidan, or others

acting on his behalf, transfer marital assets from foreign accounts. These records are of direct

evidentiary value to the Foreign Proceeding and are properly subject to the Order.  Makhpal, has

already offered to, and of course will if directed by the Court, agree to keep confidential any

---

[3] Applicant's counsel admits that he failed to serve the subpoenas on Aidan prior to their service on the recipients, but that error has been remedied. As the information has not been used in the Foreign Proceeding or anywhere else, Jasmin has not been prejudiced by the lack of notice.

financial information she may receive concerning Jasmin with no reasonable connection to Aidan.
*See* Moscow Decl. at 6.

**CONCLUSION**

The Motion presents no justifiable basis upon which Jasmin may have standing to

intervene in this Proceeding.  She does not present this Court with a valid interest supporting the

argument that the subpoenas must be quashed.  She comes at her father's behest imploring the

Court to take an overly restrictive view of § 1782 and discovery rules in general that will aid him

in his relentless efforts to deny Makhpal that to which she is legally entitled.  Applicant

respectfully requests that the Court deny the Motion in full.

Dated September 24, 2021

Respectfully submitted,
/s/ John W. Moscow

John W. Moscow
Adam S. Kaufmann
A. Mackenna White
LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC

The Chrysler Building
405 Lexington Avenue – 64th Floor
New York, NY  10174
Tel: (212) 826-7001
Fax: (212) 826-7146
*john.moscow@lbkmlaw.com*
*adam.kaufmann@lbkmlaw.com*
*mackenna.white@lbkmlaw.com*