**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF MAKHPAL KARIBZHANOVA FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. 21-mc-00442 ECF Case |

**OPPOSITION TO VLADISLAV KIM'S MOTION TO INTERVENE AND TO**
**MODIFY BANK SUBPOENAS AND FOR PROTECTIVE ORDER**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

OPPOSITION TO VLADISLAV KIM'S MOTION TO INTERVENE AND
TO MODIFY BANK SUBPOENAS AND FOR PROTECTIVE ORDER ...................................1

I. The Order Expressly Encompasses the Documents Subpoenaed....................................................2

II. Kim Lacks Standing to Intervene or to Object to the Subpoenas .................................................3

III. The Information Sought by the Subpoenas Is Relevant and Has Already Proven the
Connection between the Subject Entities and Aidan's Corporate Affiliates. ..................................7

CONCLUSION.........................................................................................................11

i

## TABLE OF AUTHORITIES

### CASES

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
   467 F.3d 238 (2d Cir. 2006)............................................................................................3

*Bridgeport Guardians, Inc. v. Delmonte*,
   602 F.3d 469 (2d Cir. 2010)............................................................................................3

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   No. 09 CIV. 1608(RJH)(JCF), 2010 WL 1327921 (S.D.N.Y. Apr. 5, 2010) ..............................6

*Estate of Ungar v. Palestinian Auth.*,
   400 F.Supp.2d 541 (S.D.N.Y. 2005) ...............................................................................7

*Fitzpatrick v. Am. Int'l Grp., Inc.*,
   272 F.R.D. 100 (S.D.N.Y. 2010) ....................................................................................6

*Floyd v. City of New York*,
   770 F.3d 1051 (2d Cir. 2014)..........................................................................................3

*Hickman v. Taylor*,
   329 U.S. 495 (1947)......................................................................................................7

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)..........................................................................................11

*In re Esses*,
   101 F.3d 873 (2d Cir. 1996)............................................................................................2

*In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I
   Segregated Portfolio*,
   No. 20MISC00418CSJCM, 2021 WL 3829991 (S.D.N.Y. Aug. 27, 2021)................................8

*In re Hornbeam Corp.*,
   No. 14 MISC. 424 (Part 1), 2015 WL 13647606 (Sept. 17, 2015)..........................................4

*In re Pishevar*,
   439 F.Supp.3d 290 (S.D.N.Y. 2020)..............................................................................11

*In re Reyes*,
   No. 19-Civ-7219, 2019 WL 6170901 (S.D.N.Y. Nov. 20, 2019)...........................................4

*In re Sarrio, S.A.*,
   119 F.3d 143 (2d Cir. 1997)............................................................................................4

*In re Sveaas*,
   249 F.R.D. 96 (S.D.N.Y. 2008) ......................................................................................8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)......................................................................................................7

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)...................................................................................................7, 10

*Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.*,
No. 13 Civ. 1654(RA)(HBP), 2014 WL 5420225 (S.D.N.Y. Oct. 24, 2014)........................7, 10

*Samad Bros. v. Bokara Rug Co.*,
No. 09 CIV. 5843 JFK KNF, 2010 WL 5094344 (S.D.N.Y. Nov. 30, 2010) ...........................6

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*,
No. CV126383JFBAKT, 2017 WL 1133349 (E.D.N.Y. Mar. 24, 2017).................................4-5

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
137 S. Ct. 1645 (2017)........................................................................................................4

*U.S. v. Miller*,
425 U.S. 435 (1976)..........................................................................................................6

*Universitas Educ., LLC v. Nova Grp., Inc.*,
No. 11 CIV. 1590 LTS HBP, 2013 WL 57892 (S.D.N.Y. Jan. 4, 2013)................................5, 7

*US Bank Nat'l Assoc. v. PHL Variable Ins. Co.*,
12 Civ. 6811(CM)(JCF), 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) ......................................7

Applicant Makhpal Karibzhanova ("Makhpal" or "Applicant") files this opposition to Vladislav Kim's ("Kim") September 5, 2021[1] Motion to 1) intervene; 2) modify bank subpoenas and 3) for a protective order.  The Motion is without merit.  Kim's challenge improperly targets the scope of the underlying Order, which is in full force and effect, and covers the documents sought by the subpoenas ("Subpoenas") at issue.  Second, Kim lacks standing to intervene and object to the Subpoenas.  The Subpoenas target transfer records twice removed from Kim:  the correspondent bank accounts are owned by the banks themselves and responsive information captured in those records and responsive to the subpoenas relate to entities that are separate legal persons—the corporations Kim says he owns, or beneficially owns ("Subject Entities").  At no point does Kim even attempt to explain what the information has to do with Kim personally or why the correspondent account records or the money transfers by separate corporate persons would be confidential as to Kim or anyone else.  Finally, Kim's contentions regarding irrelevance are unavailing, if not misleading, and bespeak bad faith.  Kim's Motion and supporting filings, in particular the September 5, 2021 Letter Motion to Seal Exhibits, ECF No. 36, seek to bolster Kim's argument that the information sought by the subpoenas is "sensitive" and "confidential" by asking to seal in this Court numerous corporate records that are publicly available elsewhere, thus giving the façade of legitimacy to the bogus claim that Kim has a cognizable privacy interest to intervene and modify the Subpoenas.  It is, however, very much in Aidan Karibzhanov's ("Aidan") interest to keep the information secret.  The documents obtained thus far pursuant to the Subpoenas speak for themselves:  there is a direct connection between the Subject Entities and Aidan's corporate affiliates, and these connections reveal the transfer of tens of millions of dollars that should be

---

[1] Movant filed a "corrected" motion on September 7, 2021 and related affidavit on September 8, 2021.

property of the marital estate.  Kim's bogus claim that the records are irrelevant is consistent with

his acting as Aidan's agent.  Applicant therefore urges the Court to deny the Motion in its entirety.

**I.      The Order Expressly Encompasses the Documents Subpoenaed.**

First, the Order expressly encompasses the documents sought from the subpoenaed banks.

Kim concedes that the Order granting the § 1782 Application expressly permits the Commissioner

to issue subpoenas for "documents pertaining to companies and bank accounts associated with

Aidan and his nominee owners" and to "hew closely to the categories of discovery identified" in

the Application.  Order at 7 (ECF No. 9).  These categories included nominee owners identified

by Makhpal on the basis of personal knowledge.  Kim was among them:

> Aidan is also the owner and primary investor in another offshore
> fund called Visor. Aidan showed me computer screens showing the
> value of Visor and bragged about the **funds he had invested in
> Visor through nominee owners including** Nikolay Varenko,
> **Vladislav Kim**, Michael Sauer, and Gulzhamash Zaitbekova.

Declaration of Makhpal Karibzhanova in Support of the Application for Judicial Assistance

Pursuant to 28 U.S.C. § 1782 ("Makhpal § 1782 Decl.") ¶ 44 (ECF No. 3).  Section 1782 affords

the district court "wide discretion to determine whether to grant discovery and equally wide

discretion to tailor such discovery."  *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) (affirming

district court's order granting applicant's request to take discovery under § 1782).  The Application

clearly stated that it intended to subpoena Aidan's nominee owners, including Kim, and the Court

declined to carve out any of the entities or individuals identified in Makhpal's § 1782 Declaration,

implicitly finding her averments sufficient to warrant discovery.  Kim contends that the subpoenas

to nine corporate entities owned or controlled by him exceed the bounds of the Order, but this is

false on its face.  Makhpal asserted that funds moved through Kim's control; she is entitled to

review accounts owned or controlled by corporate entities affiliated with those alleged nominee owners.

## II.  Kim Lacks Standing to Intervene or to Object to the Subpoenas.

The Second Circuit has held that a non-party does not have a "cognizable" interest to intervene under Fed. R. Civ. P. 24 unless they have a "direct, substantial, and legally protectable" interest in the action. *Floyd v. City of New York*, 770 F.3d 1051, 1060 (2d Cir. 2014) (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010). Title 28 U.S.C. § 1782, specifically, does not provide either an unconditional or conditional right to intervene in a proceeding brought pursuant to the statute. In the Second Circuit, where a statute is silent on the right to intervene, to be granted intervention as of right or by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the parties to the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd*, 770 F.3d at 1057 (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006). A "[f]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Id.* (emphasis in original) (quoting *"R" Best Produce*, 467 F.3d at 241). Kim's motion fails to satisfy all four of these requirements and his request to intervene in this proceeding must be denied.

Relatedly, a proposed intervenor in any action is required to show independent Article III standing. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1648 (2017). The traditional requirements of standing—(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision—do not perfectly sit atop a statutory discovery proceeding but they do reinforce the requirement that Kim

have an actual, protectable interest and that he will suffer harm if the Court denies his request to intervene.

Kim does not identify any protectable interest justifying intervention. Kim first asserts that he possesses the required legal interest to support intervention as a "part[y] against whom requested information will be used." Motion at 5 (citing *In re Sarrio*, S.A., 119 F.3d 143, 148 (2d Cir. 1997)). Unlike the opposing party in *Sarrio*, and unlike Aidan, Kim is not a party to the foreign proceeding, *see* ECF No. 41 ¶¶ 2, 9, and, therefore, is not a party against whom the information will be used. Moreover, cases in which such intervention has been granted have almost uniformly been where the intervening party had some tangible role in the relevant foreign litigation. *See, e.g.*, *In re Reyes*, No. 19-Civ-7219, 2019 WL 6170901 (S.D.N.Y. Nov. 20, 2019) (granting intervention to third-party bank where bank was defendant in the foreign litigation underlying the petitioner's § 1782 application); *In re Hornbeam Corp.*, No. 14 MISC. 424 (Part 1), 2015 WL 13647606 (Sept. 17, 2015) (granting intervention where the underlying § 1782 petition expressly stated the petitioner's intent to file foreign litigation against the movant-intervenor).

Second, nothing in Kim's Declaration points to the protectable interest required by the law; the memorandum of law invokes the concept of "privacy" in a conclusory fashion precisely *once*— referencing "confidential financial records"—without further embellishment. As set forth in the Declaration of John W. Moscow ¶¶ 26-27, Kim labors under a loose definition of "confidential" that includes publicly available information. This is an inadequate basis for objecting to disclosure. "[A] general desire to thwart disclosure of information by a non-party is [ ] not an interest sufficient to create standing . . . . [T]here must be more than a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." *Sky*

*Med. Supply Inc. v. SCS Support Claim Servs., Inc.,* No. CV126383JFBAKT, 2017 WL 1133349, at *5 (E.D.N.Y. Mar. 24, 2017); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590 LTS HBP, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) (denying motion to quash subpoena served on a non-party where movant "made no attempt to establish any proprietary or other confidentiality-related interest it may have in the requested documents beyond a conclusory assertion that the subpoenas seek documents that are private, confidential and commercially sensitive.").

Moreover, as set forth in the Declaration of John Moscow, most of the transfers involving the Kim companies do not evince (or even claim) the type of business purpose that would speak to an actual need for business confidentiality.[2]  These are not trade secrets or payments linked to confidential acquisitions.  The companies receiving and sending many of these payments appear to be primarily shell companies, many of them now defunct, utilized for the purpose of anonymizing ownership of funds and assets.  This is not the sort of confidential business information meriting the protection sought by Kim.

Even if Kim had identified something private about the Subject Entities' records, the Motion would still fail.  When an individual moves to quash or modify a subpoena "the claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served."  *Samad Bros. v. Bokara Rug Co.*, No. 09 CIV. 5843 JFK KNF, 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30, 2010).  Without a personal privilege, privacy or proprietary interest in the documents sought, the movant lacks standing.  *Universitas Educ., LLC* , 2013 WL 57892, at *5–6.  Corporations and individuals affiliated with them have separate interests; multiple

---

[2] Indeed, even under seal, Kim fails to provide this Court with any explanation of the purpose or business of the Subject Entities.

courts have held that "the privilege of the corporation belongs to the corporation, not to corporate employees or directors." *Fitzpatrick v. Am. Int'l Grp., Inc.*, 272 F.R.D. 100, 107 (S.D.N.Y. 2010).

Kim does not claim—because he cannot—that the subpoenas target *personal* financial information of the type that has been protected in other cases. *Copantitla v. Fiskardo Estiatorio, Inc.,* No. 09 CIV. 1608(RJH)(JCF), 2010 WL 1327921, at *17 (S.D.N.Y. Apr. 5, 2010) (delaying ruling on disclosure of personal financial statements, assets and liabilities, and net worth). Rather, Kim concedes that the information sought pertains to the transfers made by the Subject Entities, which are corporations with separate legal personhood. If they have any protectable interest in the transfer records sought, they may assert it, but Kim may not intervene on the basis of a privilege that does not belong to him. In any case, neither Kim nor the Subject Entities have a legally cognizable privacy interest in the correspondent bank accounts at issue; those accounts belong to the Manhattan clearing banks processing transfers from one entity to another, as the United States Supreme Court has held. *See U.S. v. Miller*, 425 U.S. 435, 440 (1976) (where a subpoena seeks financial records held by a bank or financial institution, these are "the business records of the banks," and that an individual accountholder "can assert neither ownership nor possession" of such records) (overruled by statute but only as to government-issued subpoenas). There is no proposition of law that creates an expectation of privacy or otherwise protects from disclosure information that two parties voluntarily turn over when they conduct an international financial transfer through a common clearing account.

### III.     The Information Sought by the Subpoenas Is Relevant and Has Already Proven the Connection between the Subject Entities and Aidan's Corporate Affiliates.

Third, Kim is simply incorrect on the relevance of the information sought.[3]   Discovery

pursuant to 28 U.S.C. § 1782 is governed by the Federal Rules of Civil Procedure.  *See Intel Corp.*

*v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 245 (2004) (discussing that discovery under

§ 1782 is controlled by the "applicable privileges and the controls" of Fed. R. Civ. P. 26).  A party

issuing a subpoena under a § 1782 court order is bound to the relevance standard set forth in Rule

26(b)(1), which states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at the stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer*

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501

(1947)); *see also Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654(RA)(HBP), 2014

WL 5420225, at *7 (S.D.N.Y. Oct. 24, 2014) ("[I]t is well established that relevance for the

purpose of discovery is broader in scope than relevance for the purpose of the trial itself.") (citation

omitted) (collecting cases).

Applicant takes seriously this Court's admonishment to "hew closely to the categories of

discovery identified" in the Application.  The relevance of the discovery sought by the Subpoenas

was established by the Application and its supporting declarations, as well as *supra* at I.  Even

---

[3] Kim furthermore lacks standing to challenge a subpoena issued to a third-party on grounds of relevance.  *See Universitas Educ., LLC*, 2013 WL 57892, at *5 ("A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden.") (First citing *Estate of Ungar v. Palestinian Auth.*, 400 F.Supp.2d 541, 554 (S.D.N.Y. 2005), then citing *US Bank Nat'l Assoc. v. PHL Variable Ins. Co*., 12 Civ. 6811(CM)(JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012)).

"'[w]here relevance is in doubt' in a § 1782 case, 'the district court should be permissive.'"  *In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Portfolio*, No. 20MISC00418CSJCM, 2021 WL 3829991, at *8 (S.D.N.Y. Aug. 27, 2021) (quoting *In re Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008)).

The Motion's blanket argument that the sought information is irrelevant is erroneous and cannot undermine the established relevance.  First, Kim's introduction of incorporation records of shell companies from Singapore, Cyprus, and Belize, showing Kim, not Aidan, as the owner of the Subject Entities is inapposite.  A nominee is someone who stands in on the official documents and serves as the putative owner—specifically to hide the true beneficial owner.  It comes as no surprise that Kim can and has produced these documents.   The Application, of course, acknowledged that Kim's name would be on such documents in identifying him as a nominee. Application at 20.  That is what a nominee does.  And, in a separate arbitration before the World Bank Group's International Centre for Settlement of Investment Disputes, styled *Vladislav Kim et al. v. Republic of Uzbekistan* (ICSID Case No. ARB/13/6), Aidan, Kim, and other purported owners of Visor argued that understanding of the true ownership of their complicated corporate holding structures was dependent upon the inclusion of oral trusts[4] that they established in Cyprus—thus confirming that the corporate documents submitted by Kim are not the whole story and largely irrelevant to a determination of true beneficial ownership.

The Motion further argues that discovery concerning the Subject Entities is irrelevant because Kim allegedly has not worked with Aidan since 2014.  Kim Decl. ¶ 5.  This is, however, a discovery proceeding in aid of Makhpal's efforts to trace Aidan's assets—which have been funneled through various entities, accounts, and nominees over the past two decades.  The Subject

---

[4] *See* Decision ¶ 280, available at https://www.italaw.com/sites/default/files/case-documents/italaw8549.pdf. The arbitration was resolved via a confidential settlement.

Entities' financial transactions are inherently relevant.  A more substantive recitation of the underlying facts useful to the Court's consideration of Kim's Motion is submitted herewith in the Declaration of John W. Moscow, which establishes the connection between Aidan's business and financial activities and the Subject Entities.

Second, whether Kim is the legitimate owner of the Subject Entities that made transfers through correspondent banks is irrelevant to the question of whether these entities moved money to or for Aidan or his affiliated corporations.  However, to the extent the Court wishes to examine this question, as set forth in detail in the attached Declaration of John W. Moscow ("Moscow Decl."), the limited discovery obtained thus far shows that they *did*.  For example, records produced thus far show multiple multi-million-dollar transfers made by Subject Entities to corporations located at 77/7 Al-Farabi, 12th Floor, Almaty, Kazakhstan, which is the Kazakh headquarters for Aidan's various businesses.  Moscow Decl. ¶ 14.  The records confirm that many of the companies involved in these transfers utilize this same address, including Algorithm LLP ("Algorithm") and Raynar Development:

- From December 2018 to June 2019, Lafonda Invest paid over $26 million to a Kazakh company, Algorithm.  *Id*. ¶ 13.

- From 2016-2017, Lafonda Holding transferred over $60 million to Algorithm.  *Id*.

- In December 2015, Algorithm attempted to send another $40 million to Lafonda Holding, but the transaction appears to have been blocked for unknown reasons.  *Id*.

- On August 6, 2018, LaFonda Invest paid $1 million to Raynar Development, purportedly (according to the wire payment records) pursuant to a loan agreement.  *Id*. ¶ 14.

- The records show payments between Aratan Capital Pte. Ltd., Algorithm LLP, and Skybridge Invest totaling in excess of $10 million.  *Id*. ¶ 19.

Both Algorithm and Raynar are companies affiliated with Aidan.  Moscow Decl. ¶ 17.

Visor Group, as identified in the § 1782 Application as a vehicle for the covert dispersion of the marital assets of Aidan and Makhpal, is also located at 77/7 Al-Farabi.  Moscow Decl. ¶ 15.

As is another Aidan-associated company identified in the § 1782 Application, Skybridge Invest.[5] An initial review of the incorporation records of these companies indicates they are affiliated both by their physical location and by a network of overlapping shareholders and directors.   Moscow Decl. ¶ 16.

These records are both the first step in unwinding the complicated business dealings used by Aidan to hide his assets.  The discovery obtained thus far adduces a connection between the Subject Entities and Aidan's assets that is highly relevant to and will be submitted in the foreign proceeding.  (It also confirms Makhpal's base of knowledge about Aidan, Vladislav Kim, and their business dealings.)  And, even if the discovery were not relevant for the purposes of the foreign proceeding, it does not follow that it is not relevant to the collection of other relevant discovery, as both the U.S. Supreme Court and the Second Circuit have explicitly recognized.  *See Oppenheimer*, 437 U.S. at 351, and *Refco Grp. Ltd.*, 2014 WL 5420225, at *6.  Even if Kim had standing to object and had alleged some kind of recognized privacy interest, "relevance of the documents . . . far outweighs any general privacy interest asserted by movants."  *Refco Grp. Ltd.,* 2014 WL 5420225, at *8.  This is especially so where the movant has "failed to identify any specific harm that they will suffer as a result of production."  *Id*.  Further discovery efforts will continue to expose Aidan's ownership and control of hidden assets through nominees such as Kim.

Finally, as with each of the three motions opposing various elements of the Application filed in this proceeding to date, Kim presents this Court not with a valid interest but with a dispute as to who ultimately owns and controls these entities.  Kim asserts that he does, and that because he does this Court should agree and grant his request for relief.  As set forth in the Application and supporting statements, Makhpal, based on what she knows, heard, saw, was told, learned, believes,

---

[5] https://www.aix.kz/aix-members/skybridge-invest-jsc/

and asserts that Aidan does.  Declaration of Makhpal Karibzhanova ("Makhpal Decl.") ¶ 7.  It is not within the jurisdiction of this Court, or this proceeding, to decide the merits of the underlying dispute as to actual ownership of the assets.  This is, simply, a discovery dispute.  Section 1782 does not require that Makhpal be able to prove the ultimate issue in her underlying dispute.  An applicant under § 1782 "need only 'establish that he or she has the practical ability to inject the requested information into a foreign proceeding,' 'as long as he or she makes that showing, it is not fatal to the application that he or she lacks a claim for relief before the foreign tribunal, whether for damages or otherwise.'"  *See In re Pishevar*, 439 F.Supp.3d 290, 300 (S.D.N.Y. 2020) (finding that was "not incumbent on [the] Court" to determine whether petitioner's foreign claim was timely or viable before granting the application but denying on other grounds) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017)).  It should be enough for the Court to note there is a valid foreign proceeding, Makhpal Decl. ¶ 9, concerning a dispute of the ownership and location of hundreds of millions of dollars in assets, and that evidence relevant to that dispute, or evidence likely to lead to further evidence relevant to that dispute, may be found in this District.  To the extent that the Court does determine it necessary to consider the competing claims, the evidence derived from the bank records supports Makhpal's position.

## CONCLUSION

For the reasons set forth above, Applicant respectfully requests the Court deny Kim's Motion to Intervene, to Modify the Subpoenas, and for a Protective Order.

Dated:  September 27, 2021

Respectfully submitted,

/s/ John W. Moscow
John W. Moscow
Adam S. Kaufmann
A. Mackenna White

LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC
The Chrysler Building
405 Lexington Avenue – 64th Floor
New York, NY 10174
Tel: (212) 826-7001
Fax: (212) 826-7146
*john.moscow@lbkmlaw.com*
*adam.kaufmann@lbkmlaw.com*
*mackenna.white@lbkmlaw.com*