LC7sINRc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE APPLICATION OF MAHKPAL KARIBZHANOVA
    FOR JUDICIAL ASSISTANCE PURSUANT TO        21 MC 442 (KPF)
4   28 U.S.C. SECTION 1782,

5

    ------------------------------x
6                                         New York, N.Y.
                                          December 6, 2021
7                                         3:00 p.m.

8   Before:

9                   HON. KATHERINE POLK FAILLA,

10                                         District Judge

11                         APPEARANCES

12  LEWIS BAACH KAUFMANN MIFFLEMISS PLLC
         Attorneys for Applicant Mahkpal Karibzhanova
13  BY:  ADAM W. KAUFMANN
         MACKENNA WHITE
14
    MENZ BONNER KOMAR & KOENIGSBERG LLP
15       Attorneys for Intervenors Aidan and Jasmin Karibzhanova
    BY:  PATRICK D. BONNER JR.
16       JOHN MENZ

17  BAKER & MCKENZIE LLP
         Attorneys for Intervenor Vladislav Kim
18  BY:  ANDREW S. RICCIO

19

20

21

22

23

24

25

1          (The Court and all parties appearing telephonically)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3     the appearance, beginning with applicant.

4          MR. KAUFMANN:  This is Adam Kaufmann, K-a-u-f-m-a-n-n,

5     along with my colleague, MacKenna White, on behalf of applicant

6     Makhpal Karibzhanova.

7          Good afternoon, your Honor.

8          THE COURT:  Good afternoon.  Thank you.

9          On behalf of Mr. Kim, whom do I have today?

10         MR. RICCIO:  Good afternoon.

11         This is Andrew Riccio, R-i-c-c-i-o, from Baker &

12    McKenzie on behalf of Vladislav Kim.

13         THE COURT:  Thank you so much.

14         On behalf of Mr. Karibzhanov and Jasmin Karibzhanov,

15    whom do I have, please?

16         MR. BONNER:  Good afternoon, your Honor.

17         Patrick Bonner, Menz Bonner Komar & Koenigsberg.  Also

18    on the line is my partner, John Menz.

19         THE COURT:  All right.  Thank you.

20         Mr. Bonner, should I understand that you'll be taking

21    the laboring ore this afternoon?

22         MR. BONNER:  Yes, your Honor.  Thank you very much.

23         THE COURT:  Is there anyone else on the line who is

24    representing someone involved in this particular application?

25         That's great.  I'm hearing no one.

1          Mr. Kaufmann, I am going to ask you, please, to obtain

2     a transcript of this conference in the ordinary course, and if

3     you order such a copy, sir, one will be sent to me

4     automatically.

5          Will you do that?

6          MR. KAUFMANN:  Yes, your Honor.

7          THE COURT:  I thank you.

8          Mr. Kaufmann, what I would really love to here, but

9     I suspect I will not hear, is that between the letters I've

10    received over the weekend and today and this conference, that

11    the parties have worked everything out with respect to the

12    possibility of a protective order and with respect to the

13    possibility of adjourning the conference tomorrow.

14         I'm suspecting I'm not going to have all of that.  I

15    will say we are having this conference today in lieu of the one

16    that was otherwise scheduled for tomorrow, and I would like to

17    hear from you, sir, first, and then from Mr. Riccio and

18    Mr. Bonner, about protective orders and about whether it is

19    appropriate for me to stay or to dismiss your application.

20         I'll begin with you, Mr. Kaufmann.

21         MR. KAUFMANN:  Thank you, your Honor.

22         So, first, I apologize to the court and to my

23    respective adversary counsel.  Of course, with litigation,

24    things often come to a head at the last minute, and certainly

25    we never intended to inundate the court and counsel with

1    weekend motions.  Not the plan, but as we all know, that's

2    simply how it goes sometimes.

3         Your Honor, we had hoped that we might have an

4    adjournment with a full protective order.  We had addressed

5    that with counsel for all parties.  Understandably, counsel,

6    Mr. Bonner, was unable to speak to his clients in time to

7    ascertain whether they would consent to that or not.

8         Underlying that is the fact that we have here a

9    contentious matrimonial property action occurring in

10   Kazakhstan.  We have an order to commence mediation prior to

11   the refiling of any action from the authorized Kazakh trial

12   court and appellate court, and so it struck us that trying to

13   commence a mediation, if the mediation was successful, it would

14   obviate the need for any of this, any of these proceedings to

15   obtain discovery.  And so given that we've just received the

16   translations of the court orders from Kazakhstan and realized

17   the exact sort of state of play in that country, that our

18   clients' cause of action and her right to file a claim is

19   extant, that she has that right, and that she's complying with

20   the court order to first seek mediation.  It made sense not to

21   waste everyone's time with arguing over something that may

22   become moot if mediation is successful.  So that's really what

23   led to the last-minute filings over the weekend.

24        Now we, of course, we stand ready to adjourn the case

25   and enter into the protective order as presented to the court.

1  That's sort of right now in my opposing counsel's side of the

2  court.

3         THE COURT:  OK.  I'll speak with him in a little

4  while.

5         On the issue, sir, of staying or dismissing, my law

6  clerk and I have been speaking about this throughout the day as

7  to whether there is any practical difference between the two

8  and what makes the most sense in light of the purposes of

9  Section 1782.

10         Do you have an opinion on that, sir?

11         MR. KAUFMANN:  I do, your Honor.  Thank you.

12         So, you know, the dismissal strikes me as being a step

13  that's not warranted in the case, your Honor, for a number of

14  reasons.  I mean, the court granted the application, having

15  expressly considered the relevant factors, both the legal

16  mandatory factors as well as a discretionary factors.

17         It's clear that our client has a right to bring this

18  proceeding in Kazakhstan.  It's clear that she's entitled to

19  half of the marital property, and it's clear that her

20  ex-husband is a very wealthy man with a great deal of property

21  around the world.

22         Our discovery efforts have been directly related to

23  ascertaining what that property is.  He doesn't want to tell

24  her, and so she's trying to find out exactly what the property

25  is.  That's what she should be doing in Kazakhstan and that's

1    the purpose of the 1782.

2         There are a number of subpoenas outstanding.  We were

3    waiting for reply and production on some of those subpoenas.

4    When we received the communication from Mr. Bonner that the

5    case had been dismissed, we stopped.  We didn't move forward

6    with any more subpoenas.  We didn't continue to try to

7    negotiate any further subpoenas.  We stopped while we tried to

8    ascertain exactly what was going on in Kazakhstan.

9         It took some time for us to get the information that

10   we sought, but clearly, when we did get the information, we saw

11   that our client continues to have this cause of action in

12   Kazakhstan.  If we're unable to agree to a stay, if we're

13   unable to come to terms on that, then we intend to push forward

14   with our discovery efforts.

15        As I said, there are subpoenas still outstanding that

16   we would seek to enforce, and there is some subpoenas that we

17   have not yet issued that we would.  So I don't think that

18   dismissal -- I don't think dismissal is warranted under the

19   law.  There is no basis for dismissal.  We're seeking evidence

20   directly relevant to the foreign cause of action.  The foreign

21   cause of action is still a viable cause of action, and we're

22   complying with foreign courts.

23        So I would urge the court to either consider the stay,

24   in which case we're happy to engage in protective orders, or if

25   that's not acceptable, that we just move forward and we'll

1    continue our discovery efforts.

2              THE COURT:  OK.  Thank you very much.

3              Mr. Riccio, do you have a horse in this particular

4    race, sir?

5              MR. RICCIO:  Good question, your Honor.  I do,

6    unfortunately.

7              For a bit of background, my client, Mr. Kim, is a

8    former business associate of Mr. Karibzhanov, who is the

9    ex-husband involved in this, what appears to be a very

10   contentious marital dispute.  It had become very apparent that

11   Mr. Kim was brought into this action for the sole purpose of

12   harassment.

13             A letter that was included in the motion of

14   Mr. Karibzhanov, in which it is clear that Ms. Karibzhanov and

15   her counsel, Mr. Moscow, intended to go after associates of

16   Mr. Karibzhanov not only in court, but across many

17   jurisdictions, but also in the newspapers.  While that is

18   concerning on many fronts, here, it has actually come to bear

19   after Mr. Karibzhanov's reply brief was filed in this case in

20   which he opposed the application on the grounds that an order

21   should be entered to simply modify something already issued in

22   order to restrict access to information related to my client

23   and to enter a protective order as information that has already

24   been disclosed.

25             After that briefing was concluded, we have since

1 learned that eight subpoenas were issued October 13, documents

2 related not to a business associate of anybody involved here,

3 not to a business entity, not to any person that is even

4 remotely potentially a nominee. But instead, to my client's

5 boyfriend -- I'm sorry, ex-boyfriend -- who now lives in the

6 U.S., who is a truck driver --

7 (Audio interruption)

8 THE COURT: Repeat the sentence you were in the midst

9 of.

10 MR. RICCIO: Please interrupt again if I'm not clear.

11 The subpoenas were issued as to an individual named

12 Ruslan, R-u-s-l-a-n, Gabaidullin, G-a-b-a-i-d-u-l-l-i-n.

13 This individual is neither mentioned nor alluded to in

14 the application, nor any of the declarations or affidavits

15 submitted in this case. His only connection to any party in

16 this case is as my client's ex-boyfriend. Ex-boyfriend to a

17 person who is well-known in a country that is, we'll call, a

18 very traditional society. If you wanted to harass someone, you

19 would make this type of information public, and you would go

20 after someone for the sole purpose of going after very

21 sensitive area in their personal lives.

22 My client is totally surprised that Mr. Moscow would

23 make such an effort here, particularly because it's unrelated

24 to the application. Mr. Kim, who my client, his name appears

25 just once in the application and nowhere in any of the

1    affidavits or declarations, himself actually was subpoenaed,

2    nine entities over which he would be owner or beneficiary

3    owner, several of which are now defunct.  All of which were

4    created after his relationship, business relationship, with

5    Mr. Karibzhanov ended.  Again, the harassment aspect here is

6    apparent as to my client.

7            Now, your Honor, you asked a very simple question at

8    the beginning, whether we have a horse in this race.

9    Unfortunately, we do, only to protect my client's interest,

10   which is to just be left out of this marital dispute.  It is a

11   shame that these two individuals have to go to this length and

12   involve courts of many jurisdictions and have, you know, the

13   type of dispute we've been having all through the weekend

14   trying to resolve this.

15           As is clear from the letters, my client seeks only a

16   protective order to protect and restrict the use of any

17   information related to him and any future subpoenas related to

18   him or anyone in an interest in him.  It appears, based on the

19   letters exchanged by the parties over the weekend, in which

20   I'll just note that my client agreed to the stay subject to

21   the entry of a protective order, but is also in favor of a

22   variation of what counsel for Mr. Karibzhanov put forth, which

23   would be not a dismissal of the action, because this case is

24   already closed, but merely a termination of the commission

25   without prejudice to Ms. Karibzhanov to filing a new 1782

1    application, should she require additional discovery in the

2    future, and then issue a protective order that issues her use

3    of any information related to my client.  Rather, prohibits her

4    use of any information related to my client.  And then, as

5    Mr. Karibzhanov noted in their letter, limit use of any

6    information solely for the purpose of the matrimonial dispute.

7         Now, whether that latter part is entered or not is

8    truly of no concern to my client.  Really, what we care about

9    is the prohibition of use of information related to my client

10   for any purpose whatsoever, because he is not involved here.

11        Now, I'll note that 1782 actions are often, if not

12   typically, permitted upon submission of subpoenas to the court

13   along with the application.  Indeed, the fourth <u>Intel</u> factor in

14   the discretionary factors requires the court to look at the

15   evidence, whether it is an intrusive or burdensome request.

16   The best way to do so, in which the courts typically do, is

17   look at the subpoenas that have been presented with the

18   application.

19        Now, here, the court was not presented with subpoenas

20   with the application, but was presented with an application and

21   a lot of declaration and affidavit evidence on which to rely.

22   That was appropriate in an ex parte application.  These types

23   of orders are typically granted.  However, now that my client

24   has come forward to intervene and put forth factual information

25   to rebut every statement related to my client in this action,

1    it makes sense to now limit the exposure, to stop the bleed as

2    one would say, because as the order stands now, Mr. Moscow has

3    an unfettered commission to seek information.

4         Again, we are only asking that that be limited, that

5    my client be extricated from this marital dispute, and that is

6    with no prejudice to Ms. Karibzhanov to seek any 1782

7    applications, should she require additional evidence, should

8    these mediation proceedings not result in a resolution, which I

9    personally am hopeful that they do.

10        THE COURT:  Mr. Riccio, let me just understand.  I

11   think what is a bit confusing to me is that the letter that

12   came to me yesterday from Mr. Kaufmann suggests that it was an

13   application in which you joined, and that was for the holding

14   the proceedings in abeyance and asking the court to enter a

15   protective or confidentiality order in an attached form.  So,

16   I'm not surprised that you would be OK with adjourning

17   tomorrow's proceeding.  I'm not surprised that you want a

18   protective order, because you and your client has always wanted

19   a protective order.  I am surprised because of the way in which

20   was described in Mr. Kaufmann's letter is now different than

21   the way in which you are describing it to me.

22        I'm also concerned, sir, because on the one hand, I

23   thought the purpose of staying the matter or adjourning

24   tomorrow's proceedings was because, as Mr. Kaufmann noted,

25   there would be efficiencies if, in fact, the mediation

1    proceeding succeeded.  But if I'm going to have to go through

2    and resolve, for example, your request for a protective order

3    and then Mr. Bonner's various requests, I feel as though there

4    is no efficiencies here.  I'm not really sure what happened

5    between yesterday and today, sir.

6            Am I misunderstanding your change in position?

7            MR. RICCIO:  You are.  But that's my fault, not yours,

8    your Honor.

9            My position with regard to Mr. Kaufmann's letter was

10   that the offer presented over the weekend was to hold

11   everything in abeyance, enter into a protective order while the

12   parties were going to mediate.  I was advised over the

13   weekend --

14           THE COURT:  Yes.

15           MR. RICCIO:  -- there was a new development between

16   August 23 and December 2.

17           I just learned today in Mr. Kaufmann's presentation

18   that the new development was the translation of the August 23

19   order of the court in Kazakhstan.  That does not strike me as a

20   new development in the sense that we should have to scramble

21   the weekend before.  Regardless, my client is in favor of

22   entering a protective order.  If that means entry of a

23   protective order while the parties work out their marital

24   dispute and attempt mediation, then yes, we continue to be in

25   favor of that.

1     Mr. Bonner's letter presented an alternative which I

2  am also in favor of.  I think both are adequate options,

3  although I would modify Mr. Bonner's and not say dismiss the

4  action because, again, the order has already been entered and

5  the case has already been closed.  It would rather have to be a

6  termination of the commission.  Both achieve the same purpose,

7  in essence.

8     One merely holds the case in abeyance, meaning your

9  Honor holds jurisdiction to revisit, should the parties decide

10  to reopen the matter.  And the alternative would be that

11  Ms. Karibzhanov must file a new application, should the need

12  arise.

13     THE COURT:  OK.  Thank you.

14     All right.  Then I didn't misread things.  I

15  appreciate the evolution in your position.

16     Mr. Bonner, let me please hear from you, sir.

17     MR. BONNER:  Certainly, your Honor.

18     Thank you for the opportunity to be heard today.  I

19  know this was not originally on your schedule.  We appreciate

20  it.

21     Let me just say that, at the outset, that we have a

22  fundamental disagreement with Mr. Kaufmann and his client about

23  the state of play over in Kazakhstan.  I need to take you

24  through that, and I'll do that quickly, because this raises a

25  fundamental threshold jurisdictional issue here.

1    The Section 1782 order was issued on the basis that an

2  action was pending in Kazakhstan.  As we sit here today, there

3  are no cases or appeals pending in Kazakhstan between these

4  parties whatsoever.  None.  All three claims have been

5  dismissed.  All appeals of those dismissals have been denied.

6  There are no open matters on the court dockets or on the

7  databases whatsoever.  This has been the case for about two to

8  three months.

9    The third claim which was discussed in counsel's

10  letter of today was dismissed.  And the appeal of that

11  dismissal was rejected on August 23, 2021.  The last appeal in

12  any of these three claims was taken of the dismissal of the

13  second claim to the Kazakhstan Supreme Court.  That was

14  rejected on October 8, 2021.

15    Since that time, when all claims and all appeals were

16  no longer in existence, nothing has happened over there.  There

17  have been no more filings.  No further appeals filed.  Despite

18  the fact that Mr. Tikhonov, who represents Makhpal, represented

19  in a declaration on August 27, he was going to file a case as

20  soon as possible.

21    THE COURT:  Please pause, sir.  Pause right there and

22  give me the spelling of that gentleman's name.

23    MR. BONNER:  Tikhonov is T-i-k-h-o-n-o-v.  Tikhonov.

24    THE COURT:  Thank you.

25    MR. BONNER:  Just to continue, your Honor, what I said

is that despite the fact that Mr. Tikhonov represented in the

declaration on August 27, that he was going to file a case as

soon as possible, that has not happened.  Certainly,

Mr. Tikhonov in Kazakhstan didn't need a translation of an

order in order to file that new case.

So as we sit here, as I said, there are no cases.  I

want to note that.  And just to pick on something that

Mr. Riccio just discussed, which is after the final dismissal

of the last appeal, so that would have been the appeal of the

second claim -- and it's the third claim that they are relying

on -- the second claim was denied by the Kazakhstan Supreme

Court on October 8.  As of that date, there could be no

argument that there was anything pending whatsoever in

Kazakhstan after October 8.

But yet subpoenas continued to pump out here in

New York on October 13.  There was eight subpoenas issued to

eight banks looking for records for Mr. Gabaidullin, who is

the truck driver ex-boyfriend of Mr. Kim.  That was after

everything was dismissed in Kazakhstan those subpoenas went

out.

Now, in the letter that you got today, Makhpal claimed

that there was a court proceeding pending because she has a

right to refile another claim, once she engages in prefiling

mediation procedures over in Kazakhstan.  But that decision --

and they highlighted it in yellow for you -- states any right

1    to refile is in accordance with the general procedure.  In

2    other words, this would be a brand new fourth claim subject to

3    any and all defenses.  It is not a continuation of the third

4    claim, which no longer exists and has been gone for over

5    three months.  There is nothing pending.

6         So for the purposes of Section 1782, we cited cases

7    which say merely retaining counsel and discussing the

8    possibility of initiating litigation is not indicative of

9    proceedings within reasonable contemplation, which is necessary

10   in order for there to be jurisdiction.  In other words, forum

11   proceeding to be contemplated or pending over in Kazakhstan.

12   That is simply just not the case right now.

13        It actually gets worse.  Here, we scrambled to get

14   this together over the weekend, because since August 23, when

15   that third claim was dismissed, we heard nothing.  And I was

16   prepared to come into court tomorrow to begin to discuss how

17   there is nothing pending and there is no foreign proceeding.

18        But yet my client and his counsel and me received this

19   letter on December 2, saying we want to initiate mediation

20   proceedings over in Kazakhstan, and will you agree to an

21   adjournment.  Well, that does not mean that there is a case

22   pending.  Mediation procedures is a requirement before you file

23   this brand new fourth claim.  As we say, there is nothing

24   pending.

25        Now, we've been advised by Kazakh counsel that any

1  new such fourth claim is time barred and it is going to be

2  dismissed on statute of limitations grounds.  The divorce in

3  this case was final on May 15, 2018.  There is a three-year

4  statute of limitations for division of marital property in

5  Kazakhstan.  That expired on May 15, 2021.  And for whatever

6  reason, Makhpal's Kazakhstani lawyers waited until late April

7  2021 to file her first claim, despite the fact that the divorce

8  was in 2018.

9        She has now waited an additional three months after

10  the final dismissal of the third claim, and nothing new has

11  been filed.  But today we obtained, scrambling with this over

12  the weekend, your Honor, we obtained a declaration of Aidan's

13  Kazakh counsel, Mr. Tikhonov, that explains the application of

14  the statute of limitations in Kazakhstan.  I did not file it

15  today because I knew we were going to be on this call, but I

16  could certainly do that.  It's short, it's only two pages, and

17  I would like to provide that to you so you could see that any

18  newly filed fourth claim over in Kazakhstan is going to be time

19  barred.

20        Now, my client has not responded to the December 2

21  letter yet.  He was traveling in Canada with family and for

22  business purposes, and he has not had an opportunity to consult

23  with his Kazakh lawyers to determine if and when, or if at all,

24  that he is going to respond to this new request for mediation,

25  which is a requirement.  But to be clear, there is nothing

1    pending, and this will be a brand new fourth claim.  That is

2    not a continuation of the third claim.

3          So where we are right now is that, despite promises to

4    file a new claim over in Kazakhstan three months ago, nothing

5    has been filed.  We have got an eleventh-hour request to

6    mediate for a claim that hasn't been filed and is not a

7    continuation of a third claim.  That's going to be responded to

8    in due course over there.  But right now, there is no pending

9    actions in Kazakhstan to support a 1782 action over here.  That

10   is a jurisdictional issue.  There is no foreign proceeding.

11         Given that, what we wrote yesterday on Sunday

12   afternoon, after having gone over this all weekend, is that we

13   thought the following made sense -- this is what I wrote in my

14   letter yesterday -- which is that counsel seems amenable to

15   essentially shutting down this proceeding here to see what

16   transpires in Kazakhstan.  We agree, but we believe that

17   because there is a threshold jurisdictional issue here, it

18   makes sense to simply dismiss the action and to dismiss the

19   commission, to terminate the commission, and if and when there

20   is a new action filed in Kazakhstan -- and we don't know that

21   there is going to be, it was promised three months ago and it

22   wasn't been filed -- but if and when it is filed and it

23   survives a statute of limitations defense, and then there is

24   actually a foreign proceeding pending that can support a 1782

25   application, they could come back and file it.  And let's do it

1    on notice so that we can be heard at that time.

2            I think that in terms of talking about efficiencies,

3    that is what makes most sense.

4            THE COURT:  But for the materials that were gathered

5    and for the materials that are potentially responsive to these,

6    Mr. Bonner, are you agreeing to negotiate some form of

7    protective order or confidentiality order?

8            MR. BONNER:  Yes.  I think we would certainly -- we

9    would certainly want that.  So we would terminate the

10   commission, dismiss the action, and then enter a protective

11   order with regard to any materials that are in counsel's

12   possession that can only be used in Kazakh proceedings, if and

13   when they are filed, and if they survive the defenses that will

14   be asserted.

15           THE COURT:  I guess I would like to hear a little bit

16   more about your thoughts about my jurisdiction.  Because it

17   seems to me that back in June, when I issued the order, I had

18   jurisdiction, did I not?

19           MR. BONNER:  There was an objection pending at that

20   time, yes.

21           THE COURT:  Right.  OK.  So when the commission was

22   issued, that was appropriate.

23           Is your point that the subpoenas were issued

24   improperly, or that whatever jurisdiction one might have had,

25   either Mr. Moscow or myself, dissipated in mid October after

1  the second claim, the appellate second claim, was denied?

2  MR. BONNER:  Yes.  I think at some point the

3  Section 1782 proceedings come to an end.  If the foreign

4  proceeding terminates and is gone, there is no basis for it

5  anymore.  There is no longer jurisdiction in terms of to have

6  an action pending over here.

7  So once that was gone -- and they have been gone, as I

8  say, for months now -- we don't see a jurisdictional basis to

9  continue this action here in New York.

10  THE COURT:  All right.

11  MR. BONNER:  Even though there was at the time.

12  THE COURT:  Sir, thank you.

13  I mean, my concern is, perhaps I should ask a more

14  precise question.  When I issued the commission to Mr. Moscow,

15  it was a legally permissible thing for me to do.  You might

16  disagree with it, but there was a basis for me to do so under

17  Section 1782.

18  When he issued the subpoenas, are you saying the

19  subpoenas that he issued were void ab initio because the

20  proceedings had come to an end or something else?

21  Because I thought, I guess one of the things that

22  Mr. Kaufmann was talking about was whether or not there were

23  contemplated proceedings or ongoing proceedings.  And I guess I

24  would like to understand why the issue, why those subpoenas are

25  invalid.  Because it seems to me, the issue is if the question

1    is can Mr. Moscow issue additional subpoenas, it seems like

2    not.  It seems he's going to have to come back to me and apply

3    again.  But I'm talking about the ones that he did issue.

4            Are you saying those themselves were just invalid from

5    the start, or that they may have been overtaken by events?

6    That's really --

7            Let me, please, sir.  I wasn't quite finished.

8            The issue for me is, I've got these existing

9    subpoenas.  I thought what Mr. Kaufmann was asking me to do was

10   to leave their resolution open until after mediation.  And I

11   think what you're asking me to do is effectively to quash them.

12   So that is what I'm trying to figure out.

13           Because to Mr. Kaufmann, the efficient thing to do is

14   for everybody to enter into a protective order, sort of press

15   pause on everybody's arguments, and then figure out whether

16   mediation can or cannot take place, whether there is a

17   proceeding in Kazakhstan for which this discovery would be

18   useful or whether things, you know, whether mediation works.

19           You'll excuse me if I'm not super sanguine about that.

20   But if that's not what we're doing, I'm not sure what

21   efficiencies there are.  Because then it sounds like I actually

22   am being asked to handle the quash, the application that you

23   had to quash the subpoenas or to modify them.  And that's what

24   Mr. Kaufmann is asking us to stay.

25           And I want to understand why I should not merely --

1   not staying it.  You're asking me to get rid of it.

2          Let me hear why.

3          MR. BONNER:  Yes.  Well, I understand your question,

4   your Honor.

5          So at the time these subpoenas were issued, they were

6   issued over a period of time.  I think that the first ones --

7   actually, the chart in front of me here, I think that some of

8   these were issued originally in June.  There was additional

9   ones in July, and then they went into September.  And then

10  after that final appeal was dismissed over in Kazakhstan, there

11  were some additional ones that went out on October 13, and

12  those are the ones that Mr. Riccio responded to.

13         So there were subpoenas that went out after the

14  termination of final proceedings over in Kazakhstan, and some

15  of them were issued prior to that, when there were actions

16  pending over in Kazakhstan.

17         THE COURT:  OK.

18         MR. BONNER:  I don't know the extent to which these

19  have been responded to.  We don't know the answer to that.  So

20  I don't know if there is, you know, some of the subpoenas of

21  the 28 that were issued, I don't know how many are outstanding,

22  that still need time for these parties to respond.

23         It may be all of them have been responded to.  It may

24  be that there is just the October 13 ones.  I don't know the

25  answer to that.  But, in effect, since there is no proceedings

1    pending anymore, as I just went through a moment ago, I would

2    think that we could quash those, dismiss the commission, and

3    those wouldn't have any validity anymore.  That would be the

4    legal answer to it.  But there is also practical one, which is

5    counsel, Mr. Kaufmann, has essentially agreed that he will not

6    enforce any outstanding subpoenas and won't issue any new ones

7    and will actually notify parties who have them outstanding

8    subpoenas to stand down until further notification.

9            If that is part of the protective order, which, again,

10   Mr. Kaufmann has agreed to in what he filed over the weekend,

11   if that's the case, then I don't think we have -- I don't think

12   we have a problem.  The protective order can state that, and we

13   can see what transpires in Kazakhstan, if and when they file

14   and get a new action.  If they do, you know, I guess they could

15   issue new subpoenas or file a new 1782.

16           THE COURT:  OK.  Mr. Bonner, just pause for a second.

17           Mr. Kaufmann, have you been paying attention to the

18   discussion I've had with Mr. Bonner?

19           MR. KAUFMANN:  Indeed, I have, your Honor.

20           THE COURT:  OK.  So, Mr. Bonner has suggested that if

21   certain things were included in the protective order,

22   confidentiality order, then I think he's saying he might even

23   agree to it, because it would accomplish the goals that he

24   sought to accomplish.

25           Can those things be included in the protective order,

1    slash, confidentiality order?

2              MR. KAUFMANN:  I think they were, your Honor.  I would

3    have to go --

4              THE COURT:  I think so too.  OK.

5              So then, Mr. Bonner, you'll take this the right way.

6    I know that your client has things he wants to address, or

7    clients.  I understand and I appreciate knowing more about

8    what's been going on in Kazakhstan.  And I will tell you, I am

9    a little bit disappointed, as I know you are, to get this sort

10   of late-breaking developments of stuff that has happened some

11   time ago.

12             Mr. Bonner, I'm going to ask you and Mr. Riccio to

13   work with Mr. Kauffman to get this confidentiality order to

14   embody the things that we have been talking about today,

15   because I do think that certain of the subpoenas were valid

16   when they were issued, perhaps others were not.  If we're going

17   to actually enforce them, it won't be until one figures out

18   what is happening in Kazakhstan.  And it may be that we're at

19   the point where there are no proceedings, and you'll renew the

20   application to me again.

21             But I would much prefer the route of the protective

22   order/confidentiality order than terminating the commission

23   today given that, as I understood it, no new subpoenas would be

24   issued, the existing subpoenas would not currently be enforced,

25   and that I would know when, as would the recipients of the

subpoena, that things would stand down, that there would be a

pause until the proceedings in Kazakhstan had greater clarity.

Mr. Bonner, will you, can you work with Mr. Kaufmann

and Mr. Riccio to work out a protective order, and to let me

know if there are problems with that protective order?

MR. BONNER:  Your Honor, well, yes.  A couple of

things.  Let me just ask this.

When you say enter into a protective order, what

happens to -- under that scenario, what is it that you are

proposing happens to this action in the commission?

Because as your Honor is aware, we did have various

other arguments that we made as to why the 1782 order ought to

be dismissed, given the way the discretion that the

commissioner has been granted here and how it's been abused,

quite frankly, and how it was based on a lot of factual

allegations that turn out -- I apologize being aggressive with

my language -- it turns out were just absolute fabrications.

So we made arguments in here that this ought to be,

the 1782 order ought to be dismissed on those grounds.  When I

say the subpoenas were bound on the issue at the time they went

out, I am talking about only that there was a proceeding

pending.  There is various other arguments we made as to why

this ought to be dismissed.

So I just didn't want the court to think that I was

waiving or just ignoring those arguments.

1          THE COURT:  No, no.  I don't think that you are, but I

2     guess my view is -- and, you know, the longer this conversation

3     goes on, the more I start to reconsider my own views.

4          But given the fact that there are, today, no

5     proceedings in Kazakhstan, there is not even the mediation that

6     is being proposed, I would much rather have the parties figure

7     out what the playing field is in Kazakhstan, and then come back

8     to me and we'll talk about whether the commission that I issued

9     was appropriate, whether Mr. Moscow acted in accordance with

10    that commission, whether the information that I had was correct

11    when it was given to me, and whether those subpoenas were

12    validly issued.

13         I thought the whole point --

14         MR. BONNER:  I understand.

15         THE COURT:  -- of Mr. Kaufmann's submission, and it

16    was something that resonated with me, was that there are a lot

17    of things to talk about.  To be clear, just in case you're

18    wondering what I do with my weekends, I've got 23 pages of an

19    oral argument outlined for the oral argument that we may not

20    have tomorrow.

21         So I'm ready for this, and I'm just as disappointed as

22    you are, Mr. Bonner, that my week and my weekend were wasted.

23    Because I would have loved to have known prior to yesterday

24    afternoon that I didn't need to do this work.

25         But I still believe that there are efficiencies in

1 stopping this now, figuring out what exists, if anything, in

2 Kazakhstan, and then coming back to me and resurrect this as

3 appropriate.

4      That's why I'm asking, Mr. Bonner, if that is

5 something you can work with Mr. Kaufmann and Mr. Riccio on.

6      MR. BONNER:  We can, yes.

7      THE COURT:  OK.  Now, I feel like each of you has been

8 operating -- I mean, your Sundays and Mondays were sort of

9 disrupted by all of this, so it's wrong for me to tell you that

10 I want a protective order by tomorrow.

11      But, Mr. Bonner, can I have one by Friday, or can I

12 have the parties' competing protective orders, if they can't

13 agree?

14      MR. BONNER:  Yes.  That is fine on our end, yes.

15      THE COURT:  OK.  Mr. Kaufmann, is that fine on your

16 end as well?

17      MR. KAUFMANN:  It is, your Honor.

18      THE COURT:  Thank you.

19      Mr. Riccio, is that also fine on your end?

20      MR. RICCIO:  Certainly, your Honor.

21      THE COURT:  OK.  Then, please, as much as I enjoyed

22 talking to you, I do think you should work on that.  By

23 offering you a neutral -- if you can't work it out, I'm not

24 suggesting that you can't, I certainly hope that you can.

25      Mr. Kaufmann, though, again, we all have lots of

1   things to do.  I would not have spent the days that I spent on

2   this if I had known you were going to ask on Sunday to stop

3   this.  So, please, you're going to have to keep in better

4   contact with your Kazakhstan counterparts to figure out what is

5   going on in these cases.

6          MR. KAUFMANN:  Your Honor, again, I apologize to the

7   court, I apologize to counsel, and I certainly will do so in

8   the future.

9          THE COURT:  OK.  You all know where to find me.

10         I'm going to let you offline decide how to work on

11  these protective orders.  I do thank you for your time today,

12  and I thank you for the opportunity to understand these issues

13  a little bit better.

14         We are adjourning tomorrow's conference or hearing.

15  I'll put away my oral argument outline.  Maybe I'll need it in

16  the future.  I would ask for folks to keep me updated as to

17  what is going on, and then let me do what I was going to do

18  tomorrow, which is to wish to each of you continued safety and

19  good health during this pandemic and a happy holiday season.

20         Be well everyone.  We are adjourned.

21         (Adjourned)

22

23

24

25